IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF NERBASKA

| | | |
|---|---|---|
| KUECKER LOGISTICS GROUP, INC., | ) | CASE NO. 8:20-CV-00307 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ANSWER, AFFIRMATIVE DEFENSES,** |
| | ) | **AND COUNTERCLAIMS** |
| GREATER OMAHA PACKING CO. INC., | ) | **(JURY TRIAL DEMANDED)** |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the Defendant, Greater Omaha Packing Co., Inc. (Greater Omaha), and for its Answer, Affirmative Defense, and Counterclaims against the Plaintiff, Kuecker Logistics Group, Inc. (Kuecker), states and alleges as follows:

## PARTIES

1. Greater Omaha is without sufficient knowledge to admit or deny the allegations contained in Paragraph 1 of Kuecker's Complaint; therefore, Greater Omaha denies these allegations.

2. Greater Omaha admits the allegations contained in Paragraph 2 of Kuecker's Complaint.

## JURISDICTION AND VENUE

3. Greater Omaha denies the allegations contained in Paragraph 3 of Kuecker's Complaint.

4. Greater Omaha denies the allegations contained in Paragraph 4 of Kuecker's Complaint.

## FACTUAL BACKGROUND

5. Greater Omaha admits the allegations contained in Paragraph 5 of Kuecker's Complaint.

6. Greater Omaha admits the allegations contained in Paragraph 6 of Kuecker's Complaint.

7. Greater Omaha admits the allegations contained in Paragraph 7 of Kuecker's Complaint.

- 2 -

8. Greater Omaha admits the allegations contained in Paragraph 8 of Kuecker's Complaint.

9. In response to Paragraph 9 of Kuecker's Complaint, Greater Omaha states the documents that Kuecker has attached to its Complaint speak for themselves; thus, Greater Omaha denies the allegations in Paragraph 9.

10. Greater Omaha denies the allegations contained in Paragraph 10 of Kuecker's Complaint.

11. Greater Omaha denies the allegations contained in Paragraph 11 of Kuecker's Complaint.

12. Greater Omaha denies the allegations contained in Paragraph 12 of Kuecker's Complaint.

13. Greater Omaha denies the allegations contained in Paragraph 13 of Kuecker's Complaint.

14. In response to Paragraph 14 of Kuecker's Complaint, Greater Omaha states the documents that Kuecker has attached to its Complaint speak for themselves; thus, Greater Omaha denies the allegations in Paragraph 14.

15. Greater Omaha denies the allegations contained in Paragraph 15 of Kuecker's Complaint.

16. Greater Omaha denies the allegations contained in Paragraph 16 of Kuecker's Complaint.

17. Greater Omaha denies the allegations contained in Paragraph 17 of Kuecker's Complaint.

18. Greater Omaha denies the allegations contained in Paragraph 18 of Kuecker's Complaint.

19. Greater Omaha denies the allegations contained in Paragraph 19 of Kuecker's Complaint.

20. Greater Omaha denies the allegations contained in Paragraph 20 of Kuecker's Complaint.

21. Greater Omaha denies the allegations contained in Paragraph 21 of Kuecker's Complaint.

22. Greater Omaha denies the allegations contained in Paragraph 22 of Kuecker's Complaint.

23. Greater Omaha denies the allegations contained in Paragraph 23 of Kuecker's Complaint.

24. Greater Omaha denies the allegations contained in Paragraph 24 of Kuecker's Complaint.

## FIRST CAUSE OF ACTION
### Breach of Contract

25. No response is required to Paragraph 25.

26. Greater Omaha denies the allegations contained in Paragraph 26 of Kuecker's Complaint.

27. Greater Omaha denies the allegations contained in Paragraph 27 of Kuecker's Complaint.

28. Greater Omaha denies the allegations contained in Paragraph 28 of Kuecker's Complaint.

29. Greater Omaha denies the allegations contained in Paragraph 29 of Kuecker's Complaint.

## SECOND CAUSE OF ACTION
### Foreclosure of Construction Lien

30. No response is required to Paragraph 30.

31. Greater Omaha states the allegations contained in Paragraph 31 of Kuecker's Complaint constitute legal aversions to which no response is required. Wherefore, it is denied.

32. Greater Omaha denies the allegations contained in Paragraph 32 of Kuecker's Complaint.

33. Greater Omaha denies the allegations contained in Paragraph 33 of Kuecker's Complaint.

34. Greater Omaha denies the allegations contained in Paragraph 34 of Kuecker's Complaint.

35. Greater Omaha admits that Kuecker filed a construction lien in Douglas County, Nebraska; Greater Omaha denies the remaining allegations contained in Paragraph 35 of Kuecker's Complaint.

36. Greater Omaha denies the allegations contained in Paragraph 36 of Kuecker's Complaint.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment

37. No response is required to Paragraph 37 of Kuecker's Complaint.

38. Greater Omaha denies the allegations contained in Paragraph 38 of Kuecker's Complaint.

39. Greater Omaha denies the allegations contained in Paragraph 39 of Kuecker's Complaint.

40. Greater Omaha denies the allegations contained in Paragraph 40 of Kuecker's Complaint.

41. Greater Omaha denies the allegations contained in Paragraph 41 of Kuecker's Complaint.

42. Greater Omaha denies the allegations contained in Paragraph 42 of Kuecker's Complaint.

43. Greater Omaha denies each and every allegation in Kuecker's Complaint except those allegations specifically admitted herein and those allegations constituting admission against Kuecker's interests. Greater Omaha denies that Kuecker is entitled to any of the relief requested in its Answer.

### AFFIRMATIVE DEFENSES

By way of further answer and defense, Greater Omaha states the following affirmative defenses:

44. Kuecker's Complaint fails to state a claim upon which relief may be granted.

45. Kuecker failed to join a necessary party.

46. Kuecker's construction lien was filed in bad faith.

47. Kuecker's claims may be barred in whole or in part by the applicable statute of limitation or statute or repose.

48. Kuecker's claims are barred in whole or in part by the doctrines of estoppel, laches, unclean hands, and/or waiver.

49. Greater Omaha alleges the affirmative defenses of offset and setoff.

50. Kuecker has failed to mitigate its alleged damages, if any.

51. Greater Omaha alleges the defenses of accord and satisfaction, anticipatory breach, breach of contract, lack of and/or failure of consideration, impossibility, legal rescission, repudiation, and voidance.

52. Greater Omaha alleges the defenses of fraud in the inducement, fraudulent / false misrepresentation, fraudulent concealment, and material misrepresentation.

53. Kuecker's Complaint is barred in part because its claims are cumulative and duplicative.

54. Plaintiff's Complaint is barred by the doctrine of election of remedies.

55. Each and every claim and allegation in Kuecker's Complaint is subject to binding arbitration.

56. Kuecker's claims are barred in whole or in part because any alleged damages were caused, if at all, by the acts and/or omissions of third parties outside the control of Greater Omaha, and Greater Omaha is not responsible for same.

57. Greater Omaha reserves the right to assert any additional affirmative defenses that become known as this case progresses.

## **JURY DEMAND**

Greater Omaha demands a jury trial on all issues triable to a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Greater Omaha respectfully requests an order dismissing Kuecker's Complaint with prejudice, taxing costs against Kuecker, and awarding such other and further relief as the Court deems fair and just.

## **COUNTERCLAIMS**

COMES NOW Counterclaimant Greater Omaha Packing Company, Inc. (Greater Omaha), by and through its undersigned attorneys, and for their Counterclaims against Kuecker Logistics Group Inc. (Kuecker), states and alleges as follows:

## **THE PARTIES**

1. Greater Omaha is a Nebraska-based corporation with its principal place of business in Omaha, Nebraska.

2. Kuecker is a Missouri-based corporation with its principal place of business in Belton, Missouri.

## JURISDICTION AND VENUE

3. This Court has federal diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because it is where a substantial part of the events giving rise to this dispute occurred.

## FACTUAL ALLEGATIONS

5. Greater Omaha is an Omaha-based company that processes and ships beef to wholesalers around the world.

6. Unlike other meat packing companies, Greater Omaha processes and ships its beef from a single production and distribution facility in Omaha, Nebraska.

### A. Kuecker's Warehouse Execution System.

7. In 2017, Kuecker submitted a proposal to Greater Omaha for the design, construction, and integration of a Warehouse Execution System. Kuecker marketed its proposal as a way to modernize and streamline Greater Omaha's warehouse distribution operations.

8. Pursuant to Kuecker's proposal, Kuecker would design and construct a $23 million automated distribution system that could store, retrieve, and load processed beef for shipment to domestic customers and customers around the world.

9. Kuecker marketed its Warehouse Execution System as consisting of two separate, yet interrelated components: (1) a Warehouse Control System, and (2) a Warehouse Management System.

10. The Warehouse Control System includes the hardware and equipment necessary to run the automated distribution center. This includes, but is not limited to, conveyor systems, carousel sorters, palletizing systems, and catwalk systems.

11. The Warehouse Management System includes all of the software and engineering services needed to automate the equipment. This includes, but is not limited to, software and programming that tracks, monitors, and palletizes boxes that enter and exit Greater Omaha's processing and distribution facility.

12. Below are pictures provided by Kuecker to Greater Omaha of a fully integrated and automated Warehouse Execution System:



**Figure 1: Pictures of a Box Storage System included in Kuecker's formal proposal to Greater Omaha for a fully integrated Warehouse Execution System.**

B. <u>**False Representations.**</u>

13. In submitting its formal proposal, Kuecker made several written and oral representations to Greater Omaha regarding the functionality and efficiencies of its hardware and software.

14. In its written proposal, for example, Kuecker included a Return on Investment (ROI) analysis reflecting significant cost savings through the implementation of Kuecker's automated system.

15. In one projection, Kuecker represented and/or assured Greater Omaha an ROI of over $43,680,000.00 over a seven-year period.

16. The single largest component of Kuecker's projected ROI was the implementation of a "Box Optimization" feature.

17. This feature was marketed to Greater Omaha as a tool for increasing efficiencies and profits by presenting the optimal "allocation" for the particular order being built. According to Kuecker, this feature alone would result in a projected ROI of $6,240,000.00 per year after the first year of implementation.

18. Kuecker made several other representations to Greater Omaha in the course of submitting its proposal including, but not limited to, the following:

   a) That Kuecker's Warehouse Execution System, if implemented, "will give Greater Omaha Packing Co. a great deal of flexibility and a more efficient system moving forward";

   b) That Kuecker would "honor [its] promises, fulfill [its] customers' requests, finish the job on time, and offer continued professional support";

   c) That Kuecker's Warehouse Execution System, if implemented, will reduce workers' compensation claims, reduce damage to boxes, reduce the need for forklift equipment, and enhance safety;

   d) That Kuecker would "install [Greater Omaha's] system, manage [Greater Omaha's] project, and provide all of the training and startup assistance that [Greater Omaha] requires";

   e) That Kuecker's software would increase Greater Omaha's ROI "with improved inventory tracking, greater material handling efficiency, and improved shipping times"; and

   f) That Kuecker would provide "a single installation and startup plan for the entire system with no gaps in timeline between the original system and these [software] enhancements."

19. Relying on these and other assurances and/or representations from Kuecker, Greater Omaha contracted with Kuecker for the design, construction, and integration of a Warehouse Execution System in May 2017.

**C. Problems with Kuecker's Hardware and Software.**

20. Greater Omaha experienced significant problems with Kuecker's hardware and software almost immediately upon implementation.

21. In fact, Kuecker's Warehouse Execution System has not properly functioned one day since it was fully installed and integrated in December 2019.

22. Over the past twelve months alone, Greater Omaha has submitted an excess of five thousand "help tickets" requesting assistance with software and hardware deficiencies that include, but are not limited to, the following:

    a) Carousel hardware controllers that stall as many as forty times per day;

    b) Insert and Extraction devices that do not function properly, requiring manual resets;

    c) Carousels that freeze or stop as many as fifty times per day, creating significant downtime in operations;

    d) Conveyor systems that freeze or stop as many as one-hundred times a day, requiring manual reset;

    e) Palletizers that frequently "purge," shutting down operations completely;

    f) Experimental software patches that cause unexpected and lengthy delays in automatic operation.

    g) Software that does not notify Kuecker's system of cleared accumulation lanes, causing frequent system shut-downs; and

    h) Software faults that result in boxes continuously circulating Greater Omaha's warehouse.

23. Many of the above-referenced deficiencies are a result of Kuecker's failure to test its equipment and software, its unrealistic deadlines for completing the project, and its more general inexperience with the software required to run a fully-functional Warehouse Execution System.

24. As a result of these and other deficiencies in Kuecker's hardware and software, Greater Omaha has and continues to experience frequent and unexpected delays in its shipping and distribution operations.

    D.    **<u>Kuecker Walks Away.</u>**

25. To date, Kuecker has not, and cannot, provide the technical support and assistance required to ensure a fully functional and operational Warehouse Execution System.

26. This is despite Kuecker's assurances to Greater Omaha that it would "honor its promise, fulfill its customers' requests, finish the job on time, and offer continued professional support."

27. Despite repeated requests from Greater Omaha, Kuecker has also refused to implement the Box Optimization feature incorporated in its original proposal to Greater Omaha.

28. Without this feature, Greater Omaha is forced to manually check each order—without the assistance of Kuecker's software—to ensure maximum profitability. In addition to being unable to achieve the promised ROI from the system, Greater Omaha experiences an additional $500,000.00 a month in lost profits.

29. After Kuecker abandoned its contractual obligations, Greater Omaha was forced to hire another service provider to provide software support and system maintenance at a cost exceeding $1.2 million to date, and continues to grow.

30. The third-party service provider has confirmed problems with Kuecker's hardware and software and has performed work that did not require any change or modifications of Greater Omaha's in-house network.

31. Collectively, Kuecker's fraudulent misrepresentations, inoperable hardware and software, and refusal to comply with basic contractual requirements has resulted in frequent and unexpected delays in operations and shipments; customer complaints; personnel interruptions; lost revenue and profit; and significant out-of-pocket expenses.

## COUNT ONE:
## BREACH OF CONTRACT CLAIM

32. Greater Omaha hereby reincorporates Paragraphs 1 through 32 of its Counterclaim as if fully set forth again.

33. Kuecker breached its contract with Greater Omaha by, among other things, failing to properly perform services and work with regard to the Warehouse Execution System, failing to properly integrate the Box Optimization Software, and failing to timely finish the project.

34. Greater Omaha has satisfied all enforceable conditions precedent under its contract with Kuecker.

35.     As a direct and proximate result of Kuecker's breach, Greater Omaha has and continues to sustain out-of-pocket expenses in an amount that is, to date, in excess of the sum of $7.2 million, plus costs, interest, loss of use damages, and other incidental and consequential damages in an amount to be proven at trial.

## COUNT TWO:
## BREACH OF EXPRESS AND IMPLIED WARRANTIES

36.     Greater Omaha hereby reincorporates Paragraphs 1 through 35 of its Counterclaim as if fully set forth again.

37.     At all times material herein, Kuecker represented and warranted to Greater Omaha that it would perform its functions in a workmanlike manner.

38.     Kuecker, however, breached its representations and warranties to Greater Omaha by, among other ways, failing to properly perform services and work with regard to the Warehouse Execution System as more fully set forth above.

39.     As a direct and proximate result of Kuecker's breach, Greater Omaha has and continues to sustain damages in an amount that is, to date, in excess of the sum of $7.2 million, plus costs, interest, loss of use damages, and other incidental and consequential damages in an amount to be proven at trial.

## COUNT THREE:
## NEGLIGENT MISREPRESENTATION CLAIM

40.     Greater Omaha hereby reincorporates Paragraphs 1 through 35 of its Counterclaim as if fully set forth again.

41.     In early 2017, before Kuecker entered into the contract with Greater Omaha for the Warehouse Execution System, Kuecker met with Greater Omaha in Omaha, Nebraska regarding the project.

42.     During these meetings, Kuecker told and made written and oral representations to Greater Omaha including, but not limited to, that Kuecker had the necessary expertise to construct, design, and integrate a Warehouse Execution System; that Kuecker was willing and able to provide required technical assistance; and that the Warehouse Execution System, if implemented, would generate an ROI for Greater Omaha exceeding $6,240,000.00 per year for seven years.

43. Kuecker told and made these representations to Greater Omaha to induce them to enter into the contract with Defendants to construct the Warehouse Execution System.

44. These representations were false and were, at a minimum, made negligently and without reasonable care.

45. These representations were made to Greater Omaha with the intention that it would rely upon them.

46. Contrary to the aforesaid representations, Kuecker and its agents and/or employees: (a) did not have experience in fully designing and implementing an end-to-end automated warehouse system; (b) did not have the expertise or capacity to provide the technical assistance required for a fully functional and automated system; and (c) knew, or should have known, that the system provided would not generate the projected ROIs.

47. As a direct and proximate result of these false and negligent misrepresentations, Greater Omaha has and continues to sustain damages in an amount that is, to date, in excess of the sum of $7.2 million, plus costs, interest, loss of use damages, and other incidental and consequential damages in an amount to be proven.

### COUNT FOUR:
### FRAUDULENT MISREPRESENTATION CLAIM

48. Greater Omaha hereby reincorporates Paragraphs 1 through 43 of its Counterclaim as if fully set forth again.

49. In the alternative to the claim asserted immediately above, Kuecker told and made the aforementioned representations to Greater Omaha to induce it to enter into the contract with Kuecker for the Warehouse Execution System.

50. These representations were false, fraudulent, and made to Greater Omaha with the intention that it would rely upon them.

51. Greater Omaha reasonably relied upon these representations in deciding to contract with Kuecker.

52. As a direct and proximate result of these false and fraudulent misrepresentations, Greater Omaha has and continues to sustain damages in an amount that is, to date, in excess of the sum of $7.2 million, plus costs, interest, loss of

use damages, and other incidental and consequential damages in an amount to be proven.

## COUNT FOUR:
## BAD FAITH CONSTRUCTION LIEN

53. Greater Omaha hereby reincorporates Paragraphs 1 through 48 of its Counterclaim as if fully set forth again.

54. On or about June 19, 2019, Kuecker recorded a construction lien with the Register of Deeds in Douglas County, Nebraska against real property owned by Greater Omaha. The Construction Lien was in the amount of $2,972,622.19.

55. As more fully set forth above, Kuecker's Construction Lien overstates the amount to which it is entitled, and was otherwise filed in bad faith.

## PRAYER FOR RELIEF

WHEREFORE, Greater Omaha respectfully requests an Order for Greater Omaha as follows:

1. Ordering Rescission of the Contracts;
2. Damages in excess of $7.2 million for additional out-of-pocket costs to operate and repair the system, as well as lost income incurred to date, plus other additional damages and costs in amounts to be proven at trial;
3. Damages of $6,240,000 per year, for seven (7) years for lost return on investment (ROI) as promised;
4. Attorney's fees;
5. Costs of litigation; and
6. Any other further relief as the Court deems fair and equitable.

DATED this 2nd day of November, 2020.

                GREATER OMAHA PACKING CO. INC.,
                Defendant,

BY: /s/ Michael F. Coyle
      Michael F. Coyle, #18299
      Daniel J. Gutman, #26039
      FRASER STRYKER PC LLO
      500 Energy Plaza
      409 South 17th Street
      Omaha, NE  68102
      (402) 341-6000
      (402) 341-8290 - fax
      mcoyle@fraserstryker.com
      dgutman@fraserstryker.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Answer, Affirmative Defenses and Counterclaims was filed electronically on November 2, 2020, with the United States District Court for the District of Nebraska using the CM/ECF system, which sent notification of such filing to the following individuals:

    Brian J. Brislen
    Craig F. Martin
    Andrew R. Wilkinson
    Lamson Dugan & Murray LLP
    10306 Regency Parkway Drive
    Omaha, NE  68114

                By:  /s/ *Michael F. Coyle*, #18299

2430301 v3