IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KUECKER LOGISTICS GROUP, LLC,

Plaintiff,

vs.

GREATER OMAHA PACKING CO., INC.,

Defendant.

**8:20CV307**

**MEMORANDUM AND ORDER
REGARDING THE PARTIES' MOTIONS
TO RECONSIDER AND CLARIFY**

This lawsuit arises from a dispute between plaintiff/counter-defendant Kuecker Logistics Group, Inc., (KLG) and defendant/counterclaimant Greater Omaha Packing Company, Inc., (GOP) over a contract for KLG to install an "Automated Box Storage and Handling System" (ABS system) at GOP's beef packing plant in Douglas County, Nebraska. The Court entered a Memorandum and Order Regarding Motions for Partial Summary Judgment, Filing 1, which left both parties unhappy. Consequently, this case is now before the Court on GOP's Motion for Reconsideration and Clarification and Request for Oral Argument, Filing 198, and KLG's Motion for Clarification, Filing 200. For the reasons set out below, GOP's Motion is granted in part and denied in part, while KLG's Motion is granted.[1]

---

[1] GOP requests oral argument on its Motion for Reconsideration and Clarification. Filing 198 at 2. GOP argues that such argument "is necessary because there are significant disputes between the parties regarding the interpretation and effect of the Court's order on the cross motions for summary judgment" and because "[o]ral argument will allow the parties to discuss the issues with the Court so that clarification may be provided regarding what issues and damages are going to be tried." Filing 198 at 2. "Generally, the Court does not hear oral argument on summary judgment motions." NECivR 56.1. The Court is even less inclined to do so on a motion for reconsideration or clarification. The Court finds oral argument is unnecessary where the parties have had ample opportunity to formulate their arguments in writing, where a motion to reconsider is a second bite at the apple in which neither new arguments nor mere rehashing of prior arguments is appropriate, and where parties are best guided by written arguments and a written ruling instead of by the parties' impressions of what was said at oral argument. GOP's request for oral argument is denied.

# I.  INTRODUCTION

The Court has already set out some of the pertinent factual background to this case in its Memorandum and Order on Plaintiff's [First] Motion for Partial Summary Judgment. Filing 79 at 3–9; *see also* *Kuecker Logistics Grp., Inc. v. Greater Omaha Packing Co*., No. 8:20CV307, 2023 WL 3198418, at *2–*4 (D. Neb. Apr. 14, 2023). The Court set out still more factual background in its Memorandum and Order Regarding Motions for Partial Summary Judgment, Filing 184 at 3–11, which incidentally is the Order the parties ask the Court to reconsider and clarify. Consequently, the focus of this "Introduction" is the Court's latest ruling on dispositive motions.

> ### 1.    *Procedural Background*

Even with that limited focus, some procedural background is appropriate to put the challenged ruling in context. In this action, KLG asserted claims against GOP for breach of contract, foreclosure of construction lien, unjust enrichment, and violation of the Nebraska Construction Prompt Pay Act seeking the remaining principal amount of $2,486,321.03 plus contractual interest under the parties' contract. Filing 25 at 1. GOP asserted counterclaims for breach of contract, breach of express and implied warranties, negligent misrepresentation, fraudulent misrepresentation, and bad faith construction lien. Filing 26.

On KLG's first Motion for Partial Summary Judgment, the Court granted summary judgment in KLG's favor on GOP's counterclaims for negligent misrepresentation and fraudulent misrepresentation as barred by the economic loss doctrine. Filing 79 at 43. Subsequently, GOP filed a Motion for Partial Summary Judgment on Counts One and Two of its Counterclaim, that is, the counterclaims for breach of contract and breach of warranties. Filing 88 at 1. GOP sought summary judgment on its counterclaim for breach of contract on the ground

that KLG failed to provide GOP with an ABS system that included box optimization functionality and, as a result, GOP failed to realize any of the promised return on investment (ROI) from box optimization. Filing 90 at 1–2. GOP sought summary judgment on its damages, including $6.24 million annual ROI from box optimization allegedly promised by KLG for the 33 months between when KLG's system was supposed to become operational and when it was replaced, totaling $17,160,000. Filing 90 at 13. GOP also sought as damages $1,629,900 for the amount GOP paid Cirrus Tech for software to replace KLG's software. Filing 90 at 13. Thus, GOP sought the sum of $18,789,900 in damages at summary judgment. Filing 90 at 13. GOP also sought summary judgment on its alternative counterclaim for breach of warranty on essentially the same grounds and for the same damages as on its claim of breach of contract. Filing 90 at 13. The same day GOP filed its Motion, KLG filed a Motion for Partial Summary Judgment on GOP's claim for lost ROI damages on its counterclaims. Filing 92 at 1. KLG argued that GOP had failed to provide a legally viable and factually supportable theory for its claim for ROI damages for KLG's alleged failure to provide box optimization. Filing 93 at 2.

2.   *The Challenged Ruling*

In its Memorandum and Order, the Court granted KLG's Motion for Partial Summary Judgment on GOP's claim for lost ROI damages on GOP's counterclaims because there is no contractual basis for such damages (*i.e.*, no promise of an annual ROI of $6.24 million from box optimization). Filing 184 at 33; *see also* Filing 184 at 29–30. The Court granted GOP's Motion for Partial Summary Judgment on Counts One and Two of its Counterclaim as to KLG's liability for breach of contract and breach of warranty for failure to provide a box optimization system as the Court had construed the box optimization term in that ruling, but the Court denied GOP's Motion as to any claim for breach of contract or breach of warranty or damages on either claim

3

based on lost ROI. Filing 184 at 33. Lastly, the Court stated, "This case shall proceed to trial solely on the question of whether GOP is entitled to the damages it claims for replacement of software for the box optimization system." Filing 184 at 33.

Trial in this matter is currently set to begin on February 13, 2024.

### 3.    The Motions for Reconsideration and Clarification

In its Motion for Reconsideration and Clarification now before the Court, GOP asks the Court to "reconsider" and "modify" its ruling granting KLG's Motion for Partial Summary Judgment because "there is a genuine issue of material fact that precludes summary judgment in favor of [KLG]" on ROI damages. Filing 198 at 1. GOP also requests "clarification" of the statement about the only damages left for trial on its counterclaims because GOP asserts it has additional damages beyond replacement of software for box optimization on which KLG did not seek summary judgment, including downtime, cost of capital, outside storage costs, and additional labor. Filing 198 at 1.

In its Motion for Clarification, KLG also seeks "clarification" of the language in the Court's ruling "that seems to indicate that only one issue remains for trial." Filing 200 at 1. Somewhat more specifically, KLG seeks clarification regarding the status of its claims for about $2.5 million that GOP allegedly failed to pay KLG, as well as KLG's affirmative defenses, such as offset based upon the amount GOP withheld from payment. Filing 200 at 1.

## II.  LEGAL ANALYSIS

### A.  Applicable Standards

Before considering the parties' Motions in more detail, the Court deems it appropriate to set out the standards applicable to those Motions. The Court recognizes that "[a] 'motion for reconsideration' is not described in the Federal Rules of Civil Procedure, but such a motion is

typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 997 (8th Cir. 2017) (quoting *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008)).[2] KLG does not identify the authority for its Motion for Clarification in either its Motion or its supporting brief. *See generally* Filing 200; Filing 201. On the other hand, GOP asserts that its Motion for Reconsideration and Clarification is pursuant to Federal Rule of Civil Procedure 54(b). *See* Filing 198 at 1. GOP then asserts in its brief *inter alia* that the standard for reconsideration under Rule 54(b) is typically held to be less exacting than the standard under either Rule 59(e) or Rule 60(b). Filing 199 at 5. Thus, the Court must decide which rule applies in this case.

1.    *Rule 59(e) Versus Rule 60(b)*

Federal Rule of Civil Procedure 59(e) applies only to motions to alter or amend a judgment. *See Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) ("Rule 59(e) motions are motions to alter or amend a *judgment*, not any nonfinal order." (emphasis in original)); *see also Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 734 n.2 (8th Cir. 2021) (noting that a motion under Rule 59(e) "is reserved for final judgments"). Consequently, the Eighth Circuit Court of Appeals has explained that a motion to reconsider a non-final order is construed as "one under Rule 60(b)." *Kohlbeck*, 7 F.4th at 734 n.2 ("This court construes motions for

---

[2] Rule 60(b) has no time limit for a motion to reconsider a non-final order other than "within a reasonable time—and for reasons (1) [mistake, inadvertence, surprise, or excusable neglect], (2) [newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)], and (3) [fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(b). On the other hand, Rule 59(e) provides a specific deadline: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Both parties' motions here are timely under either rule.

reconsideration of non-final orders as motions under Rule 60(b). . . ." (citing *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018))).

Because whether Rule 59(e) or Rule 60(b) applies depends on whether the ruling is "final," *see id.*, the Court must determine whether the ruling on the motions for partial summary judgment was "final." "A final decision within the meaning of [28 U.S.C.] § 1291 ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Perficient, Inc. v. Munley*, 43 F.4th 887, 889 (8th Cir. 2022) (cleaned up) (quoting *Dieser v. Cont'l Cas. Co*., 440 F.3d 920, 923 (8th Cir. 2006). Consequently,

> [a]n order denying summary judgment is typically nonfinal because it does not "end[ ] the litigation on the merits." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (citation omitted); see also 28 U.S.C. § 1291 (granting appellate courts jurisdiction over "final decisions of the district courts"). In fact, almost by definition, it keeps the litigation going, which means that the party who loses must generally wait until the case is over to appeal. See *Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010).

*Washington v. City of St. Louis, Missouri*, 84 F.4th 770, 773 (8th Cir. 2023). Similarly, an order granting summary judgment that does not end the case is not final. *See Kohlbeck*, 7 F.4th at 736 (stating that the district court's order granting summary judgment was not final where it determined liability and ordered the parties to file a motion to determine the damages amount). Likewise, an order granting a motion for partial summary judgment—such as a ruling on liability on a claim that leaves open the question of damages—is not final. *Perficient, Inc.*, 43 F.4th at 890. Here, the ruling granted one motion for partial summary judgment and granted in part and denied in part another motion, so several issues remained to be determined. Thus, as between Rule 59(e) and Rule 60(b), Rule 60(b) would be the proper basis for the parties' motions to reconsider and clarify.

2.      *Rule 60(b) Standards*

As to the applicable standards under Rule 60(b), the Rule provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for" six enumerated reasons. Fed. R. Civ. P. 60(b). It appears that the most likely enumerated reasons for the Motions in this case are "(1) mistake, inadvertence, surprise, or excusable neglect" and "(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

The Eighth Circuit Court of Appeals has explained,

> Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *Jones v. Swanson*, 512 F.3d 1045, 1048 (8th Cir. 2008) (quotation omitted); *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (per curiam). "We will reverse a district court's ruling on a Rule 60(b) motion only if there was a clear abuse of the court's broad discretion." *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 807 (8th Cir. 2002). Relevant here, "[a]n error of law is necessarily an abuse of discretion." *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).

*Williams*, 891 F.3d at 706; *accord Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 842 (8th Cir. 2022) ("[Federal] Rule [of Civil Procedure] 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." (quoting *In re Levaquin Prod. Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014)).

Thus, "[i]n the civil context, our court has been clear that a motion for reconsideration 'serve[s] the limited function of correcting manifest errors of law or fact or . . . present[ing] newly discovered evidence.'" *United States v. Luger*, 837 F.3d 870, 875 (8th Cir. 2016) (quoting *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 407 (8th Cir. 2013)); *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) ("Motions for reconsideration [pursuant to Rule 60(b)] serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th

Cir. 1988))). This limitation means that "[a] court of appeals 'will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration [pursuant to Rule 59(e) or Rule 60(b)] in the district court.'" *Brown v. Louisiana-Pac. Corp.*, 820 F.3d 339, 348 (8th Cir. 2016) (quoting *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014), *cert. denied*, 574 U.S. 1156 (2015)). Nor will a district court. *Arnold*, 627 F.3d at 721 (explaining that a motion for reconsideration pursuant to Rule 60(b) "is also not the appropriate place to 'tender new legal theories for the first time'" (quoting *Hagerman*, 839 F.2d at 414)). Similarly, Rule 60(b) motions are not appropriate simply to reargue the merits of a claim or prior motion. *Broadway v. Norris*, 193 F.3d 987, 989–90 (8th Cir. 1999) ("In their 'motion for reconsideration,' defendants did nothing more than reargue, somewhat more fully, the merits of their claim of qualified immunity. This is not the purpose of Rule 60(b). It authorizes relief based on certain enumerated circumstances (for example, fraud, changed conditions, and the like). It is not a vehicle for simple reargument on the merits. This ground alone is sufficient to prevent a holding that the District Court abused its discretion in denying the motion.").

### 3.    *Rule 54(b) Versus Rule 60(b)*

GOP does not rely on either Rule 59(e) or Rule 60(b) as the authority for its motion, however. Instead, GOP asserts that its Motion is authorized by the last sentence of Federal Rule of Civil Procedure 54(b). *See* Filing 198 at 1. GOP also asserts that the standard for reconsideration under Rule 54(b) is "less exacting" than the standard under Rule 60(b). Filing 199 at 5. Thus, the Court must consider Rule 54(b) standards to determine which rule provides the appropriate avenue for reconsideration.

Rule 54(b) states,

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). "Finality" of the decision the party asks the court to reconsider is once again an important issue under Rule 54(b)—as it was under Rule 59(e) and Rule 60(b)—because the second sentence of Rule 54(b) plainly states that a case in which fewer than all claims have been resolved, the court may revise the decision at any time before entry of a final judgment. *Id.*

In a case involving denial of the plaintiffs' motion to reconsider the scope of leave to amend the complaint, the defendant argued "the district court could have considered the motion under Federal Rule of Civil Procedure 60(b) rather than under Federal Rule of Civil Procedure 54(b)," but the Eighth Circuit disagreed. *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 n.3 (8th Cir. 2015). The Eighth Circuit explained,

> Rule 54(b) allows a district court to revise a decision that adjudicates, but does not enter final judgment on, fewer than all claims in an action with multiple claims. Fed.R.Civ.P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). The district court concluded that because it had not yet entered final judgment on any of plaintiffs' claims when the plaintiffs filed the motion for reconsideration, Rule 54(b) is the appropriate rule under which to consider the motion. We agree. *See Auto Servs. Co., Inc. v. KPMG, LLP,* 537 F.3d 853, 856 (8th Cir.2008) (noting that district court must direct entry of judgment for purposes of a final judgment when issuing an order dismissing fewer than all of the claims). The district court did not enter final judgment until after denying the motion for reconsideration.

*Julianello*, 791 F.3d at 923. Similarly, the Eighth Circuit explained that when a party improperly sought reconsideration pursuant to Rule 59(e) before final judgment was entered, it "could have moved the District Court to exercise its general discretionary authority to review and revise its interlocutory rulings prior to the entry of final judgment" under Rule 54(b). *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856–57 (8th Cir. 2008). Oddly, in *Auto Services Company*, the Eighth Circuit did not mention Rule 60(b) as a basis for a motion to reconsider in that case, even though it had previously observed that "[a] 'motion for reconsideration' is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment." *Id.* at 855. As explained in the preceding subsection, the choice between Rule 59(e) or Rule 60(b) is the "typical" issue on "motions to reconsider" in decisions of the Eighth Circuit Court of Appeals both before and after *Julianello*.

### 4.   *Rule 54(b) and Rule 60(b) Standards Converge*

Whichever rule applies, it is not immediately apparent from decisions in the Eighth Circuit that Rule 54(b) involves a "less exacting" standard for a motion to reconsider than Rule 60(b). In a decision in a case in which a party filed a motion for reconsideration of an adverse summary judgment ruling pursuant to Rule 54(b), the Eighth Circuit stated the applicable standard relying on *Julianello*:

> "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015). Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the district court decided the prior motion. *Id.* at 922; *see also Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (stating that motions for reconsideration cannot be used to introduce new evidence or legal theories that "could have been adduced during pendency of the summary judgment motion" (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*,

827 F.2d 246, 251 (7th Cir. 1987))). A district court does not abuse its discretion in denying a motion for reconsideration used for such an "impermissible purpose." *Julianello*, 791 F.3d at 923.

*SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111–12 (8th Cir. 2019). Thus, the court will reject the same kinds of arguments on a Rule 54(b) motion as it will on a Rule 60(b) motion. *See Luger*, 837 F.3d at 875 (stating these limitations on a Rule 60(b) motion); *Arnold*, 627 F.3d at 721 (same).

As to the requirements for relief, my colleague recently stated that motions for reconsideration, including ones made under Rule 54(b), "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Mick v. Gibbons*, No. 4:22-CV-3025, 2023 WL 2433649, at *3 (D. Neb. Mar. 9, 2023) (quoting *Hagerman*, 839 F.2d at 414); *see also id.* at *5 ("[T]he Court finds there is no manifest error or exceptional circumstances justifying the Court's reconsideration of its prior order under Rule 54(b)."). The same colleague had previously opined that "[t]he standard to be applied in considering a motion to reconsider under Rule 54(b) is not clear, but it is typically held to be less exacting than would be a motion under Fed. R. Civ. P. 59(e), which is in turn less exacting than the standards enunciated in Fed. R. Civ. P. 60(b)." *Crabar/GBF, Inc. v. Wright*, 644 F. Supp. 3d 513, 533 (D. Neb. 2022). However, he then also stated, "[b]ut some of the same considerations are pertinent: whether the Court's findings of fact or conclusions of law were clearly or manifestly erroneous, and whether the motion rests on facts or legal arguments that could have been raised in the original motion but were not." *Id.*; *see also Basra v. Ecklund Logistics, Inc.*, No. 8:16CV83, 2017 WL 2912406, at *2 (D. Neb. July 6, 2017) (opinion by a predecessor observing that motions to reconsider under Rule 54(b) are "disfavored" and "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.").

11

After this exploration of the applicable standards—which was necessitated by GOP's argument and some uncertainty in Eighth Circuit precedent—the Court concludes that whether Rule 60(b) or Rule 54(b) applies to the motions for reconsideration in this case ultimately is not dispositive, where both prohibit reconsideration on the same grounds, both require a "manifest error of law or fact" to justify relief, and both are committed to the district court's discretion.

With these standards in mind, the Court turns first to the overlapping parts of the parties' Motions for Reconsideration.

### B.   "Clarification" of the Limitation on Damages Issues at Trial

Both parties seek clarification of the Court's statement in the challenged ruling that "[t]his case shall proceed to trial solely on the question of whether GOP is entitled to the damages it claims for replacement of software for the box optimization system." Filing 184 at 33. However, they seek different relief from the clarification or reconsideration of this statement. GOP asserts it has additional damages beyond replacement of software for box optimization—on which KLG did not seek summary judgment—including downtime, cost of capital, outside storage costs, and additional labor. Filing 198 at 1. For its part, KLG seeks clarification regarding the status of its claims for about $2.5 million that GOP allegedly failed to pay KLG, as well as KLG's affirmative defenses, such as offset based upon the amount GOP withheld from payment. Filing 200 at 1. Either way, the basic question is whether the Court intended to limit trial to a single question of GOP's damages for replacement software. The short answer is no.

That answer becomes apparent from a review of the parties' pleadings and arguments at summary judgment. Therefore, the Court will summarize those matters as to each party and then

provide a clarification of the Court's ruling on the damages issues that each party asserts should be presented at trial.

      1.    *Clarification as to KLG*

          a.    KLG's Pleadings and Motions

On each of its causes of action in its Amended Complaint, KLG sought approximately $2.5 million in damages for GOP's alleged misconduct. *See* [Filing 25 at 7](#) (on its claim for breach of contract, seeking "judgment in its favor . . . in the principal amount of $2,486,321.03, for prejudgment and post-judgment interest [and] for Plaintiff's costs and fees incurred. . . ."), 9 (on its claim for foreclosure of construction lien, seeking "foreclose[ur]e on its construction lien for the balance of $2,626,853.48, together with continued interest accruing thereon, costs of this action. . . ."), 10 (on its claim for unjust enrichment, seeking "for an award of damages suffered and sustained by Plaintiff in the amount of no less than $2,486,321.03, for prejudgment and post-judgment interest [and] for Plaintiff's costs and fees incurred. . . ."), 11 (on its claim for violation of the Nebraska Construction Prompt Payment Act, seeking "the principal sum of $2,486,321.03 for satisfaction of the debt owed on the Agreement [and] prejudgment and post-judgment interest [and] reasonable attorneys' fees. . . ."). Thus, KLG had its own damages claims based on its own causes of action.

In its Motion for Partial Summary Judgment, the only relief KLG sought was summary judgment in "its favor on GOP's claim for lost return on investment damages and for such further relief as this Court deems fair, just and equitable." [Filing 92 at 1](#). Thus, KLG's Motion did not address any of its own damages on its own claims against GOP, and the Court did not address those damages.

13

### b.   On Reconsideration, KLG's Own Damages Are Not Precluded

As explained above, KLG's Amended Complaint demonstrates that KLG had its own damages claims, so GOP's claims for damages for lost ROI and software replacement were not the only damages claims at issue in the case. Although GOP's damages for lost ROI were at issue on KLG's Motion for Partial Summary Judgment, no damages KLG sought were at issue, and the Court never intended to address any of KLG's own damages.

The Court's statement that "[t]his case shall proceed to trial solely on the question of whether GOP is entitled to the damages it claims for replacement of software for the box optimization system," Filing 184 at 33, failed to account for KLG's own damages claims, so that statement was at best the result of mistake or inadvertence and at worst a "manifest error." *See* Fed. R. Civ. P. 60(b) (permitting relief *inter alia* based on "(1) mistake, inadvertence, surprise, or excusable neglect" and "(6) any other reason that justifies relief"); *Luger*, 837 F.3d at 875 (stating the "manifest error" standard under Rule 60(b); *see also Mick*, 2023 WL 2433649, at *3 (finding the "manifest error" standard applies to reconsideration under Rule 54(b)). The statement was made in the context of the issues then before the Court, but it was too narrow in the context of the litigation as a whole, because it suggested that KLG could not pursue its damages claims. Thus, KLG's Motion for Clarification is granted to the extent that the Court's Memorandum and Order Regarding Motions for Partial Summary Judgment, Filing 184, does not preclude KLG from pursuing its claimed damages.

### 2.   *Clarification as to GOP*

### a.   GOP's Pleadings and Motion

In its Answer to Plaintiff's First Amended Complaint, Affirmative Defenses, and Counterclaims, GOP sought various kinds of damages on its claims of breach of contract and

14

breach of express and implied warranties. Specifically, GOP sought the following damages on those claims:

> As a direct and proximate result of Kuecker's breach, Greater Omaha has and continues to sustain out-of-pocket expenses in an amount that is, to date, in excess of the sum of $7.2 million, plus costs, interest, loss of use damages, and other incidental and consequential damages in an amount to be proven at trial.

Filing 26 at 12 (¶ 35), 13 (¶ 39). Neither cause of action explicitly identifies lost ROI as an item of damages. GOP alleges a promise of ROI in its claim for negligent misrepresentation, Filing 26 at 13 (¶ 42), 14 (¶ 46), and GOP appears to incorporate that alleged promise in its claim for fraudulent misrepresentation, Filing 26 at 14 (¶ 48). However, the prayer paragraph for each of the misrepresentation claims is identical to the prayer paragraph for the claims of breach of contract and breach of express and implied warranties. *See* Filing 26 at 14 (¶¶ 47, 52). Again, the Court granted KLG's first Motion for Partial Summary Judgment on GOP's misrepresentation claims. *See* Filing 79 at 43. On GOP's bad faith construction lien counterclaim, GOP asserts that KLG's construction lien for $2,972,622.19 "overstates the amount to which it is entitled, and was otherwise filed in bad faith." Filing 26 at 15 (¶ 55).

GOP's "Prayer for Relief" on its Counterclaims asks the Court for an order on the following terms:

1.    Ordering Rescission of the Contracts;

2.    Damages in excess of $7.2 million for additional out-of-pocket costs to operate and repair the system, as well as lost income incurred to date, plus other additional damages and costs in amounts to be proven at trial;

3.    Damages of $6,240,000 per year, for seven (7) years for lost return on investment (ROI) as promised;

4.    Attorney's fees;

5.    Costs of litigation; and

15

6.      Any other further relief as the Court deems fair and equitable.

Filing 26 at 15.

Further examination of GOP's Motion for Partial Summary Judgment shows that GOP

sought the following relief for breach of contract, as set out in its supporting brief:

> The ROI on the box optimization function KLG promised to provide was $6.24 million, which, over a period of 33 months, is $17,160,000. Coupled with the additional $1,629,900 Greater Omaha paid to Cirrus Tech to replace KLG's software Greater Omaha is entitled to partial summary judgment on its Counterclaim for breach of contract in the amount of $18,789,900.

Filing 90 at 13. As to its claim for breach of warranties, GOP also argued,

> As a result of KLG's breaches, Greater Omaha incurred the same damages outlined in its breach of contract claim. Accordingly, partial summary judgment should be entered in favor of Greater Omaha on its breach of warranty claim in the amount of $18,789,900.

Filing 90 at 14. These two paragraphs suggest that the only damages GOP was seeking on its

counterclaims for breach of contract and breach of warranties were for lost ROI and the cost of

replacement software. However, GOP included the following as the last paragraph of its

conclusion to its supporting brief:

> Because there are no genuine issues of material fact that would preclude a finding in Greater Omaha's favor with respect to its counterclaim for breach of contract, partial summary judgment should be entered in favor of Greater Omaha, and Greater Omaha should be awarded $18,789,900 in damages, subject to proof of additional damages at trial.

Filing 90 at 14.

>   b.  On Reconsideration, GOP Is Only Precluded from Seeking
>       Lost ROI Damages

Notwithstanding the absence of any explicit reference to lost ROI as relief on GOP's

counterclaims for breach of contract and breach of warranties as indicated above, the parties and

the Court understood GOP to be seeking lost ROI as damages on those claims. This is so, where

KLG's second Motion for Partial Summary Judgment sought summary judgment on GOP's claim for lost ROI damages on its remaining claims but not on any other damages GOP claimed, Filing 92 at 1, and GOP sought lost ROI damages on its Motion for Partial Summary Judgment on its claims for breach of contract and breach of warranties, Filing 90 at 13. Just as importantly, GOP's Counterclaim makes clear that in addition to lost ROI damages, GOP seeks "[d]amages in excess of $7.2 million for additional out-of-pocket costs to operate and repair the system, as well as lost income incurred to date, plus other additional damages and costs in amounts to be proven at trial." Filing 26 at 15. Turning to GOP's Motion for Partial Summary Judgment, the last clause of this last paragraph of GOP's brief in support of its Motion for Partial Summary Judgment seeks summary judgment in the amount of $18,789,900 in damages "subject to proof of additional damages at trial." Filing 90 at 14. The quoted language makes clear that GOP was not limiting its damages on its counterclaims for breach of contract and breach of warranties to lost ROI and the amount paid for replacement software.

To the extent the Court read GOP to have limited its damages to lost ROI and the cost of replacement software or to have waived any damages other than lost ROI and the cost of replacement software, that was again at best a mistake and at worst a "manifest error." *See* Fed. R. Civ. P. 60(b) (permitting relief *inter alia* based on "(1) mistake, inadvertence, surprise, or excusable neglect" and "(6) any other reason that justifies relief"); *Luger*, 837 F.3d 875 (stating the "manifest error" standard under Rule 60(b); *see also Mick*, 2023 WL 2433649, at *3 (finding the "manifest error" standard applies to reconsideration under Rule 54(b)). The Court's ruling should properly have barred only GOP's damages for lost ROI, not other damages GOP pleaded and prayed for on its counterclaims for breach of contract and breach of warranties. Thus, the part of GOP's Motion seeking "clarification" of the statement about the only damages left for

17

trial, Filing 198 at 1, is granted to the following extent: The only damages GOP is so far barred from recovering on its remaining counterclaims are damages for lost ROI.

GOP is not happy with that limitation on its damages, however, as discussed in the next section of this ruling.

### C.  The Remaining Part of GOP's Motion for Reconsideration

In the remainder of GOP's Motion for Reconsideration, GOP asks the Court to "reconsider" and "modify" its ruling granting KLG's Motion for Partial Summary Judgment because "there is a genuine issue of material fact that precludes summary judgment in favor of [KLG]" on ROI damages. Filing 198 at 1. In other words, GOP seeks to resuscitate its claim for lost ROI damages on its remaining counterclaims. KLG disputes that the Court's challenged ruling contains any manifest error warranting reconsideration and modification. Filing 202 at 1.

Although the parties have raised several issues concerning this part of GOP's Motion, the Court finds that two issues are dispositive. The first such issue is KLG's contention that GOP is impermissibly seeking reconsideration under Rule 54(b) on the basis of a "new" argument. The second issue is KLG's contention that GOP has not attempted to meet the "manifest error" requirement for relief on a motion for reconsideration. The Court will start with these issues and address others only to the extent the Court deems it appropriate to do so.

1.    *The "New" Argument Issue*

a.   The Parties' Arguments

GOP asserts that the Court's holding that KLG is entitled to summary judgment on GOP's claim for lost ROI damages must be modified, because KLG's own calculation of ROI in the contract is—at a minimum—evidence of the increased margins from the box optimization feature that the Court held as a matter of law KLG had failed to provide. Filing 199 at 2; *see also*

Filing 199 at 13–22. GOP also points out that its CFO testified that even a slight additional yield of $.01 per pound ($1.00 per box) in GOP's operations would have considerable effect on GOP's yield over time. Filing 199 at 3. GOP argues that these two pieces of evidence together demonstrate that there are genuine issues of material fact that require modification of the partial summary judgment in favor of KLG and submission of the amount of ROI damages to a jury.

Filing 199 at 3. More specifically, GOP contends that despite the Court's holding that $6.24 million annually for ROI in the contract was an estimate and not a promise, GOP should be able to present KLG's estimate at trial as "evidence that automated box optimization would generate *at least some* ROI." Filing 199 at 9 (emphasis in the original). GOP then sets out at some length its CFO's deposition testimony about the effect of increasing the margin on single box selectivity. Filing 199 at 9–10. GOP also reiterates its argument that the ROI analysis that KLG included in the contract "was a critical factor in [GOP's] decision to select KLG for its warehouse project." Filing 199 at 11. GOP argues that because it was entitled to all reasonable inferences as the non-moving party, this evidence should have precluded the Court's entry of summary judgment for KLG on GOP's lost ROI damages and instead should have required submission of the question to the jury. Filing 199 at 12–13.

KLG argues that GOP has not addressed the Court's order considering the arguments that GOP actually made in response to KLG's Motion for Partial Summary Judgment but instead takes an "entirely new position that it could have asserted, but did not, [in] response to [KLG's] motion." Filing 202 at 1. KLG asserts, "GOP's position in opposition to [KLG's] motion was simply that [KLG] was wrong and that the parties' agreement did guarantee GOP a box optimization ROI." Filing 202 at 1. KLG contends that instead of rearguing against the Court's holding that the parties' agreement did not guarantee GOP box optimization ROI, GOP now

argues that "the Court erred by not finding there was an issue of fact as to the amount of GOP's ROI damages." Filing 202 at 1–2. KLG acknowledges that GOP points to evidence it already put in the record during summary judgment briefing, but KLG contends that evidence was not offered in support of the new argument GOP makes now in its Motion for Reconsideration. Filing 202 at 2. Indeed, KLG argues that GOP should be judicially estopped from asserting its new and inconsistent position. *See* Filing 202 at 13–14.

In reply, GOP denies that it is making "new" arguments on reconsideration that it did not raise on summary judgment. Filing 205 at 5. GOP then cites parts of its brief in opposition to KLG's Motion for Partial Summary Judgment as demonstrating that it raised "the same arguments" then as it is making now. Filing 205 at 6. GOP also points to its citations of the evidence on which it now relies in its reply brief in support of its Motion for Partial Summary Judgment and its Statement of Additional Facts in support of its opposition to KLG's Motion for Partial Summary Judgment. Filing 205 at 7–8.

> b. The "New" Argument Prohibition Applies under Rule 60(b) or Rule 54(b)

As pointed out above, whether a motion for reconsideration is based on Rule 60(b) or Rule 54(b), the motion cannot be premised on "new" arguments. Neither an appellate court nor a district court will consider a new issue, new argument, or new theory raised for the first time on a Rule 60(b) motion for reconsideration in the district court. *See Brown*, 820 F.3d at 348; *Arnold*, 627 F.3d at 721. Likewise, a Rule 54(b) motion to reconsider cannot be used to introduce new evidence or new legal theories that could have been adduced during pendency of the summary judgment motion, and a district court does not abuse its discretion by denying a Rule 54(b) motion for reconsideration used for such an impermissible purpose. *SPV-LS, LLC*, 912 F.3d at

20

1111–12; *Crabar/GBF, Inc.*, 644 F. Supp. 3d at 533 (explaining that it is improper to base a Rule 54(b) motion to reconsider "on facts or legal arguments that could have been raised in the original motion but were not"). Thus, if GOP's theory or argument on reconsideration is "new," GOP's motion will properly be denied.

### c. GOP's "Genuine Issue of Material Fact" Argument Is an Impermissible "New" Argument

The Court finds GOP's denial that it is making new arguments on reconsideration that it did not raise on summary judgment, Filing 205 at 5–6, is at best mistaken and at worst disingenuous. Comparison of the current arguments with the former ones clearly demonstrates that fact.

In its opening brief in support of its Motion for Reconsideration, GOP asserts the following argument:

> The Kuecker ROI estimate in the contract, as well as evidence of how the new automated warehouse facility changed the Greater Omaha operation, along with the testimony of Greater Omaha's CFO regarding Greater Omaha's operations, show how [there are] genuine issues of material fact that require modification of the partial summary judgment in favor of Kuecker on the issue of ROI damages. Accordingly, Greater Omaha requests that this Court modify its order and clarify that Kuecker's motion for partial summary judgment on the issue of ROI damages does not preclude their submittal by Greater Omaha to the Jury. The issue of the amount of ROI damages is a jury question.

Filing 199 at 3. In its reply to KLG's contention that this argument is "new," GOP argues as follows:

> In its brief in opposition to Kuecker's motion for partial summary judgment, Greater Omaha specifically argued: "At a minimum, there is a genuine issue of material fact regarding Greater Omaha's damages that precludes the entry of partial summary judgment in favor of KLG." (Filing 122 p. 2). Greater Omaha went on to say that "under the terms of the Contract, the express *value of the box optimization function was $6.24 million* annually." (Filing 122 p. 3-4) (emphasis in original). Greater Omaha argued "[T]he Contract itself provides that KLG's box optimization system will result in $6.24 million in annual ROI. This is KLG's

21

own valuation of the system, not an estimate or a best guess." ([Filing 122](#) p. 11) (emphasis added [although no emphasis was added]). Greater Omaha argued "Under these facts and circumstances, the Contract terms are sufficient support of Greater Omaha's damage claim of the lost value of the Contract." ([Filing 122](#) p. 11). Greater Omaha argued that "Because box optimization never existed or never worked as a feature of the ABS system KLG installed in its warehouse, Greater Omaha did not receive the benefit of its bargain and, under the basic law of contracts, is entitled to damages." ([Filing 122](#) p.4).

[Filing 205 at 6](#). The assertion in GOP's reply that the statements it highlights from its summary judgment briefing raised the same argument that GOP now offers in support of reconsideration does not withstand scrutiny.

First, GOP takes out of context its prior statement that "[a]t a minimum, there is a genuine issue of material fact regarding Greater Omaha's damages that precludes the entry of partial summary judgment in favor of KLG." [Filing 205 at 6](#) (citing [Filing 122 at 2](#)). When GOP returned to that "alternative" contention later in its brief, GOP made clear that "[a]t minimum, the Contract terms are ambiguous and should be left for a jury to interpret based upon the facts of this case." [Filing 122 at 15](#). This statement is in section IV of its brief, which was entitled, "In the alternative, there is a genuine issue of material fact as to whether the Contract guarantees $6.24 million in ROI from box optimization that precludes summary judgment in favor of KLG." GOP then argued, "The evidence shows that Greater Omaha reasonably believed that the promised ROI of $6.24 million per year was a critical factor in contracting with KLG." [Filing 122 at 15](#). Next, GOP argued that "KLG's own project manager interpreted the Contract to provide a guaranteed $6.24 million ROI." [Filing 122 at 16](#). For these reasons, GOP argued "there is at least a genuine issue of material fact as to whether the Contract provides for a guaranteed $6.24 million ROI and KLG's motion should be denied." [Filing 122 at 16](#). It is clear from this argument that the sole basis for the alleged "genuine issue of material fact" at summary

judgment was ambiguity of the contract as to whether it guaranteed or promised $6.24 million annually in ROI from box optimization, not the current argument that there is a genuine issue of material fact as to whether GOP is entitled to ROI damages in some amount.

The next three statements in GOP's opposition to KLG's Motion for Partial Summary Judgment were likewise all offered to support GOP's contention that the parties' contract guaranteed or promised $6.24 million annually in ROI. GOP argued that "under the terms of the Contract, the express *value of the box optimization function was $6.24 million* annually." (Filing 122 at 3-4) (emphasis in original). However, that statement actually begins with "[i]n other words" showing that it is in accord with the preceding statement in the brief. That preceding statement was, "According to the express terms of the Contract, using box optimization as part of the ABS system's allocation process would guarantee Greater Omaha $6.24 million in ROI per year for seven years." Filing 122 at 3. Thus, the context was not that there was a genuine issue of material fact as to the amount of any ROI damages—GOP's current argument—but an assertion that a certain ROI was promised.

GOP also points to its prior statement, "[T]he Contract itself provides that KLG's box optimization system will result in $6.24 million in annual ROI. This is KLG's own valuation of the system, not an estimate or a best guess." Filing 122 at 11. GOP then added, "Under these facts and circumstances, the Contract terms are sufficient support of Greater Omaha's damage claim of the lost value of the Contract." Filing 122 at 11. These statements also demonstrate that GOP's prior argument was that "the facts and circumstances" that support a claim for the lost value of the contract as damages was that the contract included a promise for $6.24 million in annual ROI, not the current argument that the estimate in the contract provides a factual basis to determine the amount of damages.

23

The Court is equally unpersuaded by GOP's further contentions that it previously asserted its current argument. GOP argues,

> In its reply brief in support of its cross motion for summary judgment, Greater Omaha also argued that Kuecker's $6.24 million estimate in the Contract was competent evidence of the value of the automated box optimization feature. "The simple truth is that based on the plain terms of the Contract KLG valued the box optimization feature of the automated warehouse system at $6.24 million per year." (Filing 138 p. 9) (emphasis added [although no emphasis was added]).

Filing 205 at 7. The problem with this part of GOP's argument is that it again ignores the context in which the quotation from its reply brief was made. That context was the following:

> KLG argues that "[i]f GOP was correct that Kuecker was guaranteeing a certain ROI dollar amount per year, there would need to also be provisions that set forth the methodology for calculating the ROI in order to determine whether the metric was met." (KLG Response Brief p. 13). But KLG does not provide a single case citation to support this argument. And from a practical perspective, that argument makes no sense. There is nothing in the law that requires a party to "show their work" with respect to costs or deliverables promised under the terms of a contract.

Filing 138 at 9. The part of GOP's reply brief that GOP relies on here followed immediately after this paragraph. Thus, the part of its reply brief that GOP quoted is again in the context of GOP's prior argument that the parties' contract included a promise of a specific ROI and not in the context of the argument that GOP now asserts about genuine issues of material fact on the amount of ROI damages.

Finally, GOP relies on the following three statements from its Additional Statement of Material Facts in opposition to KLG's Motion for Partial Summary Judgment:

> 32.    Using a functioning ABS system, Greater Omaha is able to allocate and ship 20,000 to 25,000 boxes or product per day (100,000 to 125,000 boxes per week or 5.2 million to 6.2 million boxes per year). (Filing 91-10, Airoldi Dep. 179:14-108:17).

> 33.    Each box can weigh up to 100 pounds each. (Filing 91-10, Airoldi Dep. 179:14-180:17).

> 34.    If KLG's System delivered the promised box optimization functionality and Greater Omaha was able to sell its products for as little as an additional one cent per pound (or $1.00 per box), its ROI would have easily exceeded the $6.24 million figure KLG promised under the terms of the Contract. (Filing 91-10, Airoldi Dep. 179:14-108:17).

Filing 121 at 11–12. The Court's problem with these statements is not that they embody a hypothetical with no known relationship to reality but that they are again premised on KLG having "promised" a specific figure for annual ROI under the terms of the parties' contract. They were not offered to support a claim for ROI damages even if there was no promise or guarantee of annual ROI in the parties' contract.

Plainly, GOP wishes it had made the argument at summary judgment that it is making now, and while it perhaps could have, it did not. The attempt to raise the "new" argument now is impermissible under Rule 60(b) or Rule 54(b) and that alone is sufficient basis to deny this part of GOP's Motion for Reconsideration. *See Brown*, 820 F.3d at 348 (Rule 60(b)); *Arnold*, 627 F.3d at 721 (same); *see also SPV-LS, LLC*, 912 F.3d at 1111–12 (Rule 54(b)); *Crabar/GBF, Inc.*, 644 F. Supp. 3d at 533 (same).

### 2.    The Lack of a "Manifest Error" Argument

KLG also argues, "GOP's Motion for reconsideration of the Court's Memorandum and Order Regarding the Parties' Motions for Partial Summary Judgment (the 'Order') does not demonstrate that the Court committed any error, let alone manifest error, in dismissing GOP's box optimization ROI (lost profit) damages." Filing 202 at 1. The Court begins its analysis of this issue as it ordinarily does with a summary of the parties' arguments—to the extent such arguments are offered.

25

a.   The Parties' Arguments

In its opening brief in support of its Motion for Reconsideration, GOP argues, "A court may reconsider an interlocutory order to 'correct any clearly or manifestly erroneous findings of fact or conclusions of law.'" Filing 199 at 6 (quoting *Roemen v. United States*, 343 F.R.D. 619, 623 (D.S.D. 2023), and citing *Hodges v. S. Dakota Sch. of Mines & Tech.*, 647 F. Supp. 3d 761, 770 (D.S.D. 2022)). It then cites a colleague's definition of "manifest errors" as a "wholesale disregard, misapplication, or failure to recognize controlling precedent." Filing 199 at 6–7.[3] There is no further mention of "manifest error" and no further mention of "wholesale disregard," or "misapplication," or "failure to recognize" controlling precedent in GOP's opening brief, *see generally* Filing 199, and none whatsoever of any of those terms in GOP's reply. *See generally* Filing 205. In contrast, KLG argues repeatedly that the Court did not commit any "manifest error" and that GOP has not shown how the Court engaged in wholesale disregard, misapplication, or failure to recognize controlling precedent. *See* Filing 202 at 10, 12, 13, 21, 22.

b.   GOP Does Not Address the "Manifest Error" Requirement
under Rule 60(b) and Rule 54(b)

GOP does not challenge—let alone demonstrate a manifest error in—the Court's holding that the contract unambiguously did not guarantee or promise $6.24 million annually in ROI from the box optimization function. Filing 184 at 25. Likewise, GOP does not challenge—let alone demonstrate a manifest error in—the Court's holding that because the parties' contract did not promise GOP an annual ROI of $6.24 million from box optimization, the causal link between the breach of the "box optimization" term in the contract and ROI damages was effectively

---

[3] GOP attributes the statement to the decision in *Aguilera v. City of Omaha*, No. 8:19-CV-239, 2020 U.S. Dist. LEXIS 218752, at *1 (D. Neb. Nov. 23, 2020). The statement is in that decision on Lexis, but that decision is not available on Westlaw. The same colleague made the same statement in a slightly earlier decision that can be found on Westlaw. *See Hutson v. Saul*, No. 4:19-CV-3117, 2020 WL 5653518, at *1 (D. Neb. Sept. 23, 2020).

severed. Filing 184 at 30. Thus, GOP has not identified any "manifest error" in the Court's holdings as required to obtain relief on a motion for reconsideration. *See Luger*, 837 F.3d at 875 (identifying the "manifest error" standard under Rule 60(b)); *Mick*, 2023 WL 2433649, at \*3 (same under Rule 54(b)); *Crabar/GBF, Inc.*, 644 F. Supp. 3d at 533 (same). Furthermore, the Court finds no basis to retreat from those holdings.

This part of GOP's Motion for Reconsideration is denied for failure to demonstrate any "manifest error." The Court does not find it necessary to address any other issue raised by the parties in their Motions for Reconsideration.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.      GOP's Motion for Reconsideration and Clarification and Request for Oral Argument, Filing 198, is granted in part and denied in part as set out above; and

2.      KLG's Motion for Clarification, Filing 200, is granted

Dated this 27th day of November, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge