IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KUECKER LOGISTICS GROUP, INC., | **8:20CV307** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER ON** |
| GREATER OMAHA PACKING CO., INC., | **MOTIONS TO EXCLUDE EXPERTS'** |
| Defendant. | **TESTIMONY** |

This lawsuit arises from a dispute between plaintiff/counter-defendant Kuecker Logistics Group, Inc., (KLG) and defendant/counterclaimant Greater Omaha Packing Company, Inc., (GOP) over a contract for KLG to install an "Automated Box Storage and Handling System" (ABS system) at GOP's beef packing plant in Douglas County, Nebraska. It is now before the Court on four pretrial motions to exclude opinions of experts.[1] For the reasons set out below, the Motions are granted, denied, or granted in part and denied in part, as set out below.

## I.   INTRODUCTION

The Court has already set out some of the pertinent factual background to this case in its Memorandum and Order on Plaintiff's [First] Motion for Partial Summary Judgment. Filing 79 at 3–9; *see also Kuecker Logistics Grp., Inc. v. Greater Omaha Packing Co*., No. 8:20CV307, 2023 WL 3198418, at *2–*4 (D. Neb. Apr. 14, 2023). The Court set out still more factual background in its Memorandum and Order Regarding Motions for Partial Summary Judgment. Filing 184 at 3–11; *see also Kuecker Logistics Group, Inc. v. Greater Omaha Packing Co., Inc*., No. 8:20CV307, 2023 WL 9111078, at *1–6 (D. Neb. Aug. 29, 2023), *clarified on denial of reconsideration sub nom. Kuecker Logistics Grp., LLC v. Greater Omaha Packing Co*., No.

---

[1] Two pretrial motions in limine are also pending, but the Court will address them in a separate order.

8:20CV307, 2023 WL 8187406 (D. Neb. Nov. 27, 2023). Consequently, the focus of this "Introduction" is the pending motions to exclude experts' opinions.

The first motion now before the Court is GOP's Motion to Exclude Opinion Testimony of Plaintiff's Non-Retained Experts. Filing 100. The second motion is GOP's *Daubert* Motion to Exclude Expert Testimony of Jonathan Marks. Filing 103. The third motion is KLG's Motion to Exclude Expert Testimony. Filing 108. The fourth motion is KLG's Motion to Exclude Dr. Jack Baldwin's Expert Testimony. Filing 146.

The briefing on all four of these Motions was complete, and the parties had filed two additional Motions in Limine, Filing 158; Filing 168, before the Court entered its Memorandum and Order Regarding Motions for Partial Summary Judgment. Filing 184. In a Text Order, Filing 197, a magistrate judge directed the parties to advise the Court as to which pending motions still need resolution within 14 days of the ruling on then-expected motions for reconsideration and/or clarification. After the Court entered its Memorandum and Order Regarding the Parties' Motions to Reconsider and Clarify, Filing 209, KLG filed its Notice of Motions for which a Ruling Is Still Needed, Filing 210, and GOP filed its Report on Pending Motions, Filing 211. KLG asserted that, of the four Motions concerning experts now before the Court, only its two Motions, Filing 108 and Filing 146, still required rulings. Filing 210 at 2–4. On the other hand, GOP asserted that all four of the Motions concerning experts now before the Court still require rulings. Filing 211 at 1.

## II. LEGAL ANALYSIS

The Court will consider each of the motions to exclude experts in turn. However, the Court will first summarize the standards for disclosure and exclusion of expert testimony pursuant to Federal Rules of Civil Procedure 26 and 37, then the standards for admission or exclusion of opinion testimony pursuant to Federal Rule of Evidence 702 and *Daubert*.

## A. Applicable Standards

### 1. Disclosure and Exclusion of Experts

As the Eighth Circuit Court of Appeals has explained,

> Rule 26(a)(2) [of the Federal Rules of Civil Procedure] governs the disclosure of witnesses who may be used at trial to present expert testimony. For a witness retained or otherwise engaged to provide expert testimony in litigation, Rule 26(a)(2)(B) requires a disclosure accompanied by a written report, signed by the witness, providing prescribed, detailed information. On the other hand, for experts not required to file a written report, Rule 26(a)(2)(C), added in 2010, requires a "considerably less extensive" summary disclosure of the opinions to be offered. *See* Rule 26 advisory committee note to 2010 amendment.

*Johnson v. Friesen*, 79 F.4th 939, 943 (8th Cir. 2023).[2] What distinguishes experts who must file a report from those who do not is at least in part whether the expert "is one retained or specially employed to provide expert testimony in the case, or one whose duties as the party's employee regularly involve giving expert testimony." *Compare* Fed. R. Civ. P. 26(a)(2)(B), *with* Fed. R. Civ. P. 26(a)(2)(C). Hence, courts often refer to "witnesses who do not provide a written report" under

---

[2] The two parts of Rule 26(a)(2) specifying the required disclosures for experts state the following:

(**B**) ***Witnesses Who Must Provide a Written Report***. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(**i**) a complete statement of all opinions the witness will express and the basis and reasons for them;

(**ii**) the facts or data considered by the witness in forming them;

(**iii**) any exhibits that will be used to summarize or support them;

(**iv**) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(**v**) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(**vi**) a statement of the compensation to be paid for the study and testimony in the case.

(**C**) ***Witnesses Who Do Not Provide a Written Report***. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(**i**) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(**ii**) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(B)–(c).

Rule 26(a)(2)(C) as "non-retained experts." *See, e.g.*, *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644 (8th Cir. 2022) ("Under Rule 26, non-retained experts . . . are subject to less stringent disclosure requirements than a retained expert." (citing *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018), in turn citing Fed. R. Civ. P. 26(a)(2)(C))).

There is surprisingly little guidance from the Circuit Courts of Appeals on the differences between an expert requiring Rule 26(a)(2)(B) disclosure and one requiring only Rule 26(a)(2)(C) disclosure, at least outside of the treating physician context. However, the First Circuit Court of Appeals explained that—starting with the language of the rule itself as a court would with a statute—"the rule covers two types of experts: (i) 'retained or specially employed' experts who meet certain criteria and (ii) employees of a party who meet certain criteria." *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (quoting Fed. R. Civ. P. 26(a)(2)(B)). The court then explained,

> In order to give the phrase "retained or specially employed" any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony. It is this difference, we think, that best informs the language of the rule.

*Downey*, 633 F.3d at 6. In the case before the First Circuit, the expert in question was an exterminator who was involved in remediating a bedbug infestation. *Id.* at 4. The First Circuit explained,

> [The exterminator] was not retained or specially employed for the purpose of offering expert opinion testimony. Rather, he was "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven." [*Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003)]. Put another way, his opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation. Thus, he falls outside the compass of Rule 26(a)(2)(B). *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir.2007).

*Downey*, 633 F.3d at 6. The First Circuit then concluded,

Interpreting the words "retained or specially employed" in a common-sense manner, consistent with their plain meaning, we conclude that as long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B). *See* [*Meyers v. Nat'l R.R. Pass. Corp.*, 619 F.3d 729,] 734–35 [(7th Cir.2010)]; *Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 249 (D.Mass.2005); *Sprague v. Liberty Mut. Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H.1998). This sensible interpretation is also consistent with the unique role that an expert who is actually involved in the events giving rise to the litigation plays in the development of the factual underpinnings of a case. Finally, this interpretation recognizes that the source, purpose, and timing of such an opinion differs materially from the architecture of an opinion given by an expert who is "retained or specially employed" for litigation purposes.

*Downey*, 633 F.3d at 7. District courts in this Circuit have embraced this or similarly phrased criteria,[3] so this Court will also adopt these criteria.

As to the sufficiency of disclosures of non-retained experts, Rule 26(a)(2)(C) requires more than a general identification of the subject matter of the non-retained expert's testimony; it also requires disclosure of the pertinent facts and opinions to which the expert will testify. *See* Fed. R. Civ. P. 26(a)(2)(C)(i) (requiring disclosure of "the subject matter on which the witness is expected to present [expert] evidence"); Fed. R. Civ. P. 26(a)(2)(C)(ii) (requiring disclosure of "a summary of the facts and opinions to which the witness is expected to testify"). As this Court has explained in a prior decision,

"The Federal Rules of Civil Procedure require 'formal disclosure' of experts because 'knowing the identity of the opponent's expert witnesses allows a party to

---

[3] *See, e.g.*, *E & I Glob. Energy Servs., Inc. v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04033-KES, 2023 WL 372106, at *3 (D.S.D. Jan. 24, 2023) (quoting *Downey*, 633 F.3d at 6–7); *Lampton v. C. R. Bard, Inc.*, No. 4:19-CV-00734-NKL, 2020 WL 7013356, at *3 (W.D. Mo. Nov. 27, 2020) ("Bard has not argued that Dr. Kandarpa's opinions did not flow from his involvement in the Everest Study and thus would be beyond the kind of opinions permitted by a non-retained expert."); *Holladay v. Rockwell Collins, Inc.*, No. 317CV00078SMRSBJ, 2019 WL 11658792, at *2 (S.D. Iowa Feb. 14, 2019) ("Non-retained experts must only testify about opinions that were formed during the course of their participation in the relevant events of the case, and only to those opinions which were properly disclosed." (quoting *Guar. Trust Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013)); *City of Wyo. v. Procter & Gamble Co.*, No. 15-CV-2101 (JRT/TNL), 2019 WL 245607, at *3 (D. Minn. Jan. 17, 2019) (finding that the defendant's longtime employee was a non-retained expert where he was "directly and extensively involved" with the disputed product for over a decade prior to the litigation and his "testimony [was] based on his ground-level involvement" with the product).

properly prepare for trial.'" *Dey v. Coughlin*, No. 19-00318-CV-W-ODS, 2019 WL 9656363, at *1 (W.D. Mo. Nov. 8, 2019) (quoting *Lidge v. Sears, Roebuck & Co.*, No. 03-0024-CV-W-REL, 2004 WL 1151986, at *5 (W.D. Mo. Apr. 29, 2004)). Thus, a disclosure that "merely stat[es] the topic that will be discussed at a high level and/or identif[ies] documents containing information consistent with the opinion testimony to be offered" is insufficient. *Emerson Elec. Co. v. Suzhou Cleva Elec. Appliance Co.*, No. 4:13CV1043SPM, 2015 WL 8770712, at *2 (E.D. Mo. Dec. 15, 2015). . . . [T]he disclosure must outline the main points of the anticipated testimony and inform the other side of the factual and opinion testimony of the non-retained expert so that the other side may prepare for trial. *See Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-CV-00191-PAB-STV, 2021 WL 4441518, at *6 (D. Colo. Sept. 28, 2021).

*Johnson v. Friesen*, No. 8:19-CV-322, 2022 WL 3108087, at *3 (D. Neb. Aug. 4, 2022), *aff'd*, 79 F.4th 939 (8th Cir. 2023).

"The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in [Federal Rule of Civil Procedure] 37." *See Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (*Petrone I*) (quoting *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018)). Specifically, Rule 37(c)(1) provides "If a party fails to provide information . . . as required by Rule 26(a)," then the party may not use that information at trial, "unless the failure was substantially justified or is harmless." Although Rule 37(c)(1) is not applicable until the undisclosed witness is used at trial, *see Petrone I*, 940 F.3d at 435 *accord Petrone v. Werner Enterprises, Inc.*, 42 F.4th 962, 968 (8th Cir. 2022) (*Petrone II*) (emphasizing this point, citing *Petrone I*, 940 F.3d at 435), the parties here have clearly shown their intent to use the challenged experts' opinions at trial by including them in their expert declarations and defense of their testimony in response to motions to exclude them at trial.

Bad faith is not required to bar untimely disclosed evidence if there is no justification. *Vanderberg*, 906 F.3d at 704. However, as the Eighth Circuit Court of Appeals has explained in more detail,

"A district court 'has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case' when a party fails to provide

6

information ... in compliance with Rule 26(a)." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 644–45 (8th Cir. 2022) (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)). In fashioning a remedy, courts should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* at 645 (quoting *Wegener*, 527 F.3d at 692).

*Zick v. Paccar, Inc.*, 47 F.4th 672, 677 (8th Cir. 2022). As to "surprise and prejudice," even if a disclosure is inadequate, the complaining party must articulate how it was (or will be) prejudiced by the late disclosure. *Wallace v. Pharma Medica Rsch., Inc.*, 78 F.4th 402, 409 (8th Cir. 2023).

As to sanctions under Rule 37(c)(1), the district court has discretion to consider lesser sanctions than exclusion of the witness, but "the district court's discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute." *Vanderberg*, 906 F.3d at 704 (quoting *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011)). Rather, the discretion "narrows as the severity of the sanction or remedy it elects increases." *Id.* (quoting *Young*, 664 F.3d at 734). Specifically, "[w]here the exclusion of evidence is tantamount to dismissal, a district court may need to first consider the possibility of lesser sanctions." *Id.* at 704–05. The party facing Rule 37(c)(1) sanctions has the burden to show its misconduct deserves only a lesser sanction, but "[t]he district court d[oes] not abuse its discretion by not imposing a lesser sanction when [that party] never request[s] one." *Id.* at 705.

### 2. *Admissibility Standards for Expert Testimony*

Even where appropriate disclosures have been made, a district court has substantial discretion to admit or exclude expert testimony at trial. *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) (explaining that a district court's determination on the admissibility of expert testimony is reviewed for abuse of discretion). Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony and give the district court "a gatekeeper function" to ensure that expert testimony is relevant and

reliable. *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021), *cert. denied sub nom. 3M Co. v. Amador*, 142 S. Ct. 2731 (2022). Somewhat more specifically,

> Rule 702's screening requirement has been boiled down to a three-part test. First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant. Second, the expert must be qualified to assist the finder of fact. Third, the testimony must be reliable or trustworthy in an evidentiary sense.

*In re Bair Hugger*, 9 F.4th at 777 (internal quotation marks and citations omitted).

As to the first requirement, an expert's opinion lacks relevance if it does not fit the facts of the case. *McMahon v. Robert Bosch Tool Corp.,* 5 F.4th 900, 903 (8th Cir. 2021). On the other hand, "Rule 702 is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" *Perry*, 61 F.4th at 606 (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). As to the second requirement, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Thus, an expert is qualified if for example the expert's degrees and training gave the expert competence for the subject area of the expert's testimony. *Perry*, 61 F.4th at 606. However, the Eighth Circuit Court of Appeals has also reiterated that "'[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility,'" and "the weight given to witness testimony is the province of the jury." *Id.* (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). The third requirement, reliability, involves consideration of several factors:

> These factors are (1) whether the expert's theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error of the theory or technique, and (4) whether the technique or theory is generally accepted. Factors recognized since *Daubert* include whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the

litigation, or whether they have developed their opinions expressly for purposes of testifying.

*In re Bair Hugger*, 9 F.4th at 777 (internal quotation marks omitted). "[A] district court may exclude expert testimony if it finds 'that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* at 777–78 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[T]o put it in the language we have frequently used both before and after *Daubert* and *[Gen. Elec. Co. v.] Joiner*, [522 U.S. 136 (1997)], a district court may exclude an expert's opinion if it is 'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.'" *Id.* at 778 (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)). On the other hand, the "general rule" is that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Id.* at 778.

It is also wise to keep in mind that *Daubert* and its progeny "call for the liberal admission of expert testimony." *In re Bair Hugger*, 9 F.4th at 777. Thus, "the rejection of expert testimony is 'the exception rather than the rule.'" *Perry*, 61 F.4th at 606 (quoting *Robinson*, 447 F.3d at 1100). Finally, the Supreme Court has said, and the Eighth Circuit has reiterated, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means' of addressing 'shaky but admissible evidence.'" *In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 596).

With these standards in mind, the Court turns to consideration of the motions challenging experts.

### B. GOP's Motion to Exclude Opinions of KLG's Non-Retained Experts

The first motion now before the Court is GOP's Motion to Exclude Opinion Testimony of Plaintiff's Non-Retained Experts. Filing 100. This Motion seeks exclusion of opinion testimony from thirteen non-retained experts designated by KLG in its January 6, 2023, disclosure; exclusion

of the opinion testimony of non-retained rebuttal experts identified in KLG's May 22, 2023,
disclosure to the extent the rebuttal disclosure incorporates the opinions of the witnesses contained
in KLG's January 6, 2023, disclosure; and exclusion from KLG's case-in-chief of expert opinions
from two non-retained experts disclosed in the rebuttal disclosure on May 22, 2023. Filing 100 at
1–2.

1.      *The Parties' Arguments*

GOP argues that all three of KLG's non-retained expert disclosures fail to comply with
Federal Rule of Civil Procedure 26(a)(2)(C) as to most of the witnesses disclosed because they fail
to provide any information that GOP could rely upon to understand the nature of the experts'
opinions that will be offered at trial. Filing 102 at 1. GOP notes that KLG has identified fifteen
non-retained experts, but GOP argues that the disclosures are inadequate as to all but two of them
(Jim Kuecker and Rene Danler) and that the disclosures for two others (Kevin Tedford and Mike
Billman) are adequate only for use in rebuttal. Filing 102 at 2. GOP states that with these
exceptions KLG's disclosures merely identify generic topics to which the non-retained experts
will testify with no meaningful description of the nature of the opinions the experts may offer or
the facts on which those opinions are based. Filing 102 at 7–8. GOP argues that opinions from
Kevin Tedford and Mike Billman must be limited to rebuttal and cannot be used in KLG's case-
in-chief, because these witnesses were only adequately disclosed as rebuttal experts. Filing 102 at
9.

KLG argues that the extreme remedy of exclusion is not warranted because the non-
retained experts' opinions were properly disclosed or, to the extent they were not, GOP has
suffered no prejudice. Filing 131 at 1. KLG asserts that GOP has not undertaken any analysis of
how it was allegedly harmed by KLG's allegedly deficient disclosures. Filing 131 at 1. In fact,
KLG argues that it disclosed these non-retained witnesses "in an abundance of caution" in case

their testimony regarding the design, installation, commissioning, and servicing of the ABS system is deemed to be expert testimony that exceeds the bounds of Rule 701 lay opinion testimony. Filing 131 at 7. However, KLG asserts that the present motion is the first time that GOP has challenged the disclosures as inadequate. Filing 131 at 7. KLG points out that GOP could have deposed any of these individuals, but GOP chose not to. Filing 131 at 8. Finally, KLG argues that exclusion of the testimony of these witnesses is premature because their testimony will likely constitute lay opinion testimony within the meaning of Rule 701 or simply fact witness testimony, so no disclosures were required. Filing 131 at 8–9.

In reply, GOP points out that KLG has still not identified the opinions that any of these witnesses will offer and that it is now too late to do so because discovery is closed. Filing 144 at 1. GOP also points out that KLG did not dispute that Kevin Tedford and Mike Billman were adequately disclosed only as rebuttal experts so their testimony should be prohibited in KLG's case-in-chief. Filing 144 at 1. GOP asserts that KLG's argument that GOP could have deposed any of these witnesses turns the Federal Rules of Civil Procedure on their head where KLG bore the initial burden of adequate disclosures of its experts and GOP had no duty to depose the experts to determine what opinions they might offer. Filing 144 at 2–3. GOP also argues that the prejudice it suffered is "self-evident" because GOP cannot adequately prepare for depositions, retain rebuttal experts, and prepare for trial to rebut undisclosed expert opinions. Filing 144 at 3–4. GOP also asserts that it is difficult to respond to KLG's argument that these witnesses may simply provide lay opinions within the meaning of Rule 701 or fact testimony when KLG has not disclosed any opinions. Filing 144 at 6. GOP also asserts that a lay person does not have experience in designing, installing, commissioning, or servicing the ABS system that KLG installed. Filing 144 at 7. As to Kevin Tedford and Mike Billman, GOP reiterates that KLG disclosed new opinions only in

disclosures of rebuttal witnesses not in prior disclosures, so these witnesses' testimony should be limited to rebuttal. Filing 144 at 8.

    2.    *Discussion*

        a.    The First Two Disclosures Are Inadequate as to Thirteen of the Non-Retained Expert Witnesses

There does not appear to be any dispute that the witnesses in question in this motion are "non-retained" experts, that is, "witnesses who do not provide a written report." Fed. R. Civ. P. 26(a)(2)(C). However, KLG's January 6, 2023, disclosure of thirteen witnesses is inadequate, *see* Filing 101-1, even under the "considerably less extensive" requirements of Rule 26(a)(2)(C). *Johnson*, 79 F.4th at 943; *Gruttemeyer*, 31 F.4th at 644 (describing Rule 26(a)(2)(C) disclosures as "less stringent"). Thus, so is the April 13, 2023, designation of non-retained experts by KLG as a counterclaim defendant because it simply "incorporates by references [KLG's] designation of non-retained experts in support of its claims, dated January 6, 2023, as if set forth herein," Filing 101-2 at 1, then adds that the prior designations "are likely also relevant to [KLG's] defense to GOP's counterclaims." Filing 101-2 at 2.

Specifically, the January 6, 2023, disclosure simply incorporated into the April 13, 2023, disclosure for each such witness states that the witness's testimony "may include topics such as" followed by a list of general topics and that the witness "may provide opinions that may rebut the opinions provided by experts (either retained or non-retained) from GOP." Filing 101-1 at 4 (Russ Hedrick), 4 (Daryl Bush), 5 (Denis Jimenez), 5 (Jason Demand), 6 (Steven Hedderich), 6 (Doug Bentley), 7 (Bill Gagne), 7 (George Trowbridge), 7–8 (Justin Knapp), 8 (Kevin Tedford), 8 (Alen Hadsell), 8–9 (Mike Billman), 9 (Steve Lankford). The topics to which each witness will testify are also stated at a fairly high level of generality. *See* Fed. R. Civ. P. 26(a)(2)(C)(i) (requiring disclosure of "the subject matter on which the witness is expected to present [expert] evidence");

*Johnson*, 2022 WL 3108087, at \*3 (explaining that "a disclosure that merely states the topic that will be discussed at a high level . . . is insufficient" (internal quotation marks and citations omitted)). For example, Mr. Hedrick "may" testify about "the design and installation of the Automated Box Storage and Handling System, the training Kuecker provided to GOP to properly operate the system, and the performance of GOP's in-house network and the impact it had on the system's performance." Filing 101-1 at 4. Each of these topics is so broad and vague in reference to the design and operation of the complex system in question as to amount to no disclosure at all. The same is true of the other disclosures.

Still more troubling, however, is the complete failure to provide "a summary of the facts and opinions to which [each] witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C)(ii); *Johnson*, 2022 WL 3108087, at \*3. The general references to the possibility of testifying in response to an unidentified-somebody-else's expert testimony is a long way from a disclosure sufficient to allow the opposing party to prepare for trial. *Johnson*, 2022 WL 3108087, at \*3.

b. The Rebuttal Designations Are Adequate as to Two Witnesses

The May 22, 2023, disclosure, identified as Plaintiff's Rebuttal Designation of Non-Retained Experts, first "incorporates by reference [KLG's] prior designations of non-retained experts in support of its claims, dated January 6, 2023 and April 13, 2023, as if set forth herein." Filing 101-3 at 1. To that extent, the May 22, 2023, disclosure is also inadequate as to all thirteen challenged non-retained experts. However, the May 22, 2023, disclosure then makes additional disclosures for Mike Billman and Kevin Tedford as rebuttal experts. Filing 101-3 at 2–6. GOP states that "[i]t . . . does not challenge the rebuttal designations of Kevin Tedford and Mike Billman to the extent their opinions are limited to rebuttal." Filing 102 at 1. Thus, the question as to these two non-retained experts is when their expert testimony may be used at trial. That is a question answered in the next subsection.

13

c.   Consequences Are Appropriate for Inadequate Disclosures

i.   There Must Be Some Consequences for Non-Retained
Experts Inadequately Disclosed for Use in KLG's Case-
in-Chief

Under Rule 26(a)(2)(C), the disclosures of all thirteen non-retained experts were
inadequate as to testimony or opinions that they might offer in KLG's case-in-chief and disclosures
for two are adequate only as to rebuttal opinions. Consequently, the Court must consider what
remedy is appropriate pursuant to Federal Rule of Civil Procedure 37(c). Fed. R. Civ. P. 37(c) ("If
a party fails to provide information . . . as required by Rule 26(a)," then the information may not
be used at trial "unless the failure was substantially justified or is harmless").

The Court does not find that KLG acted in bad faith, but bad faith is not required to impose
a remedy pursuant to Rule 37(c)(1) if there is no justification for the inadequate disclosures.
*Vanderberg*, 906 F.3d at 704. Although the court must consider the reason for noncompliance
when fashioning a remedy, *Zick*, 47 F.4th at 677, KLG has never offered any justification for the
inadequate disclosures, *see generally* Filing 131. Indeed, justification is mentioned only once in
KLG's opposition to this motion and only in stating Rule 37(c)(1)'s requirements. *See* Filing 131
at 1. However, the Court will still consider other pertinent factors despite the lack of any
justification. *See Zick*, 47 F.4th at 677.

As to the first of these other pertinent factors, "surprise and prejudice," *id.*, KLG's assertion
that GOP has not formulated or demonstrated the alleged prejudice from inadequate disclosures is
not convincing. See Filing 131 at 1. GOP pointed out that the core purpose of disclosing non-
retained experts under Rule 26(a)(2)(C) is to avoid the danger of unfair surprise regarding the
factual and opinion testimony of such witnesses. Filing 102 at 8. GOP then argued that KLG's
inadequate disclosures "create the risk that Rule 26 was meant to avoid." Filing 102 at 8. In its
reply, GOP fills out this argument somewhat by clarifying that the prejudice it has suffered from

inadequate disclosures "is self-evident," where GOP "cannot adequately prepare for depositions, retain rebuttal experts, and prepare for trial to rebut non-retained expert opinions KLG has never disclosed." Filing 144 at 3–4. Although the complaining party must articulate how it was (or will be) prejudiced by the inadequate disclosure, see *Wallace*, 78 F.4th at 409, the Court concludes that GOP has adequately stated that it faces the problem Rule 26(a)(2)(C) was meant to prevent.

Furthermore, the Court concludes that it is more difficult for a party to formulate how it is harmed by surprise evidence when it does not know what the surprise evidence is. Similarly, it is difficult for a party to determine whether or not to allocate resources to deposing a non-retained expert when the expert is inadequately disclosed. "Had Plaintiff timely disclosed [an individual] as a witness and the subject matter upon which he would be called to testify, Defendant would have been able to make a fully informed decision as to whether to depose [that individual] during discovery rather than one-week prior to trial." *Bailey v. City of Bellevue, Nebraska*, No. 4:18CV3132, 2021 WL 2291940, at *3 (D. Neb. June 3, 2021). Rule 26(a)(2)(C) places the burden of disclosure on the party offering the witness; KLG has cited no rule or other authority placing the burden on the opposing party to make decisions to depose witnesses based on inadequate disclosures. *See Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) ("Rule 26(a)(2) 'imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" (quoting Fed.R.Civ.P. 26, advisory committee notes (1993 Amendments)).

Contrary to KLG's contentions, GOP's counsel did not agree with KLG's "approach" to disclosure of non-retained experts. *Contra* Filing 131 at 7–8. GOP's counsel questioned Jim Kuecker during his deposition about his designation as a non-retained expert. *See* Filing 132-2 at

6–8 (J. Kuecker depo., 237:9–241:16). GOP's counsel then told KLG's counsel that the disclosure for Jim Kuecker was "just on bullet points" and that "[t]here's no real topics in here"—in other words, GOP's counsel identified the insufficiency of the disclosure. Filing 132-2 at 7 (J. Kuecker depo. at 241:14–18). KLG's counsel responded that KLG wanted to give GOP notice because GOP might take the position that Jim Kuecker was serving as an expert. Filing 132-2 at 7–8 (J. Kuecker depo. at 241:19–242:2). GOP's counsel then said, "Okay." Filing 132-2 at 8 (J. Kuecker depo. at 242:3). At most, GOP's counsel's "Okay" was an acknowledgement of what KLG's counsel said. It is nothing like acceptance of the adequacy of either the disclosure or the deposition to determine Jim Kuecker's expert opinions.

Turning to other pertinent factors, allowing previously undisclosed non-retained expert opinions to be presented at trial would greatly "disrupt the order and efficiency of trial." *Zick*, 47 F.4th at 677. The discovery and disclosure deadlines are long expired; the parties previously professed themselves ready to go to trial in August 2023 but trial in another case took precedence; the Court has already ruled on dispositive motions; and despite the delay in trial KLG has made no attempt to remedy the deficiencies in its disclosures or even to seek leave to do so. Furthermore, if the information that the inadequately disclosed non-retained experts have to offer is so important to the case, *see id.* (considering the importance of the information or testimony in the formulation of the appropriate remedy), that only increased KLG's obligation to disclose these witnesses adequately and on time.

Thus, some remedy is appropriate for the inadequately disclosed non-retained experts to be used in KLG's case-in-chief.

> ii. Limitations Are Appropriate Where Mr. Tedford and
> Mr. Billman Were Adequately Disclosed Only as
> Rebuttal Experts

GOP argues that "because Kevin Tedford and Mike Billman have only been disclosed as rebuttal experts by KLG, they should be precluded from offering expert rebuttal opinion testimony in KLG's case-in-chief." Filing 102 at 9. KLG argues that it has identified Mike Billman and Kevin Tedford as non-retained experts in every non-retained expert disclosure that KLG has made to GOP, so GOP has been placed on sufficient notice of the types of testimony and opinions those witnesses will provide. Filing 131 at 2. Thus, KLG argues that it is not appropriate to limit the timing of their testimony. Filing 131 at 2.

KLG misses the point. KLG's first two disclosures of Mr. Billman and Mr. Tedford were as inadequate as the disclosures of the other eleven challenged non-retained experts that KLG indicated it would use in its case-in-chief. *See* Filing 101-1 at 8 (Tedford), 8–9 (Billman); Filing 101-2 at 1–2 (incorporating the prior disclosure by reference). In contrast, only KLG's disclosure of these two witnesses as rebuttal experts is adequate. *See* Filing 101-3 at 2–5 (Billman), 5–6 (Tedford).

Where the only adequate disclosure of Mr. Tedford and Mr. Billman is the "rebuttal" disclosure on May 22, 2023, that adequate disclosure simply does not erase the deficiencies of the disclosure of these two non-retained experts for purposes of KLG's case-in-chief. Another District of Nebraska judge has pointed out,

> As the Eighth Circuit Court said in *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006):
>
> > "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir.2005) (citation omitted); *Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir.1999) ("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case.") (citations omitted). As such, rebuttal evidence may be used to

challenge the evidence or theory of an opponent—and not to establish a case-in-chief. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991) ( "Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief."); *see also* John Henry Wigmore, Evidence in Trials at Common Law § 1873 (1976) (a district court should allow rebuttal evidence only if it is necessary to refute the opponent's case).

*Kabasinskas v. Haskin*, No. 8:10CV111, 2011 WL 6934484, at *1 (D. Neb. Dec. 30, 2011). For these reasons, that judge concluded that testimony of defense experts designated only in a disclosure of rebuttal experts or any portion of their reports could not be used by the offering party as part of her case-in-chief. *Id.* The Court agrees with that conclusion and the rationale behind it. Both apply here and warrant limiting the use of the non-retained experts who were only adequately disclosed in the "rebuttal" disclosure.

### iii. The Appropriate Consequences Are Limitations on Testimony Rather than Complete Exclusion of Witnesses

Despite the deficiencies in the disclosures of the challenged non-retained witnesses, the Court finds that the appropriate sanction is not exclusion of these witnesses entirely but a tailoring of the remedy to the discovery violation. Here, that means none of the challenged non-retained experts, including Mr. Billman and Mr. Tedford, will be allowed to offer any expert opinions at all in KLG's case-in-chief. However, all thirteen challenged non-retained experts will be allowed to offer fact testimony based on their personal involvement in relevant events in KLG's case-in-chief. All thirteen may also be allowed to offer lay opinions if they can do so without violating Federal Rule of Evidence 701. Specifically, such lay opinions must be rationally based on the witness's perception; must be helpful to understanding his testimony or helpful to the trier of fact to determine any fact; and his testimony must not be based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. It is that third requirement that is likely to prove problematic in a case involving implementation of a system and required software as well as

calculation of damages from failure to do so because the issues go well beyond the experience of most jurors and instead require specialized knowledge. Proffer of their testimony will of course be subject to timely objections, and if their testimony trespasses into forbidden zones, the Court may take measures including, for example, giving curative instructions directing the jurors to disregard improper testimony. Only Mr. Billman and Mr. Tedford, not any of the other challenged non-retained experts, will be allowed to offer rebuttal opinions and then only in KLG's rebuttal case, not in KLG's case-in-chief.

Thus, GOP's Motion to Exclude Opinion Testimony of Plaintiff's Non-Retained Experts, Filing 100, is granted. Testimony from the challenged non-retained witnesses will only be allowed within the limits set out above.

### C.  GOP's *Daubert* Motion to Exclude Expert Testimony of Jonathan Marks

The second motion now before the Court is GOP's *Daubert* Motion to Exclude Expert Testimony of Jonathan Marks (Motion to Exclude Mr. Marks's Testimony). Filing 103. GOP seeks to exclude Mr. Marks's testimony on GOP's financial performance after KLG's system went "live" as well as his calculation of interest that he claims GOP owes KLG in connection with unpaid invoices. Filing 107 at 2.

*1.    The Part of GOP's Motion Concerning Mr. Marks's Opinions on GOP's Financial Performance Is Obviated by the Summary Judgment Rulings*

a.  GOP's Arguments

The first part of GOP's Motion to Exclude Mr. Marks's Testimony is premised on GOP's argument that in exchange for GOP's investment in the ABS System, KLG expressly promised and warranted that the box optimization function would directly and independently generate a guaranteed return on investment (ROI) of $6.24 million annually for seven years after the system went "live." Filing 107 at 1. GOP asserts that KLG has responded by offering the testimony of its

19

expert, Jonathan Marks, that the ABS System resulted in a greater ROI than was even promised under the parties' contract. Filing 107 at 1. However, GOP argues that Mr. Marks relies on what he admits were flawed assumptions regarding GOP's financial performance, so his opinions are unreliable and should be excluded. Filing 107 at 1–2.

It appears to the Court that one part of GOP's Report on Pending Motions sets out GOP's position on why its Motion to Exclude Mr. Marks's Testimony as to his opinions on GOP's financial performance must still be resolved. GOP argues that "notwithstanding the Court's order that Greater Omaha could not recover ROI damages, Kuecker's failure to provide a return on investment from box optimization goes directly to the issue of whether Kuecker substantially performed because box optimization was a critical factor in Greater Omaha's decision to contract with Kuecker." Filing 211 at 2.

b.  Any Testimony on ROI Is Irrelevant

The Court concludes that Mr. Marks's testimony on ROI is simply irrelevant, as is any evidence GOP intends to put on concerning that issue. After the parties completed the briefing of this Motion to Exclude Mr. Marks's Testimony, the Court entered its Memorandum and Order Regarding Motions for Partial Summary Judgment. Filing 184. In that Memorandum and Order, the Court *inter alia* held as a matter of law that the parties' contract did not promise a ROI of $6.24 million for box optimization. Filing 184 at 22–25. The Court explained, "Because there was no promise of $6.24 million annually in ROI from box optimization, the Court need not consider further GOP's breach of contract claim based on such a promise." Filing 184 at 25. The Court also concluded that there is no contractual basis for lost ROI damages. Filing 184 at 29–30. The Court reasoned that the determination that the parties' contract did not promise GOP an annual ROI of $6.24 million from box optimization "severs the causal link between the breach of the 'box optimization' term of the 5/3/17 Contract and ROI damages." Filing 184 at 30. The Court added

that where GOP had done nothing to calculate its alleged ROI damages based upon its financial documents, no reasonable juror could award GOP the lost ROI damages it seeks. Filing 184 at 30.

GOP sought reconsideration of these conclusions, but the Court adhered to them in its Memorandum and Order Regarding the Parties' Motions to Reconsider and Clarify. Filing 209. As relevant here, the Court first clarified that "[t]he only damages GOP is so far barred from recovering on its remaining counterclaims are damages for lost ROI." Filing 209 at 18. GOP also asked the Court to "reconsider" and "modify" its ruling granting KLG's Motion for Partial Summary Judgment because "there is a genuine issue of material fact that precludes summary judgment in favor of [KLG] on ROI damages," which the Court characterized as an attempt by GOP "to resuscitate its claim for lost ROI damages on its remaining counterclaims." Filing 184 at 18. The Court concluded that GOP was impermissibly asserting "new" arguments on a motion to reconsider. Filing 184 at 18–25. Moreover, the Court concluded that GOP had failed to demonstrate any "manifest error" in the Court's grant of summary judgment to KLG on GOP's claim for breach of contract or breach of warranty based on a promise of ROI or in granting summary judgment to KLG on GOP's claim for ROI damages. Filing 209 at 25–27.

It follows from these rulings that evidence of a purported promise of ROI, a claim for breach of contract or breach of warranty based on breach of a purported promise of ROI, and any damages based on lost ROI are irrelevant to this case.

GOP's assertion that issues concerning ROI are still relevant to GOP's arguments that KLG did not substantially perform the parties' contract does not change the picture. Filing 211 at 2. Again, there was no promise of ROI, so there could be no breach of contract (or warranty) based on a failure to achieve that ROI.  Further, where there was no promise of ROI, failure to achieve that ROI is not evidence that KLG did not substantially perform the parties' contract. To put it

another way, KLG had no obligation to substantially perform a promise that it did not make, and its failure to do so would not defeat KLG's "substantial performance" defense.

Under these circumstances, neither party will be allowed to offer expert or other testimony about a promise of $6.24 million annually from box optimization or about any ROI damages. Performing the Court's "gatekeeper function," any such expert testimony fails the first part of Rule 702's screening test: the testimony will not be useful to the finder of fact in deciding any ultimate issue of fact, so it is irrelevant. *See In re Bair Hugger*, 9 F.4th at 777.

2.      *The Part of GOP's Motion Concerning Mr. Marks's Opinions on Interest Is Unavailing*

The second part of GOP's Motion to Exclude Mr. Marks's Testimony involves an issue that remains in legitimate dispute, although this part of GOP's Motion must also be denied. The Court begins with a summary of the parties' arguments.

a.   The Parties' Arguments

GOP argues that Mr. Marks performed a calculation of the interest that he opines GOP owes KLG on unpaid invoices. Filing 107 at 2. However, GOP asserts that Mr. Marks admitted to using incorrect figures to calculate his estimate of alleged interest owed to KLG by GOP, so this opinion is unreliable and inadmissible. Filing 107 at 2. Specifically, GOP points out that Mr. Marks used too long a period for accrual of such interest as to Invoice 25825 and made the same error as to Invoice 26340. Filing 107 at 14. GOP asserts that because Mr. Marks calculated interest based on an incorrect factual assumption, his opinions regarding interest are not sufficiently tied to the facts of the case to be admissible. Filing 107 at 14.

KLG argues that Mr. Marks used a reliable methodology to compute interest due to KLG. Filing 134 at 23. KLG argues that even if Mr. Marks used an incorrect number of days for accrual in his calculation, he used a reliable methodology to prepare the interest calculation. Filing 134 at

23. KLG argues that the factual mistake does not go to the soundness of Mr. Marks's methodology but to the weight the jury should give his opinion. Filing 134 at 23.

In reply, GOP points out that KLG does not attempt to argue that Mr. Marks used the correct period of accrual in his calculations. Filing 143 at 11. GOP characterizes KLG's argument as asserting that if an expert opined that 2 + 2 = 500, a court should allow the expert's opinion to be presented to the jury and the math error is merely a credibility issue. Filing 143 at 12. Relying primarily on out-of-circuit authority, GOP argues instead that an expert opinion based on insufficient or erroneous information fails the reliability standard. Filing 143 at 12. GOP asserts that "[b]ecause of these verifiable calculation errors, Marks' opinions regarding interest are not reliable and should be excluded." Filing 143 at 12.

   b.   Mr. Marks's Math Errors Are Not Fatal to Admissibility of His
        Opinions on Calculation of Interest

GOP's arguments are unavailing. First, the "general rule" is that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *In re Bair Hugger*, 9 F.4th at 778. Mr. Marks's math error in determining the period for which interest should be calculated is precisely an error in the "factual basis," rather than a flaw in methodology. That error did not make Mr. Marks's opinion on interest "'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.'" *Id.* (quoting *Loudermill*, 863 F.2d at 570). This is so, for the simple reason that the calculation can be corrected with minimal effort and without the exercise of any specialized knowledge. This also is not a situation in which "there is simply too great an analytical gap between the data and the opinion offered." *Id.* at 777–78 (quoting *Joiner*, 522 U.S. at 146). Instead, the method of calculating interest was correct—and GOP does not argue otherwise—and the math error or data input error was slight. According to GOP, in one instance Mr. Marks used 52.23 months for the period between the start date for interest and April 13, 2023,

the date of his report, when GOP contends the period was only 51 months and 17 days (51.57 months). Filing 107 at 14. GOP acknowledges that Mr. Marks admitted that error. Filing 107 at 14. In the other instance Mr. Marks used 47.63 months for the period between the start date for interest and the date of his report when the period was actually "less than 47 months." Filing 107 at 14. GOP has not identified the difference in the amount of interest a difference of 0.66 months or 0.63 months in the accrual periods would have made. *See generally* Filing 107 at 14. More importantly, the date of Mr. Marks's report would not be the ending date for the period for which unpaid interest would be due in any event. Instead, trial would have been nearly three months later than his report date if trial had been held in August of 2023 as previously scheduled, and the ending date will be ten months later by the time this case comes to trial in February of 2024.

While GOP may attempt to impeach Mr. Marks's credibility with his math errors, the Court readily concludes that the reliability of his methodology to calculate the interest due has not been so damaged that his opinions can provide no assistance to the finders of fact. *In re Bair Hugger*, 9 F.4th at 777 (explaining that the court's "gatekeeper function" is to ensure that expert testimony is relevant and reliable). This part of GOP's Motion to Exclude Mr. Marks's Testimony is also denied.

### D.  KLG's Motion to Exclude GOP's Non-retained Experts' Testimony

The third motion now before the Court is KLG's Motion to Exclude Expert Testimony. Filing 108. This motion seeks exclusion of opinions of GOP's non-retained experts Joe Airoldi, GOP's current CFO, and Steve Acord, GOP's Vice President of Information Technology. Filing 108 at 1. KLG seeks exclusion of each witness's testimony on some or all of the following grounds: his disclosure did not comply with Federal Rule of Civil Procedure 26(a); his opinions do not meet the requirements of Federal Rule of Evidence 702 and *Daubert*; and the probative value of his

testimony is outweighed by the likelihood of jury confusion under Federal Rule of Evidence 403. Filing 108 at 1. GOP asserts that KLG's Motion "is largely form over substance and should be denied." Filing 130 at 2. The Court will consider KLG's Motion as to each witness and as to each ground in turn to the extent the Court finds necessary.

> 1.   *Exclusion of Mr. Airoldi's Testimony*

Although KLG asserts several grounds for exclusion of Mr. Airoldi's expert opinions, the Court will focus on the one it finds dispositive. That ground is KLG's assertion that the expert disclosure for Mr. Airoldi did not comply with Rule 26(a). Filing 109 at 10.

> a.   The Parties' Arguments[4]

KLG argues that Mr. Airoldi does not qualify as a non-retained expert because he did not join GOP until June of 2021, almost a year after this lawsuit was filed on July 31, 2020, and after GOP filed a counterclaim on November 2, 2020. Filing 109 at 10. KLG asserts that by that time, GOP was already working to engage Cirrus Tech to replace the software KLG used with different software, which purportedly provided the box optimization functionality that KLG's software did not. Filing 109 at 10. KLG contends that Mr. Airoldi was disclosed on January 6, 2023, as providing opinions on downtime, out-of-pocket expenses, outside storage expenses, and costs of capital. Filing 109 at 10–11.[5] KLG argues that Mr. Airoldi does not qualify as a non-retained expert as to any of these opinions because he was not even an employee of GOP during almost all the events as to which he is opining. Filing 109 at 11. Because Mr. Airoldi does not qualify as a non-

---

[4] Some of the parties' arguments on this Motion are ironic, in light of the arguments they offered on GOP's Motion to Exclude Opinion Testimony of Plaintiff's Non-Retained Experts, Filing 100, when the offering and challenging parties were reversed.

[5] KLG states that Mr. Airoldi was also disclosed to provide expert opinions on ROI. Filing 109 at 10–11. However, the Court has already ruled above that neither GOP nor KLG will be allowed to present testimony or evidence on purportedly promised ROI or purportedly lost ROI. This includes exclusion of Mr. Airoldi's opinions in the May 22, 2023, disclosure criticizing Mr. Marks's opinions calculating ROI based on Mr. Marks's alleged failure to take into account several variables. *See* Filing 109 at 15.

retained expert, KLG argues that his failure to submit an expert report fails to comply with Rule 26(a)(2)(B) and that failure is neither justified nor harmless. Filing 109 at 15. KLG bases the lack of justification on the size of GOP and its representation by experienced counsel. Filing 109 at 15. KLG bases prejudice on its contention that KLG was left in the dark as to how Mr. Airoldi came to his opinions, what methodology he used, or how to rebut those opinions. Filing 109 at 15–16.

In response to this part of KLG's Motion, GOP argues that Mr. Airoldi has "deep professional knowledge" of the beef-packing industry from before he was hired by GOP but nevertheless argues that he was not specially retained as an expert in this case nor do his duties at GOP regularly involve giving expert testimony. Filing 130 at 14. "Accordingly," GOP contends, "Airoldi is not required to submit a report under Rule 26(a)(2)(B)." Filing 130 at 14. GOP argues that KLG had both of Mr. Airoldi's disclosures and deposed him for several hours during which he explained the details of his opinions, so KLG cannot show prejudice. Filing 130 at 15. GOP then argues that most of Mr. Airoldi's testimony will be factual in nature and that his opinions may well fall within Rule 701 as lay witness opinions. Filing 130 at 15. Indeed, GOP argues that it identified Mr. Airoldi as a non-retained expert "[o]ut of an abundance of caution," in case the Court viewed his statements as expert opinions. Filing 130 at 15. GOP also argues that the fact that Mr. Airoldi was not an employee of GOP during almost all the events to which he will opine does not mean he is unable to offer opinions regarding financial damages incurred by GOP. Filing 130 at 15. GOP argues that this is so because Mr. Airoldi as the company's CFO can rely on financial records and facts that other GOP employees relayed to him that assist him in quantifying the financial impact of KLG's breaches on GOP. Filing 130 at 18–19. Indeed, GOP argues that a person in Mr. Airoldi's position is often allowed to testify to damages issues within his personal knowledge, including knowledge of historical financial performance of a company, without being

qualified as an expert. Filing 130 at 19. GOP also argues that Mr. Airoldi's lack of an expert report

is not a ground to exclude his opinion testimony where the disclosures of his opinions were detailed

and KLG deposed him extensively. Filing 130 at 20.[6]

In reply, KLG takes issue with what it calls GOP's "no harm, no foul" argument that KLG

got to depose Mr. Airoldi. Filing 145 at 1. KLG argues that at his deposition Mr. Airoldi could not

provide certain basic information, such as the names of the entities to whom GOP paid outside

storage costs, to substantiate his damages calculations, which means his failure to prepare a report

has prejudiced KLG. Filing 145 at 1–2. KLG asserts that GOP ignores the requirement that a non-

retained expert must have developed his or her opinions during the course of the events underlying

the litigation and not later or in anticipation of litigation. Filing 145 at 3. KLG argues that GOP

misinterprets the case it cites to support its contention that individuals with knowledge of historical

financial results of a company and its operations qualify as non-retained witnesses. Filing 145 at

4 & n.2. KLG then reiterates and expands its arguments that the lack of proper disclosure was not

substantially justified or harmless. Filing 145 at 5–7.

        b.    Mr. Airoldi Does Not Qualify as a Non-Retained Expert, so His
              Disclosure Is Inadequate

GOP's assertion that Mr. Airoldi is a non-retained expert under Rule 26(a)(2)(C) who was

not required to provide an expert report under Rule 26(a)(2)(B) focuses narrowly on GOP's

assertion that Mr. Airoldi was not specially retained as an expert in this case, nor do his duties at

GOP regularly involve giving expert testimony. Filing 130 at 14; *see also* Fed. R. Civ. P.

26(a)(2)(B) (stating who must provide a report). GOP's contention overlooks caselaw from both

---

[6] Again, no party will be allowed to present testimony related to ROI, so Mr. Airoldi's "rebuttal" opinions critiquing KLG's expert's opinions on that issue are irrelevant. Thus, the Court will not summarize the remainder of GOP's arguments concerning Mr. Airoldi's "rebuttal" opinions. *See* Filing 130 at 21–24. For the same reason, the Court will not address KLG's argument that it is clear that Mr. Airoldi formed his opinions in anticipation of litigation in order to criticize the testimony of KLG's expert, Mr. Marks. Filing 145 at 2–3.

in and out of circuit explaining what distinguishes a non-retained expert from a retained expert, as set out above in section II.A.1. That distinction turns on the meaning of the phrase "retained or specially employed" in Rule 26(a)(2)(B). As explained above, a "retained or specially employed" expert means someone "without prior knowledge of the facts giving rise to litigation [who] is recruited to provide expert opinion testimony," while a non-retained expert is "a percipient witness who happens to be an expert." *Downey*, 633 F.3d at 6. Mr. Airoldi is not a "percipient witness who happens to be an expert."

Specifically, Mr. Airoldi was not "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven," and his opinion testimony does not arise "from his ground-level involvement in the events giving rise to the litigation." *Id.* Instead—as KLG argues and GOP does not dispute—Mr. Airoldi did not join GOP until June of 2021, almost a year after this lawsuit was filed on July 31, 2020, and eight months after GOP filed a counterclaim on November 2, 2020. Filing 109 at 10. As KLG also asserts and GOP does not dispute, by the time Mr. Airoldi was hired, GOP was already working to engage Cirrus Tech to replace the software KLG used with different software, which purportedly provided the box optimization functionality that KLG's software did not. Filing 109 at 10. Mr. Airoldi also testified in his deposition that his opinions about downtime were based on information from other employees, *see* Filing 111 at 33 (Airoldi depo. at 70:7–17), and that he did not know the methodology those employees used to estimate downtime, *see* Filing 111 at 39 (Airoldi depo. at 76:4–6). Mr. Airoldi eventually agreed that his opinion about the amount of damages for replacement of software was from adding up invoices, *see* Filing 111 at 22 (Airoldi depo. at 50:7–16), and that it was "Greater Omaha's belief that Kuecker Logistics did not provide box optimization," not that it was his opinion based on his observation, *see* Filing 111 at 23 (Airoldi depo. at 51:12–16 (answering "yes" after the question at

51:12–16 was repeated)). Mr. Airoldi's opinions about outside storage expenses were also based on information from other employees that KLG missed the deadline that GOP set, and he could not explain how the storage costs were calculated, where all of those costs were incurred before Mr. Airoldi even worked for GOP. Filing 111 at 26–29 (Airoldi depo. at 59:23–62:17). GOP's contention that Mr. Airoldi "has deep professional knowledge of the beef packing industry that pre-dates his hiring at Greater Omaha," Filing 130 at 14, only further demonstrates that his opinions do not arise "from his ground-level involvement in the events giving rise to this litigation" but instead to a substantial degree may arise from his pre-hire expertise. *See Downey*, 633 F.3d at 6. Thus, even if Mr. Airoldi as the CFO of GOP could in theory offer testimony regarding damages that is within his personal knowledge without being qualified as an expert, as GOP contends, *see* Filing 130 at 19 (citing *Vyanet Operating Grp., Inc. v. Maurice*, No. 21-CV-02085-CMA-SKC, 2023 WL 3268556, at *4 (D. Colo. May 5, 2023)), Mr. Airoldi lacks personal knowledge of these matters.

GOP's response is to assert that individuals with knowledge of historical financial results of a company and its operations constitute non-retained experts, relying on *Hardwood Lumber, Inc. v. Brewco Inc*., No. 3:18-05088-CV-RK, 2020 WL 3668706 (W.D. Mo. July 6, 2020). Filing 130 at 19. That reliance is misplaced. In *Hardwood Lumber*, the district court stated, "the correct test [to determine whether a witness is a non-retained expert] is not whether the witness is giving an opinion they otherwise would not have been asked to give, but whether the expert's testimony is based on observations made independent of the litigation." *Hardwood Lumber, Inc*., 2020 WL 3668706, at *2. The district court also noted that the witness, "as Hardwood's CPA, calculates Hardwood's profit and losses each year, [so] [s]he therefore has prior knowledge of Hardwood's finances and its profit and losses." *Id.* On that basis, the district court concluded that the witness

29

was properly designated as a non-retained witness. *Id.* Nothing in that decision suggests that the district court would have reached the same conclusion if the witness had relied on information from a time before she was even employed with the company and provided by other employees to formulate her opinions, which is Mr. Airoldi's situation.

The Court concludes that Mr. Airoldi was not a non-retained expert within the meaning of Rule 26(a)(2)(C) but a retained witness within the meaning of Rule 26(a)(2)(B), so he was required to provide a written report. Because he did not provide a written report, his Rule 26(a) disclosure was deficient.

### c.   The Deficient Disclosure of Mr. Airoldi Requires a Remedy

The Court does not find that GOP acted in bad faith in making an inadequate disclosure of Mr. Airoldi, but bad faith is not required to impose sanctions pursuant to Rule 37(c)(1) if there is no justification for the inadequate disclosures. *Vanderberg*, 906 F.3d at 704. Although a court must consider the reason for noncompliance when fashioning a remedy, *Zick*, 47 F.4th at 677, GOP's only justification appears to be that GOP did not think a Rule 26(a)(2)(C) disclosure was required for Mr. Airoldi. That is a mistake, not a justification. However, the Court will still consider other pertinent factors despite the lack of any justification. *See Zick*, 47 F.4th at 677.

As to the first of these other pertinent factors, "surprise and prejudice," *id.*, KLG bases prejudice on its contention that KLG was left in the dark as to how Mr. Airoldi came to his opinions, what methodology he or somebody else used, or how to rebut his opinions. Filing 109 at 15–16. The complaining party must articulate how it was (or will be) prejudiced by the inadequate disclosure, *see Wallace*, 78 F.4th at 409, and the Court concludes that KLG has adequately stated that it faces problems that Rule 26(a)(2)(C) was meant to prevent.

Nevertheless, GOP asserts that KLG suffered no harm because GOP provided detailed disclosures of Mr. Airoldi's opinions and KLG extensively deposed Mr. Airoldi. Again, Rule

26(a)(2)(C) places the burden of disclosure on the party offering the witness. *See Smith*, 436 F.3d at 889 ("Rule 26(a)(2) 'imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" (quoting Fed. R. Civ. P. 26, advisory committee notes (1993 Amendments)). However, unlike the Court's previous consideration of improperly disclosed experts above, the question now is whether KLG actually having deposed Mr. Airoldi—rather than just having had the opportunity to do so—eliminates the harm to KLG. It is readily apparent that GOP's January 6, 2023, disclosure for Mr. Airoldi is more detailed and specific about what his opinions will be than KLG's challenged disclosures discussed above. *See* Filing 130 at 15–16.[7] Nevertheless, it leaves many questions about the nature of and the bases for his opinions, as well as questions about how his numbers were calculated, all of which likely would have been answered by a proper written report and a deposition based on that written report. Similarly, KLG's deposition of Mr. Airoldi raises as many questions as it answers about the nature of and the bases for his opinions, clarifying little more than the fact that his opinions are not based on his own observations or calculations, making it difficult for KLG to prepare for trial. *See Smith*, 436 F.3d at 889.

Turning to other pertinent factors, allowing Mr. Airoldi's inadequately disclosed retained expert opinions to be presented at trial would greatly "disrupt the order and efficiency of trial." *Zick*, 47 F.4th at 677. The discovery and disclosure deadlines are long expired; the parties previously professed themselves ready to go to trial in August 2023 but trial in another case took precedence; the Court has already ruled on dispositive motions; and despite the delay in trial GOP

---

[7] Again, the May 22, 2023, rebuttal disclosure for Mr. Airoldi is irrelevant, as it concerns criticisms of Mr. Marks's ROI calculations.

has made no attempt to remedy the deficiencies in its disclosure of Mr. Airoldi as an expert or even to seek leave to do so. Furthermore, if the information that Mr. Airoldi has to offer is so important to the case, *see id.* (considering the importance of the information or testimony in the formulation of the appropriate sanction), that only increased GOP's obligation to disclose him properly and on time.

Thus, some remedy is appropriate for the improper disclosure of Mr. Airoldi. *See* Fed. R. Civ. P. 37(c)(1). The Court concludes that the appropriate remedy is to bar Mr. Airoldi from offering any expert opinions at all. However, he will be allowed to offer fact testimony based on his personal involvement in relevant events in GOP's case-in-chief, if he actually had any such involvement. He may also be allowed to offer lay opinions if he can do so without violating Federal Rule of Evidence 701. Specifically, such lay opinions must be rationally based on his perception; must be helpful to understanding his testimony or helpful to the trier of fact to determine any fact; and his testimony must not be based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. It is that third requirement that is likely to prove problematic in a case involving implementation of a system and required software as well as the calculation of damages from failure to do so because those issues go well beyond the experience of most jurors and instead require specialized knowledge. Proffer of Mr. Airoldi's testimony will of course be subject to timely objections, and if his testimony trespasses into forbidden zones, the Court may take measures including, for example, giving curative instructions directing the jurors to disregard improper testimony.

Thus, the part of KLG's Motion to Exclude Expert Testimony, Filing 108, pertaining to Mr. Airoldi is granted. Testimony from Mr. Airoldi will only be allowed within the limits set out above.

2.      *Exclusion of Mr. Acord's Testimony*

There are two main prongs to KLG's argument that the opinions of non-retained expert Steve Acord, GOP's Vice President of Information Technology, should be excluded. First, KLG argues that Mr. Acord's opinions on the adequacy of GOP's network should be excluded because they are based on reports of ConvergeOne, a third-party consultant, not his own observations. Filing 109 at 3. Second, KLG argues that Mr. Acord is not qualified to offer opinions about deficiencies in the KLG software. Filing 109 at 3. The Court will consider these two prongs of KLG's argument in turn.

    a.   Mr. Acord's Opinions on the Adequacy of GOP's Network

        i.   The Parties' Arguments

KLG argues that Mr. Acord's opinions about the adequacy of GOP's network should be excluded to the extent they rely upon reports prepared not by him but by GOP's third-party consultant, so his opinions are not based on his personal knowledge. Filing 109 at 3.[8] KLG argues that if GOP wanted Mr. Acord to provide expert testimony based on ConvergeOne's reports, Mr. Acord should have provided a report pursuant to Rule 26(a)(2)(B) explaining in detail his methodology in relying upon these reports and their significance. Filing 109 at 18. KLG argues the lack of such a report is prejudicial to KLG because KLG still does not know exactly what methodology Mr. Acord is applying when he relies upon charts in the reports of others and how those charts apply to his opinions. Filing 109 at 18.

GOP responds that KLG has cited no legal authority for the theory that a non-retained expert may not rely on documents created by a third party or regarding events about which the

---

[8] Relatedly, KLG argues that Mr. Acord's opinions based upon these reports do not comply with Rule 702 and *Daubert* because at deposition Mr. Acord did not fully understand what the reports were saying. Filing 109 at 3. The Court finds it unnecessary to address this argument.

expert lacks first-hand knowledge. Filing 130 at 9. GOP asserts that is because there is no such authority. Filing 130 at 9. In contrast, GOP relies on the plain text of Federal Rule of Evidence 703, which provides that an expert may base an opinion on facts or data that the expert "has been made aware of or personally observed." Filing 130 at 9 (quoting Fed. R. Evid. 703). Thus, GOP asserts, "It would be contrary to law to hold that a non-retained expert may only rely on documents or data that the non-retained expert personally created or facts about which he or she has personal knowledge." Filing 130 at 10. GOP argues that Mr. Acord worked regularly with ConvergeOne in the course of his normal duties as Vice President of IT, and that Mr. Acord could properly rely on ConvergeOne's review of GOP's network and its compilation of data. Filing 130 at 10. GOP argues that although Mr. Acord did not compile the data, he has first-hand knowledge of it in his roles as Director of IT and later as VP of IT. Filing 130 at 10. GOP also argues that KLG extensively deposed Mr. Acord about the ConvergeOne reports, so KLG cannot show prejudice. Filing 130 at 11.

In reply, KLG argues that GOP "conflates" Rule 703's guidelines about an expert's sources of information with requirements to qualify as a non-retained expert. Filing 145 at 12–13. KLG reiterates that Mr. Acord has no firsthand knowledge of the preparation of the third-party reports upon which he relies, so his opinions do not qualify as non-retained expert opinions. Filing 145 at 13.

> ii. As a Non-Retained Expert, Mr. Acord Cannot Testify about the Adequacy of GOP's Network Based on Third-Party Reports

GOP's contention that a non-retained expert can rely on information from third parties as the basis for opinions overlooks caselaw from both in and out of circuit explaining what distinguishes a non-retained expert from a retained expert, as set out above in section II.A.1. That distinction turns on the meaning of the phrase "retained or specially employed" in Federal Rule of

Civil Procedure 26(a)(2)(B). As explained above, a "retained or specially employed" expert means someone "without prior knowledge of the facts giving rise to litigation [who] is recruited to provide expert opinion testimony," while a non-retained expert is "a percipient witness who happens to be an expert." *Downey*, 633 F.3d at 6.

GOP's reliance on Federal Rule of Evidence 703 does not undermine this distinction between a retained and a non-retained expert. Rule 703 states, "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, Rule 703 is an evidentiary rule about what an expert can rely on to provide an opinion that is admissible at trial. In contrast, Federal Rule of Civil Procedure 26(a)(2) is a rule about expert qualification and disclosure, which are issues that precede any question of admissibility of an expert's opinions. To put it another way, if an expert does not qualify as a non-retained expert under Rule 26(a)(2), because the expert's opinions on an issue do not arise "from his ground-level involvement in the events giving rise to the litigation," *see Downey*, 633 F.3d at 6, the expert is not allowed to offer any opinions on that issue regardless of whether a retained expert might have been able to offer those opinions based on information that the expert was only "made aware of" but did not "personally observe." Fed. R. Evid. 703.

However, contrary to KLG's contentions, there is some question about whether Mr. Acord will testify about the adequacy of GOP's network as a "percipient witness who happens to be an expert." *Downey*, 633 F.3d at 6. On the one hand, KLG argues, GOP does not dispute, and GOP's January 6, 2023, disclosure of Mr. Acord makes clear—"Mr. Acord will rely on the ConvergeOne Infrastructure Report (GOP00996654-70); October 2019 Network Assessment Reports (GOP00996671-683; GOP00459631-639); and the October 4, 2019, Core IT Analysis Report

35

(GOP00997622-7705)." Filing 110-1 at 5. On the other hand, GOP's January 6, 2023, disclosure also states,

> Mr. Acord will testify regarding the enhancements that Greater Omaha made to its network infrastructure in anticipation of the construction of its new automated warehouse. Mr. Acord will testify that based on his education, training, and experience, in his opinion at all relevant times Greater Omaha's network infrastructure was robust, met industry standards, was more than sufficient to operate the new automated warehouse, and was not the cause of the issues Greater Omaha experienced in operating its new automated warehouse.

Filing 110-1 at 5. Indeed, this part of the disclosure immediately precedes the statement, "In addition, Mr. Acord will rely on the ConvergeOne [reports]." Filing 110-1 at 5. KLG focuses on the "additional" basis for Mr. Acord's opinions—third-party reports—instead of on the asserted primary basis for those opinions.

In support of Mr. Acord's qualification to state his opinions as a non-retained expert, GOP states the following:

> Acord was responsible for Greater Omaha's network. (Filing 129-1 Acord Dep. 27:7-11; 38:4-6). He was responsible for installing the switches and creating the virtual networks KLG used to connect its network to Greater Omaha's network. (Filing 129-1 Acord Dep. 52:22-55:12). He was responsible for setting up IP addresses so KLG's servers could talk to the database. (Filing 129-1 Acord Dep. 64:16-21). He was responsible for monitoring the network to ensure that it was operating normally. (Filing 129-1 Acord Dep. 61:24-62:120). He was involved in addressing KLG's contention that the network wasn't operationally sufficient for the project. (Filing 129-1 Acord Dep. 68:21-69:1). This involvement included using various tools, including Wireshark, Solarwinds, and using pings, to monitor the network. (Filing 129-1 Acord Dep. 69:25-70:15; 81:5-8-17; 82:3-15; 83:14-20).

Filing 130 at 5.[9] With the exception of the last two deposition citations (Filing 129-1 (Acord depo. 82:3–15, 83:14–20)), which refer to use of network consultants, the cited portions of Mr. Acord's

---

[9] The citation to "Acord Dep. 61:24-62:120" is obviously a typographical error because each page of the deposition transcript has only 25 lines. Presumably the citation was meant to end with 62:12, which the Court's review shows would be accurate to support the pertinent statement.

deposition support his individual knowledge of and involvement in the GOP network from which he could reasonably opine as to the adequacy of that network.

While Mr. Acord's opinions about the adequacy of GOP's network may be subject to other objections at trial, this part of KLG's Motion as to Mr. Acord's opinions is denied.

   b. Mr. Acord's Opinions on Deficiencies of the KLG Software

KLG also contends that one of Mr. Acord's disclosures seems to indicate that Mr. Acord will testify as to deficiencies of the KLG Software. Filing 109 at 3. KLG seeks exclusion of such opinions.

    i. The Parties' Arguments

KLG argues that Mr. Acord is not qualified to give such opinions because his training and professional expertise is not in the design and development of software like that used for the System that KLG installed. Filing 109 at 3. KLG argues that Mr. Acord testified in deposition that he was not involved in the design of the KLG system or its installation and that he had not reviewed in depth the functional specifications of the KLG system. Filing 109 at 19. KLG also argues that there has been no disclosure of a report from him under Rule 26(a)(2)(B), so KLG is left to guess what facts, data, or methodology he used to arrive at his opinions. Filing 109 at 19. KLG also argues that Mr. Acord should be prevented from offering expert opinions outside of his area of expertise, where his educational background and experience do not support his expertise with design and implementation of this kind of software. Filing 109 at 20.

GOP responds that the evidence will show that the system KLG installed at GOP's facility never worked properly and that the problem was KLG's design and implementation of its system that caused KLG's system not to perform. Filing 130 at 12. For example, GOP argues that once it replaced KLG's software with software from Cirrus Tech, most of the performance issues were resolved and that no changes were made to GOP's network to fix the problems. Filing 130 at 12–

13. GOP then asserts that these facts provide sufficient foundation for Mr. Acord to testify about what he observed and to testify to his opinions regarding the inadequacy of KLG's design of its system, where he was GOP's Director and later Vice President of IT. Filing 130 at 13. Somewhat more specifically, GOP asserts that the May 22, 2023, disclosure (Filing 110-3 at 3–4) shows that most of Mr. Acord's testimony relates to facts regarding the architecture and implementation changes Cirrus Tech made to the KLG System, and the effect those changes had on the system. Filing 130 at 13. Indeed, GOP argues, "Acord's opinion that the changes Cirrus Tech made resolved the problems with the ABS system flow naturally from the facts of which he was personally aware, and his experience and training in the industry." Filing 130 at 13–14. GOP asserts that KLG has not shown any prejudice from the disclosure of Mr. Acord pursuant to Rule 26(a)(2)(C) rather than pursuant to Rule 26(a)(2)(B). Filing 130 at 14.

In reply, KLG argues that Mr. Acord's opinions about deficiencies in the KLG system came in a disclosure served after Mr. Acord testified in a deposition that he had "nothing to do with" the design and installation of KLG's system. Filing 145 at 10.

> ii. Mr. Acord's Testimony about Flaws in the KLG System
> May Be Shaky but Is Not Excludable

Mr. Acord's ability to testify about flaws in KLG's system—where ability to testify involves both meeting standards of education and experience under Federal Rule of Evidence 702 and *Daubert* and the sufficiency of his disclosures under Federal Rule of Civil Procedure 26(a)(2)—is a closer one than the question about his ability to testify as to the adequacy of GOP's network. GOP's initial response to KLG's motion to exclude this testimony is an assertion about what evidence other than Mr. Acord's will show—that the system KLG installed at GOP never worked properly and that the problem was KLG's design and implementation of its system that caused KLG's system not to perform. Filing 130 at 12. Likewise, evidence that once GOP replaced

KLG's software with software from Cirrus Tech, most of the performance issues were resolved and that no changes were made to GOP's network to fix the problems also is not an assertion about Mr. Acord's qualifications as an expert under Federal Rule of Evidence 702 or as a non-retained expert testifying from first-hand knowledge as required by Federal Rule of Civil Procedure 26(a)(2)(C). Filing 130 at 12–13. GOP attempts to bridge the gap between that other evidence and Mr. Acord's qualifications by asserting that this other evidence provides sufficient foundation for Mr. Acord to testify about what he observed and to testify to his opinions regarding the inadequacy of KLG's design of its system, where he was GOP's Director and then Vice President of IT. Filing 130 at 13. GOP's *post hoc ergo propter hoc* argument—"[t]he logical fallacy of assuming that a causal relationship exits when acts or events are merely sequential," *see Black's Law Dictionary* (11th ed.) 1412—does little or nothing to demonstrate Mr. Acord's qualifications to assert opinions about deficiencies in KLG's system.

On the other hand, as explained above as to Mr. Acord's opinions about the adequacy of GOP's system, Mr. Acord had "ground-level involvement in the events giving rise to the litigation." *See Downey*, 633 F.3d at 6. Thus, "his opinion about [deficiencies in KLG's system] is [or may be] premised on personal knowledge and observations made in the course of [that involvement]." *See id.* at 7. The question then becomes one of meeting the standards under Federal Rule of Evidence 702 and *Daubert* rather than one of qualification under Federal Rule of Civil Procedure 26(a)(2). It appears to the Court that Mr. Acord does satisfy the requirements of Rule 702 and *Daubert*.

First, KLG has not shown that Mr. Acord's opinions about the deficiencies do not fit the facts of the case, *see McMahon*, 5 F.4th at 903, or will not advance the trier of fact's understanding at least to some degree, *see Perry*, 61 F.4th at 606. The Court also concludes that Mr. Acord's

training and experience cannot be as cavalierly ignored as KLG suggests, but instead present a situation in which "[g]aps in [Mr. Acord's] qualifications or knowledge . . . go to the weight of [Mr. Acord's] testimony, not its admissibility. *Id.* As to reliability, the Court cannot say on the pretrial record that Mr. Acord's testimony about deficiencies in KLG's system is "so fundamentally unsupported by its factual basis that it can offer no assistance to the jury." *In re Bair Hugger*, 9 F.4th at 778 (internal quotation marks and citations omitted).

Second, the Court is mindful of the teachings of *Daubert* and its progeny that expert testimony should be liberally admitted, *see id.* at 777—at least when properly disclosed, *see* Fed. R. Civ. P. 26(a)(2). The Court concludes that Mr. Acord's testimony on deficiencies of the KLG system presents a situation in which "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means' of addressing 'shaky but admissible evidence.'" *In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 596). For essentially the same reasons, the Court finds that this part of Mr. Acord's testimony is admissible over KLG's Rule 403 objections.

Therefore, this part of KLG's motion to exclude Mr. Acord's opinions is denied.

### E. KLG's Motion to Exclude Dr. Jack Baldwin's Expert Testimony

The last motion before the Court in this ruling is KLG's Motion to Exclude Dr. Jack Baldwin's Expert Testimony. Filing 146. KLG seeks exclusion of Dr. Baldwin's testimony on essentially the same grounds as KLG seeks to exclude Mr. Airoldi's and Mr. Acord's opinions. Filing 146 at 1. KLG makes separate arguments for exclusion of Dr. Baldwin's opinions disclosed in his January 6, 2023, report and those disclosed in his May 22, 2023, rebuttal report. GOP first raises a general defense of Dr. Baldwin's opinions as a whole, then adds additional arguments

concerning the May 22, 2023, rebuttal report. The Court will consider these two sets of opinions in turn.

     *1.     Dr. Baldwin's Opinions*

          a.  The Opinions Disclosed in Dr. Baldwin's January 6, 2023, Report

Dr. Baldwin's January 6, 2023, Report ends with the following conclusions concerning KLG's software system:

1. The hardware and software system installed by KLG failed to function in a manner that was consistent with the contracted deliverables and also failed to function in a manner consistent with the expectations of a professional hardware and software organization;

2. I will explain to the ladies and gentlemen of the jury normal and routine practices to be followed when installing a new, mission critical software system in any business, including Greater Omaha;

3. That the failure of the KLG system could have been prevented if KLG followed normal and routine professional practices when installing a new mission critical software program at Greater Omaha;

4. That KLG failed to provide its box optimization feature as promised and contracted for in its engagement with Greater Omaha; and

5. That as a result of the deficiencies in the design, implementation and testing of the software from KLG at Greater Omaha, that Greater Omaha was obligated to replace its software system to operate its automated warehouse distribution facility.

[Filing 148-2 at 4](#).

          b.  The Opinions Disclosed in Dr. Baldwin's May 22, 2023, Rebuttal Report

KLG contends that Dr. Baldwin's May 22, 2023, Report is intended to rebut the expert report of KLG's retained network expert, Mr. Fagin. [Filing 147 at 5](#). KLG extracts and challenges the following opinions in that report:

"In my opinion if there were problems with the Greater Omaha network that was impacting the operation of the Kuecker system then it was incumbent on Kuecker

41

to assist Greater Omaha in identifying and resolving the problem." Filing 148-3 at 3.

"If network issues persisted, then Kuecker fell below industry standard practice in failing to identify the root cause of these issues and resolving them so that its system could operate properly." Filing 148-3 at 3.

"The deficiencies in the Kuecker system are unrelated to Greater Omaha's network." Filing 148-3 at 3.

"[N]o changes were made to the Greater Omaha network after QC software was replaced with software provided by Cirrus Technologies. In my opinion, this confirms that any issues or latency were software-related and not as a result of the Greater Omaha network." Filing 148-3 at 4.

*See also* Filing 147 at 6 (setting out these opinions).

> 2. *The Parties' Arguments*

>> a. Arguments Concerning the January 6, 2023, Report

KLG asserts, "In essence, Dr. Baldwin's disclosed opinions are nothing more than prior talking points of GOP personnel wrapped up to look like expert opinions." Filing 147 at 1. KLG's succinct summary of its objections to Dr. Baldwin's opinions in his January 6, 2023, report is as follows:

> In regards to the "contracted deliverables" referenced above in Conclusion 1, notably Dr. Baldwin's January 6 Report does not disclose that he reviewed any of the contractual documents for the System, such as the functional specification document that GOP signed and approved before work began on the software system. With regard to Conclusions 2 and 3, Dr. Baldwin does not specify any of the "normal and routine professional practices" he asserts Kuecker should have followed. In addition, [with regard to Conclusion 4,] Dr. Baldwin does not provide any support or basis for concluding Kuecker failed to provide box optimization or that such a feature was "promised and contracted for . . . ." Finally, regarding Conclusion 5, Dr. Baldwin does not provide any analysis to support his opinion that "Greater Omaha was obligated to replace its software system. . . ."

Filing 147 at 5. Although set out in considerably more detail in KLG's brief, KLG argues that Dr. Baldwin's opinions fail the requirements of Rule 702 and *Daubert*, first, because they are not based on sufficient facts or data but are merely reiterations of what GOP's IT Team told him.

Filing 147 at 8. Indeed, KLG points out that Dr. Baldwin's only visit to GOP was on May 12, 2022, at which point GOP had already replaced the KLG software. Filing 147 at 2. Thus, KLG argues that these opinions will not be helpful to the jury and will risk juror confusion. Filing 147 at 13. KLG also argues that Dr. Baldwin is not qualified to opine on box optimization where he has no experience with beef-packing facilities. Filing 147 at 15. KLG argues further that Dr. Baldwin's opinions concerning what the contract called for are improper legal conclusions. Filing 147 at 16. KLG argues that Dr. Baldwin's disclosures are also inadequate under Federal Rule of Civil Procedure 26(a) because they do not disclose the underlying basis or reason for these opinions. Filing 147 at 18.

GOP responds that Dr. Baldwin's visit to its facility on May 12, 2022, allowed him to observe remaining KLG equipment and to gain an understanding of how the equipment was supposed to operate with appropriate software. Filing 155 at 4. GOP also asserts that Dr. Baldwin extensively interviewed the people who had worked with the KLG software to understand the problems with that software. Filing 155 at 4. GOP also asserts that Dr. Baldwin based his opinions on his experience developing and implementing complex mission-critical software systems over the past 35 years, interviews with witnesses, and review of documents and depositions. Filing 155 at 5. Somewhat more specifically, as to Rule 702 requirements, GOP asserts Dr. Baldwin is qualified by decades of experience in developing and implementing mission-critical software. Filing 155 at 11. Contrary to KLG's contentions, GOP also argues that Dr. Baldwin's testimony is based on sufficient data and information as well as his experience. Filing 155 at 11. GOP also argues that Dr. Baldwin's testimony will be helpful to the jury where a typical layperson does not have experience in developing and implementing software. Filing 155 at 17. GOP also disputes KLG's assertion that Dr. Baldwin's testimony will confuse the jury because he made clear he never

43

observed the functioning of the KLG software installed at GOP. Filing 155 at 18. As to Dr. Baldwin's ability to opine on effective box optimization, GOP argues that KLG is artificially narrowing the subject matter to beef-packing facilities, but an expert in software development is capable to determining whether KLG's software was effective. Filing 155 at 20. Next, GOP asserts that Dr. Baldwin is not stating legal conclusions about breach of the parties' contract, only whether KLG's system delivered what was promised. Filing 155 at 21. Finally, GOP disputes KLG's contention that Dr. Baldwin's report omits any underlying basis or reason supporting his conclusions, where Dr. Baldwin summarized his personal visit to GOP, the information he obtained from GOP employees who operated the system, and his personal experience. Filing 155 at 22.

The Court finds it unnecessary to prolong this summary of the parties' argument by setting out KLG's reply arguments. Those reply arguments are essentially the same as KLG's opening arguments occasionally in slightly different garb.

### b.  Arguments Concerning the May 22, 2023, Rebuttal Report

Both parties reiterate many of the same arguments as to the May 22, 2023, rebuttal report that they asserted as to the January 6, 2023. Thus, the Court will attempt to summarize only different arguments concerning this report.

KLG argues that Dr. Baldwin is not qualified to testify regarding "hardware" network design, in this case, for a meat-packing plant, because his company does not do hardware networks; rather, they simply place the software on top of the hardware. Filing 147 at 20. KLG disputes Dr. Baldwin's assertion that his experience in software enables him to opine on networks. Filing 147 at 21. KLG points to an affidavit of its own expert as showing that software development and network configuration are distinctly different areas of expertise. Filing 147 at 21–22. KLG argues

that lack of this specific experience warrants exclusion of Dr. Baldwin's opinions in his May 22, 2023, rebuttal report. Filing 147 at 24.

GOP responds that a rebuttal expert may offer criticisms of the opposing party's expert's methodologies or opinions without providing conclusions of his or her own. Filing 156 at 23–24. GOP then asserts that Dr. Baldwin is qualified to offer criticisms of Mr. Fagan's opinion where he identified problems that GOP experienced with the KLG system that are unrelated to network issues, which GOP argues refutes Mr. Fagin's conclusion that the problems with KLG's system were caused by GOP's network. Filing 156 at 24. GOP maintains that a network consists of hardware and software, so Dr. Baldwin is qualified to testify about how they work together. Filing 156 at 25–26. Finally, GOP argues that Dr. Baldwin is qualified to offer opinions regarding project management of implementation of mission-critical software based on his experience doing just that. Filing 156 at 28.

Again, the Court finds it unnecessary to summarize KLG's reply arguments.

### 3.   *Dr. Baldwin's Opinions in Both Reports May Be Shaky but Are Not Excludable*

The Court concludes that it can resolve this part of KLG's Motion to exclude Dr. Baldwin's opinions more briefly than it could summarize the parties' arguments. Indeed, for essentially the same reasons that the Court concluded that Mr. Acord does satisfy the requirements of Rule 702 and *Daubert*, the Court now concludes that so does Dr. Baldwin.

First, by pointing to Dr. Baldwin's single visit to GOP's facility and reliance on the reports of GOP employees, KLG has failed to show that Dr. Baldwin's opinions in his January 6, 2023, report do not fit the facts of the case, *see McMahon*, 5 F.4th at 903, or will not advance the trier of fact's understanding at least to some degree, *see Perry*, 61 F.4th at 606. The Court also concludes that Dr. Baldwin's training and experience cannot be as cavalierly ignored as KLG suggests, but

instead present a situation in which "[g]aps in [Dr. Baldwin's] qualifications or knowledge . . . go to the weight of [Dr. Baldwin's] testimony, not its admissibility." *Id.* As to reliability, the Court cannot say on the pretrial record that Dr. Baldwin's testimony about deficiencies in KLG's system are "so fundamentally unsupported by its factual basis that it can offer no assistance to the jury." *In re Bair Hugger*, 9 F.4th at 778 (internal quotation marks and citations omitted).

Second, the Court is mindful of the teachings of *Daubert* and its progeny that expert testimony should be liberally admitted, *see id.* at 777—at least when properly disclosed, *see* Fed. R. Civ. P. 26(a)(2). The Court concludes that Dr. Baldwin's testimony on deficiencies of the KLG system presents a situation in which "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means' of addressing 'shaky but admissible evidence.'" *In re Bair Hugger*, 9 F.4th at 778 (quoting *Daubert*, 509 U.S. at 596). Clearly, KLG has a large arsenal of ammunition to challenge Dr. Baldwin's testimony that will provide KLG with more than adequate opportunities to impeach his opinions. For essentially the same reasons, the Court finds that this part of Dr. Baldwin's testimony is admissible over KLG's Rule 403 objections.

Therefore, KLG's motion to exclude Dr. Baldwin's opinions is denied.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that:

1.     GOP's Motion to Exclude Opinion Testimony of Plaintiff's Non-Retained Experts, Filing 100, is granted, and testimony from the challenged non-retained witnesses will only be allowed within the limits set out above;

2.     GOP's *Daubert* Motion to Exclude Expert Testimony of Jonathan Marks (Motion to Exclude Mr. Marks's Testimony), Filing 103, is

a.      denied as moot because neither party will be allowed to offer expert or other testimony about a promise of $6.24 million annually from box optimization or about any ROI damages; and

b.      denied as to Mr. Marks's opinions on accrued interest due KLG on unpaid invoices;

3.      KLG's Motion to Exclude Expert Testimony, Filing 108, is

a.      granted as to Mr. Airoldi, and he will only be allowed to testify within the limits set out above;

b.      denied as to Mr. Acord's opinions about the adequacy of GOP's network; and

c.      denied as to Mr. Acord's ability to testify about flaws in KLG's system;

4.      KLG's Motion to Exclude Dr. Jack Baldwin's Expert Testimony, Filing 146, is denied.

Dated this 12th day of January, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge