IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KUECKER LOGISTICS GROUP, INC.,

Plaintiff,

vs.

GREATER OMAHA PACKING CO., INC.,

Defendant.

**8:20CV307**

**MEMORANDUM AND ORDER ON
MOTIONS IN LIMINE**

This lawsuit arises from a dispute between plaintiff/counter-defendant Kuecker Logistics Group, Inc., (KLG) and defendant/counterclaimant Greater Omaha Packing Company, Inc., (GOP) over a contract for KLG to install an "Automated Box Storage and Handling System" (ABS system) at GOP's beef packing plant in Douglas County, Nebraska. It is now before the Court on two pretrial Motions in Limine.[1] For the reasons set out below, the Motions are granted in part and denied in part.

## I.   INTRODUCTION

The Court has already set out some of the pertinent factual background to this case in its Memorandum and Order on Plaintiff's [First] Motion for Partial Summary Judgment. Filing 79 at 3–9; *see also Kuecker Logistics Grp., Inc. v. Greater Omaha Packing Co*., No. 8:20CV307, 2023 WL 3198418, at *2–*4 (D. Neb. Apr. 14, 2023). The Court set out still more factual background in its Memorandum and Order Regarding Motions for Partial Summary Judgment. Filing 184 at 3–11; *see also Kuecker Logistics Group, Inc. v. Greater Omaha Packing Co., Inc*., No. 8:20CV307, 2023 WL 9111078, at *1 (D. Neb. Aug. 29, 2023), *clarified on denial of*

---

[1] Four pretrial motions to exclude experts are also pending, but the Court has addressed or will address them in a companion order.

*reconsideration sub nom. Kuecker Logistics Grp., LLC v. Greater Omaha Packing Co.*, No. 8:20CV307, 2023 WL 8187406 (D. Neb. Nov. 27, 2023). Consequently, the Court need not summarize the factual background to the lawsuit. On the other hand, the Court concludes that a review of the procedural and legal context of the claims coming up for trial is warranted in light of the Court's rulings on motions for summary judgment, Filing 79; Filing 184; Filing 209, the pending Motions in Limine, and the parties' Proposed Jury Instructions. Filing 179; Filing 180.

### A. The Procedural and Legal Context

*1.    KLG's Claims*

In its First Amended Complaint, KLG brought four claims all based upon GOP's failure to pay KLG the principal amount of $2,486,321.03 plus interest allegedly due to KLG on outstanding invoices on the parties' contract for installation of the ABS system. *See* Filing 25 at 7 (¶ 37) (claim for "breach of contract" alleging "GOP has breached the Agreement by failing, neglecting, and refusing to pay Kuecker the remaining amount due"); Filing 25 at 8 (¶ 45) (claim for "foreclosure of construction lien" pursuant to the Nebraska Construction Lien Act (NCLA), Neb. Rev. Stat. § 52-125 *et seq.*, alleging that a balance is due on a construction lien by virtue of GOP's "fail[ure] to pay the full amount due and owing to Kuecker"); Filing 25 at 10 (¶ 50) (claim for "unjust enrichment" expressly identified as "In the Alternative to Breach of Contract" and based on failure to pay); Filing 25 at 11 (¶ 55) (Nebraska Construction Prompt Pay Act (NCPPA) claim pursuant to Neb. Rev. Stat. § 45-1201 *et seq.* based on GOP's failure to pay). Thus, KLG's claims are all alternatives of each other.

KLG must be able to prove its breach-of-contract claim based on GOP's alleged failure to pay outstanding invoices in order for it to be able to prove its other claims also based on GOP's alleged failure to pay outstanding invoices. GOP recognizes this fact to the extent that it argues in its Proposed Jury Instructions that "any Prompt Pay Act claim fails if Kuecker fails to prove its

breach of contract claim against GOP." Filing 179 at 15 (reduced from all capitals).[2] KLG seeks essentially identical relief on its breach-of-contract claim, unjust enrichment claim, and NCPPA claim. *See* Filing 25 at 7 ("Wherefore" paragraph on breach-of-contract claim); Filing 25 at 10 ("Wherefore" paragraph on unjust enrichment claim); Filing 25 at 11 ("Wherefore" paragraph for NCPPA claim). Furthermore, because the Court found as a matter of law at summary judgment that KLG breached the parties' contract by failing to provide automated box optimization, KLG cannot prevail on its breach-of-contract claim (or its unjust enrichment claim or its NCPPA claim) against GOP unless KLG establishes that its own breach was so minor that KLG substantially performed the contract. *McGill Restoration, Inc. v. Lion Place Condo. Ass'n*, 959 N.W.2d 251, 269 (Neb. 2021) ("To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract."); *City of Sidney v. Mun. Energy Agency of Nebraska*, 917 N.W.2d 826, 845 (Neb. 2018) ("To establish substantial performance under a contract, any deviations from the contract must be relatively minor and unimportant.").

This review raises the question of which of KLG's claims can be submitted to the jury. There does not appear to be any dispute that KLG's breach-of-contract claim and unjust enrichment claim are triable to a jury, even though GOP did not submit proposed jury instructions on the latter claim. *See 132 Ventures, LLC v. Active Spine Physical Therapy, LLC*, 982 N.W.2d 778, 786 (Neb. 2022) ("A suit for damages arising from breach of a contract presents an action at law. Additionally, a claim for unjust enrichment is a quasi-contract claim for restitution."). However, in its Proposed Jury Instructions, GOP asserts that "a decision, if necessary, under the

---

[2] GOP does not offer any proposed jury instructions on KLG's unjust enrichment claim. *See generally* Filing 179. Presumably that is because KLG expressly pleaded the unjust enrichment claim as an "alternative" to its breach-of-contract claim. Filing 25 at 10. In contrast, KLG has offered separate instructions on its breach-of-contract claim, its unjust enrichment claim, and its NCPPA claim. *See* Filing 180 at 14–21.

Prompt Pay Act are [sic] questions of law for the Court and not to be submitted to a jury." Filing 179 at 15 (reduced from all capitals).

The Nebraska Construction Prompt Pay Act (NCPPA) provides in pertinent part,

> Any individual, partnership, firm, limited liability company, corporation, or company may bring an action to recover any damages caused to such person or entity by a violation of the Nebraska Construction Prompt Pay Act. In addition to an award of damages, the court may award a plaintiff reasonable attorney's fees and costs as the court determines is appropriate.

Neb. Rev. Stat. § 25-1211. Thus, unlike some statutes authorizing an action, the NCPPA does not explicitly state whether the authorized "action" is tried to the court or a jury. *Compare* Neb. Rev. Stat. § 21-1211, *with* Neb. Rev. Stat. § 76-1446 (stating that an action under the Nebraska Uniform Residential Landlord and Tenant Act "shall be tried by the court without a jury"). As the Nebraska Supreme Court has explained,

> Neb. Const. article I, § 6, preserves the right to a jury trial as it existed under the common law. At common law, legal claims were tried by a jury and equitable claims were tried by a court. Accordingly, in Nebraska, it is well established that litigants are typically entitled to a jury trial on legal claims, but not equitable claims. The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the petition determine whether a particular action is one at law to be tried to a jury or in equity to be tried to a court....

> Statutory law is similar in effect. Under Neb. Rev. Stat. § 25-1104 (Reissue 2016), "Issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury unless a jury trial is waived...."

132 *Ventures, LLC*, 982 N.W.2d at 786 (citations omitted); see also Neb. Rev. Stat. § 25-1105 ("All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury, or referred as provided in this code."). An action under the NCPPA is clearly an action to recover money; thus, it is plainly to be tried to a jury absent a waiver. Neb. Rev. Stat. § 25-1104. On the other hand, "An action to foreclose a construction lien is one grounded in equity." *Lincoln Lumber Co. v. Lancaster*, 618 N.W.2d 676, 679 (Neb. 2000). Thus, a claim under

4

the NCLA pursuant to Nebraska Revised Statute § 52-155 to foreclose a lien—like KLG's second claim—is triable only to the court.

Consequently, if necessary, KLG's NCLA claim will be decided by the Court, not by the jury, but the jury will decide KLG's other three claims. KLG is also entitled to pursue all three of those claims before the jury although there appears to be little point in doing so because of the interrelatedness of those claims, the lack of any different or additional damages or other relief, and the possibility of unnecessary confusion of the jurors. As a result of the Court's ruling on the Motions for Partial Summary Judgment, Filing 79; Filing 184, and the ruling on reconsideration of the latter ruling, Filing 209, the issues remaining for jury trial on KLG's claims are whether KLG substantially performed the parties' contract notwithstanding KLG's breach of the contract as to the automated box optimization term, and if KLG prevails on that issue, the amount of KLG's damages for GOP's failure to pay the outstanding invoices. *See* Filing 209 at 14.

*2.    GOP's Claims*

GOP originally asserted five counterclaims: breach of contract, Filing 26 at 12; breach of warranties, Filing 26 at 13; negligent misrepresentation, Filing 26 at 13; fraudulent misrepresentation, Filing 26 at 14; and bad faith construction lien, Filing 26 at 15. In the Court's first ruling on a summary judgment motion, the Court held that GOP's first four counterclaims are alternatives of each other, *see* Filing 79 at 10, and granted KLG summary judgment on the misrepresentation counterclaims as barred by the economic loss doctrine. Filing 79 at 43. After that decision, GOP's pending counterclaims were alternative claims for breach of contract and breach of warranties and an independent claim for "bad faith construction lien."

GOP's counterclaim for "bad faith construction lien" is premised on KLG's alleged overstatement of the amounts to which it is entitled and on KLG's construction lien being "otherwise filed in bad faith." *See* Filing 26 at 15. Although GOP did not indicate the authority for

5

this claim in its Counterclaim, GOP asserts in its Proposed Jury Instructions that the claim is pursuant to the NCLA and specifically Neb. Rev. Stat. § 52-157. Filing 179 at 28. In pertinent part, that statute provides as follows:

> (2) If in bad faith a claimant records a lien, overstates the amount for which he or she is entitled to a lien, or refuses to execute a release of a lien, the court may:
>
> > (a) Declare his or her lien void; and
> >
> > (b) Award damages to the owner or any other person injured thereby.
>
> (3) Damages awarded under this section may include the costs of correcting the record and reasonable attorney's fees.

Neb. Rev. Stat. § 52-157(2) and (3). The Court has found no decision of a Nebraska court deciding whether an action pursuant to § 52-157(2) is grounded in equity or law. However, the Court concludes that like an action under the NCLA to foreclose a construction lien—which "is one grounded in equity," *Lincoln Lumber Co.*, 618 N.W.2d at 679—an action asserting a bad faith construction lien is also one grounded in equity. This is so because such an action is not one "for the recovery of money or of specific real or personal property," which must be tried to a jury pursuant to Nebraska Revised Statute § 25-1104. Thus, the Court concludes that GOP's NCLA counterclaim—like KLG's NCLA claim—is triable to the Court and not to a jury.

Returning to GOP's breach-of-contract claim and breach-of-warranty claims triable to a jury, GOP previously asserted that the same evidence that establishes breach of contract establishes breach of warranties and that GOP was entitled to the same damages for breach of warranties as for breach of contract. Filing 90 at 13–14; *see also* Filing 184 at 32. As this Court previously explained,

> The Court held in its ruling on KLG's first Motion for Partial Summary Judgment that all of GOP's counterclaims are alternatives of each other. *See* Filing 79 at 10–11; *see also Kuecker*, 2023 WL 3198418, at *5–*6. GOP has not asserted any legal or factual reason why the result of its Motion for Partial Summary Judgment as to its breach of warranties claim should be any different from the result

of its Motion for Partial Summary Judgment as to its breach of contract claim. Indeed, it has argued the exact opposite. Filing 90 at 13–14. Therefore, GOP is entitled to summary judgment on its breach of warranty claim only to the same extent that it is entitled to summary judgment on its breach of contract claim.

Filing 184 at 32. In short, the Court has already determined as a matter of law that GOP is entitled to summary judgment as a matter of law as to KLG's liability for breach of contract and breach of warranty for failure to provide automated box optimization function. *See* Filing 184 at 29, 32. That leaves GOP's damages for breach of contract and breach of warranty for the jury to determine. In its subsequent ruling, the Court clarified that "[t]he only damages GOP is so far barred from recovering on its remaining counterclaims [for breach of contract and unjust enrichment] are damages for lost ROI." Filing 209 at 18. GOP's damages claim seeks out-of-pocket costs to operate and repair the system, including costs to replace software, downtime costs, cost of capital, outside storage costs, and additional labor. Filing 198 at 1. GOP is entitled to pursue these other damages claims before the jury on both its breach-of-contract claim and its breach-of-warranty claim, although there appears to be little point in doing so because of the interrelatedness of those claims, the lack of any additional damages, and the potential for unnecessary confusion of the jurors.[3]

### B. The Motions Now Before the Court

The first motion now before the Court is GOP's Motion in Limine seeking exclusion of eight items or categories of evidence. Filing 158. The second motion is KLG's Motions in Limine seeking exclusion of twenty-nine categories of evidence. Filing 168. As the Court recently explained in a decision in another case, the Court is frustrated by motions in limine that simply ask

---

[3] Pausing for a moment to consider the parties' affirmative defenses, the Court notes that GOP's Proposed Jury Instructions show that GOP intends to assert affirmative defenses of lack of substantial performance and estoppel as to at least KLG's breach-of-contract claim and NCPPA claim and that GOP presumably would assert the same affirmative defenses to KLG's unjust enrichment claim if it is submitted to the jury. *See* Filing 179 at 11–12, 17–18. Again, KLG's Proposed Jury Instructions include instructions on its claims for breach of contract, unjust enrichment, and violation of the NCPPA. *See* Filing 180 at 14–21. KLG's Proposed Jury Instructions also show that KLG intends to assert eight affirmative defenses to GOP's breach-of-contract and breach-of-warranty claims. Filing 180 at 22–33.

the Court to follow well-established evidentiary and procedural rules. Parts of both sides' Motions in this case cause the Court that same frustration. Nevertheless, the Court will discuss the various categories of challenged evidence separately to the extent the Court finds necessary.

The parties' opening briefs supporting their own Motions in Limine, Filing 166; Filing 169, were filed before the Court entered its Memorandum and Order Regarding Motions for Partial Summary Judgment. Filing 184. Opposition briefs were filed the same day that the Court filed its summary judgment ruling, Filing 186; Filing 188. Consequently, it is not surprising that the opposition briefs did not take into account the Court's summary judgment ruling. Only the parties' reply briefs, Filing 214; Filing 215, were filed after the Court's summary judgment ruling and its ruling on the motions for reconsideration. Thus, only the reply briefs could reasonably reflect the status of claims after those rulings, even if they do not always do so.

Finally, after the Court's second summary judgment ruling, Filing 184, a magistrate judge entered a text order requiring the parties to advise the Court as to which pending motions still need resolution within 14 days of the rulings on then-anticipated motions for reconsideration and/or clarification. Filing 197. After the Court entered its Memorandum and Order Regarding the Parties' Motions to Reconsider and Clarify, Filing 209, KLG filed its Notice of Motions for which a Ruling Is Still Needed, Filing 210, and GOP filed its Report on Pending Motions, Filing 211. In its Notice, KLG asserted that a ruling is still required on all the categories of evidence in its Motions in Limine. Filing 210 at 5–11. In its Report, GOP likewise asserted that a ruling is required on all the categories of evidence in its Motion in Limine. Filing 211 at 1–3.

## II.  LEGAL ANALYSIS

The Court finds surprisingly little overlap in the topics raised in the Motions in Limine. On the other hand, both parties seek exclusion of numerous categories of evidence on relevance-versus-prejudice grounds pursuant to Federal Rules of Evidence 401, 402, and 403, as well as

exclusion of other categories on other grounds. Thus, the Court will begin with a summary of relevance-versus-prejudice standards. The Court will then consider the parties' Motions in turn.

### A. Relevance-Versus-Prejudice Standards

"Federal Rule of Evidence 401 says that '[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Williams v. Baum*, 48 F.4th 571, 573 (8th Cir. 2022) (quoting Fed. R. Evid. 401). The Eighth Circuit Court of Appeals has explained, "This threshold is 'quite minimal.'" *United States v. Walker*, 68 F.4th 387, 392 (8th Cir. 2023) (quoting *United States v. Nadeau*, 598 F.3d 966, 968 (8th Cir. 2010)). Rule 402 adds that relevant evidence is generally admissible. Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible.").

Nevertheless, "under Rule 403, relevant evidence may be excluded 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Walker*, 68 F.4th at 392 (quoting Fed. R. Evid. 403); *see also Am. Mod. Home Ins. Co. v. Thomas*, 993 F.3d 1068, 1071 (8th Cir. 2021) (referring to the considerations set out in Rule 403 as "Rule 403's balancing factors").

When balancing probative value against prejudicial effect, courts must keep in mind that "Rule 403 prejudice is something different than simply being evidence that is detrimental to a party's case; instead, the 'rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" *United States v. Ridings*, 75 F.4th 902, 906 (8th Cir. 2023) (quoting *United States v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007)); *United States v. Patterson*, 68 F.4th 402, 416 (8th Cir. 2023) (explaining that evidence suggesting a decision on an

improper basis includes "evidence which is so inflammatory on its face as to divert the jury's attention from the material issues in the trial."). More specifically still, the Eighth Circuit gives "great deference to the balance that the district court str[ikes] between the [evidence's] probative value and [its] prejudicial effect." *Walker*, 68 F.4th at 392. Consequently, a litigant "faces an uphill battle" to overturn a district court's balancing of probative value against prejudicial effect. *Trotter v. Lawson*, 997 F.3d 819, 821 (8th Cir. 2021).

Another Rule 403 balancing factor that warrants some further explanation here is "needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is cumulative 'when it adds very little to the probative force of the other evidence and its contribution to the truth would be outweighed by its contribution to the length of the trial.'" *United States v. Lebeau*, 76 F.4th 1102, 1105 (8th Cir. 2023) (quoting *United States v. Robertson*, 948 F.3d 912, 917 (8th Cir. 2020)). Yet another Rule 403 balancing factor warranting additional comment here is "wasting time." Fed. R. Evid. 403. The Eighth Circuit Court of Appeals has affirmed exclusion of evidence that had the potential to waste time in minitrials over collateral issues. *See Orduno v. Pietrzak,* 932 F.3d 710, 719 (8th Cir. 2019) (citing Fed. R. Evid. 403).

With these standards in mind, the Court turns to GOP's Motion in Limine.

### B.  GOP's Motion in Limine

As mentioned above, GOP seeks exclusion of eight items or categories of evidence. The first three categories involve specific exhibits or topics. The remaining five are more general.

### 1.  Exhibit 145

GOP first seeks an order prohibiting KLG from offering evidence regarding Exhibit 145 because it was not previously disclosed in discovery. Filing 158 at 1. Exhibit 145 is a PowerPoint presentation entitled "GOP Visit March 27–28, 2018: Order Allocation and Pallet Planning discussions." *See also* Filing 159-2. It was first provided to GOP on August 8, 2023, as an

attachment to an email from KLG to GOP's counsel stating that the document "is listed on our exhibit list." Filing 159-1 at 1. That email also stated, "We received this document from Alan Hadsell. Our understanding is that it was not contained in either parties' [sic] productions to date." Filing 159-1 a 1. KLG represents that this PowerPoint was provided to KLG's counsel on March 30, 2023, by Alan Hadsell. Filing 188 at 1. KLG also represents that on or about March 28, 2018, Mr. Hadsell gave a PowerPoint presentation at GOP's facility in Omaha, Nebraska, to several members of GOP's management team, including Dan Jensen, Carol Mesenbrink, Omar Urias, Randy Finch, and Perry Kendrick. Filing 188 at 2. KLG stops short of asserting that Exhibit 145 is the PowerPoint Mr. Hadsell presented at GOP on March 28, 2018.

GOP asserts that Exhibit 145 was not properly disclosed in any of KLG's Federal Rule of Civil Procedure 26 disclosures. Filing 166 at 3. Consequently, GOP asserts that it must be excluded pursuant to Federal Rule of Civil Procedure 37. Filing 166 at 4. KLG disputes exclusion of this exhibit for the better part of six pages of its opposition. Filing 188 at 1–6. In essence, KLG's argument is that it did not have possession of the exhibit until March 30, 2023, and that it produced the exhibit as soon as KLG determined that it was not contained in either party's voluminous productions. Filing 188 at 2–3. KLG argues that its failure to disclose this exhibit was at worst inadvertent and that the late disclosure was plainly harmless, where GOP knew about the PowerPoint, so no Rule 37 remedy is appropriate. Filing 188 at 3. KLG argues that the exhibit is important because it demonstrates what the parties agreed to concerning "box optimization" function. Filing 188 at 5. GOP's five-page argument in reply states in most pertinent part that Exhibit 145 is no longer relevant where the Court determined as a matter of law that KLG failed to deliver the promised box optimization. Filing 214 at 2–3.

The Court agrees with GOP's last point. As the Court explained in its Memorandum and Order Regarding Motions for Partial Summary Judgment, the parties disputed the requirements of the box optimization system that KLG promised to provide. Filing 184 at 17. The Court concluded that "the unambiguous meaning of the contract term 'box optimization' is automated box optimization with the opportunity for the order planner to intervene to modify the order but intervention by the order planner is not required." Filing 184 at 22. The Court then concluded that KLG had not generated a genuine issue of material fact that the software KLG provided satisfied the requirements of the Contract for box optimization as construed by the Court to mean allowing but not requiring human intervention. Filing 184 at 28. Consequently, the Court held that GOP was entitled to summary judgment as a matter of law as to KLG's liability for breach of the box optimization term of the contract. Filing 184 at 29.

KLG argued that Exhibit 145 is important to demonstrate what the parties agreed to concerning "box optimization" function, *see* Filing 188 at 5, but the Court has determined what the parties agreed to concerning "box optimization" function as a matter of law. Filing 184 at 22. Thus, Exhibit 145 is neither relevant, *see* Fed. R. Evid. 401, nor admissible, *see* Fed. R. Evid. 402. Instead, admitting Exhibit 145 at trial would confuse or mislead the jurors as to what matters remain at issue. *See* Fed. R. Evid. 403. This part of GOP's Motion in Limine is granted.

> 2.   *Evidence that the $6.24 Million a Year in ROI Was an "Estimate"*

Next, GOP seeks an order "[p]rohibiting extrinsic evidence or argument that the $6.24 million in return on investment [ROI] from box optimization was intended to be or was a non-binding 'estimate' or to interpret or explain the terms of the Contract." Filing 158 at 1. In its supporting brief, GOP reiterated its summary judgment argument that there is no dispute that the contract promised a ROI of $6.24 million per year. Filing 166 at 4. In its response, KLG suggests that this part of GOP's motion might be moot, but KLG nevertheless asserts that the evidence

should be admitted if the issue has not been decided. Filing 188 at 7. In reply, GOP "recognizes that this Court found the contract unambiguous, and that Kuecker did not guarantee an ROI of $6.24 million per year for box optimization." Filing 214 at 6. GOP states that it is now simply preserving the issue for appeal. Filing 214 at 6.

As the Court explained in its ruling on the parties' motions to exclude experts, the Court held as a matter of law at summary judgment *inter alia* that the parties' contract did not promise a ROI of $6.24 million for box optimization. Filing 184 at 22–25. The Court explained, "Because there was no promise of $6.24 million annually in ROI from box optimization, the Court need not consider further GOP's breach of contract claim based on such a promise." Filing 184 at 25. The Court also concluded that there is no contractual basis for lost ROI damages. Filing 184 at 29–30. In the companion ruling on the motions to exclude experts, the Court also rejected GOP's argument that ROI was still relevant to the issue of whether KLG substantially performed the parties' contract. Filing 221 at 21. The Court explained,

> [W]here there was no promise of ROI, failure to achieve that ROI is not evidence that KLG did not substantially perform the parties' contract. To put it another way, KLG had no obligation to substantially perform a promise that it did not make, and its failure to do so would not defeat KLG's "substantial performance" defense.

Filing 221 at 21–22. Thus, neither party will be allowed to offer expert or other testimony either supporting or rebutting a promise of $6.24 million in ROI annually from box optimization or about any ROI damages.

This part of GOP's Motion in Limine is denied as moot.

### 3.    *Exhibits Excludable Pursuant to Rule 403*

GOP also seeks an order "[p]rohibiting the use of evidence whose probative value is substantially outweighed by the danger of unfair prejudice, which is likely to confuse the issues, or mislead the jury in violation of Fed. R. Evid. 403," which GOP identifies as Exhibits 129, 128,

120, 100, 91, 104, 113, and 117, and references to certain scams and cyberattacks. Filing 158 at 1–2. The Court will consider the challenged exhibits or groups of exhibits in turn.

a.   Exhibit 129

Exhibit 129 is a December 30, 2015, email string regarding "System Performance Follow-Up." *See* Filing 159-3. It relates to performance-related issues with GOP's network and computer system that occurred in 2015. Filing 166 at 5. GOP argues that this exhibit is irrelevant and potentially unfairly prejudicial, confusing, or misleading, because it involves issues with GOP's network three years before KLG's system was installed and before GOP's network was upgraded. Filing 166 at 5. In response, KLG asserts that GOP's argument assumes that the problems with GOP's network were fixed prior to the "go-live" date for KLG's software, but that fact is in dispute. Filing 188 at 10 (citing Filing 157 at 3 (final pretrial order identifying issues with GOP's network as controverted facts)). KLG argues that this exhibit is relevant to claims and defenses where KLG has evidence that GOP continued to have network problems after KLG left the site. Filing 188 at 10. KLG argues that the jury should be allowed to hear evidence that GOP's network had problems before, during, and after KLG left the site. Filing 188 at 11. In reply, GOP asserts that KLG has provided no evidence to support its position that the 2015 network issues were present in 2018 and beyond. Filing 214 at 7.

The Court concludes that until and unless KLG can demonstrate that there were problems with GOP's network at the time that KLG's software was installed, evidence of prior problems with GOP's network are irrelevant and potentially more prejudicial than probative, inviting the jurors to blur together unrelated network problems. *See Ridings*, 75 F.4th at 906 (explaining that unfair prejudice under Rule 403 invites a decision on an improper basis). Even if KLG makes such a showing of network problems at the time KLG's software was installed, KLG will still have to demonstrate to the Court's satisfaction outside the hearing of the jury that the network problems

14

in 2015 reflected in Exhibit 129 are the same or similar to the problems KLG claims it encountered in 2018, notwithstanding GOP's assertion that its network had been upgraded. Only then will KLG be allowed to present Exhibit 129 or other evidence of preexisting network problems to the jury.

This part of GOP's Motion in Limine is granted without prejudice to KLG's attempt to make these showings.

   b.   Exhibit 128

Exhibit 128 is an electronic version of the book *Networking for Dummies*. Filing 160-1. GOP contends that the document was produced as the result of electronic searches based on certain terms, but the only reference to it was as one of the documents reviewed by KLG's rebuttal expert, Doug Fagan, who mentions that it was among Mr. Acord's files and that it was a document that Mr. Fagan reviewed. Filing 166 at 7. GOP contends that there is no evidence this book was ever in Mr. Acord's files. Filing 166 at 7. GOP argues that to the extent KLG wants to elicit the inference that GOP personnel were "dummies" with respect to networking, this exhibit should be excluded as unfairly prejudicial, confusing, and misleading. Filing 166 at 7. KLG responds that the metadata for the document shows that Mr. Acord was the custodian and he also listed it under the subject "training stuff." Filing 188 at 14. KLG argues further that Mr. Acord provided the book to two GOP employees. Filing 188 at 14. KLG states that Exhibit 128 would be offered "to show this was a material relied upon by Mr. Acord for training purposes which speaks to Mr. Acord's qualifications to render expert testimony under Rule 702 and the weight to be given such testimony." Filing 188 at 15. In reply, GOP asserts the quoted statement from KLG's brief confirms KLG's intent to use the exhibit to suggest GOP personnel are "dummies" when it comes to networking. Filing 214 at 7.

The Court concludes that this exhibit is irrelevant and if somehow relevant the inference that KLG wants to elicit is unfairly prejudicial, inviting the jurors to consider GOP's personnel to

be "dummies" when it comes to networking without a proper evidentiary basis. *See Ridings*, 75 F.4th at 906. The fact that an "expert" may have a "generalist" guide in his or her library and may even recommend it to some IT personnel says nothing about the expert's qualifications beyond the expert's awareness of some "basics" of the field. Moreover, where the Court has indicated in its ruling on exclusion of experts that KLG has plenty of ammunition to attempt to impeach Mr. Acord, this single exhibit is cumulative. *See* Fed. R. Evid. 403 (permitting exclusion of cumulative evidence); *Lebeau*, 76 F.4th at 1104 ("Evidence is cumulative when it adds very little to the probative force of the other evidence and its contribution to the truth would be outweighed by its contribution to the length of the trial." (internal quotation marks and citation omitted)).

This part of GOP's Motion in Limine is granted.

### c.   Exhibit 120

GOP seeks to exclude Exhibit 120, which is a January 14, 2022, statement of work and quote for "the WebEx project for GOE," where GOE is Greater Omaha Express, a separate contract carrier trucking company affiliated with GOP. Filing 166 at 7. More specifically, the quote is for twenty-five new phones and conference room phones and services from WebEx for GOE. Filing 166 at 7. GOP argues this exhibit is irrelevant to this case and potentially unfairly prejudicial. Filing 166 at 7–8. KLG does not contest this part of GOP's Motion. Filing 188 at 16.

This part of GOP's Motion in Limine is granted.

### d.   Exhibit 100

GOP seeks to exclude Exhibit 100, which addresses "an update to your Apple device" that was scheduled to occur on May 3, 2021. Filing 162-2. GOP asserts that this Apple update has nothing to do with the case because the KLG system did not run on Apple software. Filing 166 at 8. GOP explains that the email was sent to "QC associates," that is, GOP's employees working in the quality control department, which has no relationship to QC Software, KLG's software design

contractor. Filing 166 at 8. Again, GOP argues that this exhibit is irrelevant to this case and potentially unfairly prejudicial. Filing 166 at 8–9. KLG responds that this exhibit is relevant to the security of GOP's network and that issues of network security may impact the overall functioning of the network. Filing 188 at 17. KLG also argues that there is minimal risk of juror confusion between "QC associates" and "QC Software." Filing 188 at 17. GOP's reply is that KLG's attempt to suggest that an Apple update that applied to a subset of GOP's employees' phones has something to do with the alleged network issues "is a bridge too far." Filing 214 at 8.

The Court finds this exhibit is so tenuously related to any relevant issue that the waste of time involved in presenting and explaining it is not warranted. *See* Fed. R. Evid. 403 (permitting exclusion of relevant evidence for waste of time); *see Orduno*, 932 F.3d at 719 (affirming exclusion of evidence that had the potential to waste time in minitrials over collateral) (citing Fed. R. Evid. 403)). This part of GOP's Motion in Limine is granted.

e.   Evidence Related to Scammers and Cyberattacks

GOP seeks exclusion of a number of exhibits related to an email scam in 2017, Exhibit 91, Filing 162-3; cyberattacks on other beef packers, Exhibit 100, Filing 162-4; possible malicious or unauthorized internal activity, Exhibit 113, Filing 162-5; and cyber insurance coverage and securing the network, Exhibit 117, Filing 162-6. GOP argues that there is no evidence that any scams or cyberattacks occurred when KLG's system was operating such that those events might have affected operational performance. Filing 166 at 9. GOP argues that KLG's attempt to raise a specter of such issues would mislead the jury and invite speculation. Filing 166 at 9. KLG responds that any evidence of network deficiencies as a result of cyberattacks and lack of adequate cybersecurity is relevant. Filing 188 at 18.

KLG might have a point that evidence of network deficiencies as a result of cyberattacks and lack of adequate cybersecurity might be relevant, but the challenged exhibits are not such

evidence where none relate to any cyber disruption of GOP's operating network. This line of defense based on these all-but-irrelevant exhibits is no more than a ploy to appeal to the jurors to engage in rank speculation that wastes time and will not be allowed. Fed. R. Evid. 403.

This part of GOP's Motion in Limine is granted.[4]

### 4.    The Adverse Effect of a Judgment on KLG

The Court now turns to the more general topics addressed in GOP's Motion in Limine. The first such topic is GOP's request for an order "[p]rohibiting any evidence, testimony, statement, inference, or argument as to what impact or adverse effect, if any, a judgment or verdict will have on Kuecker." Filing 158 at 2. GOP argues that evidence that KLG would be adversely impacted by a judgment is not relevant and is not a proper basis for the jury to decide the case. Filing 166 at 10. KLG responds that this part of GOP's Motion is premature because GOP has not specified the particular statements that it seeks to exclude. Filing 188 at 18. In reply, GOP asserts that it is properly moving to exclude the evidence before it is actually offered. Filing 214 at 10.

KLG has not identified any circumstances in which evidence or argument about the consequences of a judgment or verdict on a litigant would somehow be relevant to any issue in the case, and the Court cannot conceive of the circumstances in which such evidence or argument would be relevant. If somehow relevant, any such evidence or argument would plainly be unfairly prejudicial, as it would invite jurors to reach a verdict on an improper basis. *See Ridings*, 75 F.4th at 906. Notwithstanding the purported prematurity of the issue—which the Court finds unpersuasive—the Court concludes that this part of GOP's Motion in Limine is granted.

---

[4] GOP's opening brief includes argument to exclude "[e]vidence regarding Greater Omaha's network that predates the network upgrades it made." Filing 166 at 9–10. This topic is not listed in GOP's Motion, Filing 158, except as related to Exhibit 129, discussed above.

> 5.    *Other Lawsuits or Claims by GOP*

GOP seeks an order "[p]rohibiting any reference to any other lawsuits, insurance claims, or claims that Greater Omaha has made or filed." Filing 158 at 2. GOP asserts that this evidence should be excluded as generally irrelevant, and if somehow relevant, as likely to confuse or mislead the jury thus causing undue prejudice. Filing 166 at 10–11. KLG responds that a blanket exclusion is not appropriate, because the relevance and admissibility of such evidence depends upon the lawsuit or claim and the reason for which it is offered. Filing 188 at 19. If the Court grants the Motion, KLG argues that the Court should also bar GOP from presenting evidence or arguments based upon lawsuits or claims filed against GOP, such as attempts to impugn Mr. Fili's testimony based on the results of an arbitration concerning his termination by GOP. Filing 188 at 20. In reply, GOP asserts that Mr. Fili's lawsuit against GOP concerning his termination is relevant to show his possible bias, so evidence of that lawsuit should be excepted from any exclusion. Filing 214 at 10.

KLG has not identified any evidence of any lawsuits or insurance claims that GOP has filed that are relevant to this lawsuit. Because evidence of any lawsuits or insurance claims filed by GOP have not been shown to be relevant, the Court finds that if there such lawsuits or claim that are somehow relevant, they are likely to result in a minitrial that distracts from the issues of importance in the case. *See Orduno*, 932 F.3d at 719 (affirming exclusion of evidence that had the potential to waste time in minitrials over collateral issues, citing Fed. R. Evid. 403). Mr. Fili's litigation against GOP does not properly fall within the scope of the Motion in Limine, so the Court need not address whether that litigation has any impact on Mr. Fili's potential bias.

This part of GOP's Motion in Limine is granted.

> 6.    *Settlement Negotiations*

GOP seeks an order "[p]rohibiting any mention of or evidence that the parties did or did not engage in or enter into any settlement negotiations or agreements." Filing 158 at 2. GOP asserts

such evidence is inadmissible pursuant to Federal Rule of Evidence 408. Filing 166 at 11. KLG responds that evidence of settlement negotiations should be excluded only to the extent required by Rule 408. Filing 188 at 20. KLG suggests that broadly excluding "settlement negotiations" could be problematic where Mr. Kuecker traveled to Omaha in October of 2019 to attempt to resolve the dispute with GOP and to get paid for the balance due on the contract, but GOP has "insinuated" that KLG "left the project" without attempting to fix the problems. Filing 188 at 21. KLG argues that it should be allowed to explain that it attempted to resolve the conflict, which it asserts fits within the exceptions to exclusion in Rule 408(b). Filing 188 at 21. GOP asserts in reply that if KLG believes that it has evidence that falls within a Rule 408(b) exception, KLG should be required to alert the Court outside the presence of the jury so that the Court can resolve the issue. Filing 214 at 10–11.

"Federal rules prohibit the use of settlement documents at trial to prove liability or to impeach through inconsistent statements or contradiction." *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 344 (8th Cir. 2012) (citing Fed. R. Evid. 408(a)). "However, Rule 408 only prohibits admitting compromise evidence relating to a 'claim' that was disputed when the settlement negotiations or offer to compromise took place." *Weems v. Tyson Foods, Inc*., 665 F.3d 958, 965 (8th Cir. 2011). The Eighth Circuit Court of Appeals has recognized that "a dispute need not 'crystallize to the point of threatened litigation' for the 408 exclusion rule to apply." *Id.* (quoting *Affiliated Mfrs. v. Aluminum Co. of Am*., 56 F.3d 521, 527 (3d Cir. 1995)). Instead, "[a] dispute exists for Rule 408 purposes so long as there is 'an actual dispute or difference of opinion' regarding a party's liability for or the amount of the claim." *Id.* (quoting *Affiliated Mfrs.*, 56 F.3d at 527). Thus, Mr. Kuecker's purported attempt to resolve the problems between the parties before litigation was filed falls within the scope of Rule 408.

Under Rule 408(b), "[e]vidence relating to a compromise offer is admissible if 'offered for "another purpose," *i.e.,* for a purpose other than to prove or disprove the validity of the claims that the offers were meant to settle.'" *Id.* at 966 (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989)). The Court agrees with GOP that KLG as the party asserting a Rule 408(b) exception will be required to seek leave outside the jury's presence to offer evidence potentially falling within an exception.

This part of GOP's Motion in Limine is granted.

7.      *"Hitting the Big One"*

As its penultimate request, GOP seeks an order "[p]rohibiting any evidence, testimony, statement, or insinuation that Greater Omaha and/or their counsel filed this counterclaim for the purpose of 'hitting the big one' or any similar *ad hominem* attacks on the motives of Greater Omaha or its counsel." Filing 158 at 2. In its brief, GOP argues that references to the motivation of GOP or its counsel in litigating this matter should be prohibited because argument about motivation for litigation is speculative, irrelevant, and improper. Filing 166 at 11. KLG responds that such a categorical exclusion is improper. Filing 188 at 21. KLG also argues that exclusion of evidence of motivation requires evaluation of the specific evidence offered. Filing 188 at 22. Thus, KLG argues that this part of GOP's Motion is overbroad and premature. Filing 188 at 22. GOP responds that KLG has not proposed any evidence that it intends to offer on this subject that is relevant in any respect, so the Court should not "delay the inevitable" and grant its Motion. Filing 214 at 11.

Again, KLG has not identified any evidence of GOP's or its counsel's motivation for bringing this lawsuit, let alone any evidence suggesting an improper motive for doing so. Because no evidence of improper motive has been identified as potentially relevant, the Court finds that if there is some evidence it is likely to result in a minitrial that distracts from the issues of importance

in the case and is therefore excludable. *See* *Orduno*, 932 F.3d at 719 (affirming exclusion of evidence that had the potential to waste time in minitrials over collateral issues, citing Fed. R. Evid. 403).

This part of GOP's Motion in Limine is granted without prejudice to KLG attempting to show outside the presence of the jury that there is evidence of the motives of GOP or its counsel that can overcome a Rule 403 bar.

8.    *Reference to GOP's Motion in Limine*

Finally, GOP requests an order "[p]rohibiting reference to the fact that Greater Omaha has filed a Motion in Limine to exclude the foregoing matters from evidence at trial." Filing 158 at 2. GOP argues that because counsel has a right and sometimes a duty to object to evidence that may be inadmissible, it is improper for KLG to make any reference or argument regarding GOP seeking to exclude evidence addressed in GOP's Motion. Filing 166 at 12 (citing 8th Cir. MCivJI 1.04). KLG quibbles with GOP's citation of a jury instruction in the context of a motion in limine. Filing 188 at 22–23. KLG also argues that, while it may not be proper to reference a motion, a party is not precluded from referencing the substance of a ruling on a motion in limine. Filing 188 at 23. Thus, KLG argues that this part of GOP's Motion in Limine should be denied. Filing 188 at 23. In reply, GOP agrees that KLG can object to evidence or testimony on the basis that it is precluded by a prior ruling of the Court, but that KLG cannot reference GOP's Motion in doing so. Filing 214 at 11.

This part of GOP's Motion in Limine is granted. The parties apparently agree—and the Court finds—that it is improper to refer to an opposing party's motion in limine because doing so could be misleading or confusing or could bias the jury. Fed. R. Evid. 403. The Court also agrees with the parties that objections can be made with reference to the Court's prior evidentiary rulings without referring to the underlying motions in limine.

## C.  KLG's Motions in Limine

Also before the Court is KLG's Motions in Limine seeking exclusion of twenty-nine categories of evidence. Filing 168. The Court will consider these categories or groups of categories in turn.

### 1.   *The Motions Based on the Parol Evidence Rule*

KLG relies on the parol evidence rule and Federal Rules of Evidence 401 and 403 as the basis for exclusion of its first four categories of evidence. The first category is "[a]ll alleged oral or written representations Kuecker made to [GOP] outside of the signed written contracts at issue in this litigation," and includes evidence that KLG purportedly promised GOP "the same" system that KLG provided to National Beef. Filing 168 at 1. The second category is "[e]vidence concerning internal Kuecker correspondence concerning the negotiation of the parties' agreements." Filing 168 at 1. This Motion involves Exhibit 526, which is an email by Mr. Danler noting problems that he believed might be posed by a draft of the parties' addendum about GOP relying on KLG's ROI analysis to justify the cost of the project. Filing 169 at 5–6. The third category is "[e]vidence regarding the process of Kuecker's selection of QC Software as a software contractor for the System (including any testimony alleging QC Software was 'inexperienced' or had never performed work for a meat packing plant) and of price negotiations between Kuecker and QC Software for QC's work on the system." Filing 168 at 1. KLG asserts GOP intends to use this evidence to show that KLG and QC Software engaged in some kind of conspiracy and that KLG did not deliver "the same" system that it installed at National Beef as KLG had promised. Filing 169 at 7–8. The fourth category is "[a]ll prior drafts of QC Software and Kuecker's proposals for work on the project other than the final proposal QC Software and Kuecker entered into." Filing 168 at 2.

As to each of these categories of evidence, KLG's initial argument was that GOP should be barred from offering the evidence as an improper attempt to vary the unambiguous terms of the parties' written contracts, each of which has an integration clause. Filing 169 at 1–2, 6–7, 8, 10. GOP argues that these items of evidence are relevant to explain ambiguous promises under the contract such as the meaning of "box optimization" as well as a separate promise for "the same" system provided to National Beef, Filing 186 at 3–6; to show that KLG promised $6.24 million in annual ROI, Filing 186 at 7; and to show that KLG did not deliver the system it promised or perform the agreements in a workmanlike manner as well as why it did not do so, Filing 186 at 9–10. In its reply, KLG argues that the Court has mooted the issue of what the parties' agreements promised in the Court's ruling on motions for summary judgment. Filing 216 at 1–2.

The Nebraska Supreme Court has explained the parol evidence rule as follows:

> The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement that alters, varies, or contradicts the terms of a written agreement. The parol evidence rule is designed to preserve the integrity and certainty of written documents against disputes arising from fraudulent claims or faulty recollections of the parties' intent as expressed in the final writing. "Extrinsic evidence is not permitted to explain the terms of a contract that is not ambiguous." A determination as to whether an ambiguity exists is made as a matter of law and on an objective basis, not by the subjective contentions of the parties.

*In re Claims Against Pierce Elevator*, 868 N.W.2d 781, 801–02 (Neb. 2015) (citations omitted).

GOP's contentions that extracontractual representations and evidence of KLG's and QC Software's negotiations are relevant to determine ambiguous contractual language are now moot in light of the Court's summary judgment rulings. The Court has already determined as a matter of law that the parties' agreements unambiguously required "automated box optimization," as the Court construed that term. Thus, an alleged extracontractual promise that KLG would provide GOP with "the same" system that KLG provided to National Beef is now irrelevant and would impermissibly vary or contradict the terms of the written agreement. *Pierce Elevator*, 868 N.W.2d

24

at 801–02. The Court also determined as a matter of law that the parties' agreements unambiguously did not promise GOP any ROI. Thus, evidence of any alleged extracontractual promise for ROI would be improperly offered to vary or contradict the unambiguous terms of the parties' written agreements. *Id.* Where an extracontractual promise to deliver "the same" system that KLG provided to National Beef violates the parol evidence rule by injecting a new and different promise into the contract, evidence that KLG used a software vendor different from the one it used for National Beef is also subject to exclusion. The Court has also determined as a matter of law that KLG did not provide "automated box optimization" so that there is no need to examine whether the choice of QC Software may have impacted that breach of the KLG–GOP contracts and the warranty to perform in a workmanlike manner. Indeed, as KLG observes, even the final agreement between KLG and QC Software has only minimal relevance because it is not an agreement between GOP and KLG. *See* Filing 169 at 10.

The Court concludes further that the agreement between KLG and QC Software sheds no light on whether KLG substantially performed KLG's agreements with GOP. The substantial performance issue instead turns on whether the failure to provide automated box optimization was only a minor deviation from the parties' agreements. *City of Sidney*, 917 N.W.2d at 845 ("To establish substantial performance under a contract, any deviations from the contract must be relatively minor and unimportant."). Where the final agreement between KLG and QC Software has only minimal relevance, that relevance is outweighed by the unfair prejudice of inviting a decision on an improper basis, confusion of the jury, and waste of time. Fed. R. Evid. 403; *Lebeau*, 76 F.4th at 1105; *Orduno*, 932 F.3d at 719.

KLG's Motions as to the first four categories of evidence are granted.

2.      *Use of the Terms "Automatic" and "Automated" Box Optimization*

The fifth category of evidence that KLG seeks to exclude is "GOP['s] counsel's use of the term[s] 'automatic' and 'automated' box optimization." Filing 168 at 2. KLG asserts that this evidence should be excluded pursuant to Federal Rules of Evidence 401 and 403. Filing 168 at 2.

In its opening brief, KLG asserted, "One of the biggest issues in this case is whether Kuecker provided GOP 'box optimization' functionality with the System." Filing 169 at 11. KLG reiterated its position at summary judgment that there was no promise of "automatic" or "automated" box optimization in the parties' agreements or the FSD. Filing 169 at 11. Thus, KLG argued that use of these terms would confuse the jury into believing that KLG was obligated to provide "automatic" or "automated" box optimization when the contract only required "box optimization." Filing 169 at 12. Like KLG's argument, GOP's response was consistent with its summary judgment position that "automatic" box optimization was required under the contracts and the FSD. Filing 186 at 4–6. In its reply, KLG acknowledges that at summary judgment the Court construed the parties' agreements to require "automatic" box optimization functionality. Filing 215 at 2. Nevertheless, KLG argues that the issue of what box optimization functionality it provided is relevant to show KLG's substantial performance in support of its breach of contract claim. Filing 215 at 2–3. KLG asserts that GOP's use of "automatic box optimization" or "automated box optimization" would confuse the jurors into believing those are the only possible types of box optimization. Filing 215 at 3.

Notably, KLG asserts,

The Court has not ruled, as a general proposition, that "box optimization" per se and in all instances must be "automatic" or "automated." (Filing No. 184, generally.) Rather, the Court narrowly found that the particular contracts between the parties called for "automated box optimization with the opportunity for the order planner to intervene to modify the order." (Filing No.184 at 22.)

Filing 215 at 2–3. KLG also asserts,

26

> GOP also has not provided any competent evidence or expert testimony that, as a general proposition, box optimization must be fully automated, as opposed to a system that provides a great deal of automation but requires an order planner to make the final optimization decision.

Filing 215 at 3. The Court concludes that these assertions—while not necessarily wrong—miss the point. Thus, it is these assertions by KLG, not GOP's use of "automatic" or "automated" box optimization, that would be more prejudicial, confusing, and misleading than probative.

The Court summarized its construction of "box optimization" within the meaning of the parties' agreements as follows:

> In short—as a matter of "reasonable construction," construction of the contract "as a whole," and giving effect to every part of the contract, meaning the 5/3/17 Contract and the FSD, as to each consideration, *see Brush & Co.*, 991 N.W.2d at 301–02—the unambiguous meaning of the contract term "box optimization" is automated box optimization with the opportunity for the order planner to intervene to modify the order but intervention by the order planner is not required. This is the plain and ordinary meaning of the promised box optimization as an ordinary or reasonable person would understand it. *Cmty. First Bank*, 969 N.W.2d at 674. The parties are bound by the term as construed even if the intent of one of them—KLG—might have been different from what is expressed in the FSD. *Fleming*, 792 N.W.2d at 880.

Filing 184 at 22. Thus, the Court expressly held that "box optimization" within the meaning of the parties' agreements and the FSD is "automated box optimization with the opportunity for the order planner to intervene to modify the order but intervention by the order planner is not required."

Filing 184 at 22.

That is the only context in which the meaning of "box optimization" matters. What that term might mean in other contexts—*i.e.*, more generally, per se, or in some other instances—is irrelevant.

Put another way, "box optimization" in all instances under the parties' agreements means "automatic" or "automated" box optimization; "box optimization" within the meaning of the parties' agreement and the FSD must only permit but not require intervention by the order planner.

27

In light of this construction, "box optimization" within the meaning of the parties' agreements must be fully automated, as opposed to a system that provides a great deal of automation but requires an order planner to make the final optimization decision and as opposed to a system that involves no automation at all. What "box optimization" might mean in other contexts is irrelevant because provision of "box optimization" was in the context of the agreement and the FSD not in some more general, generic, or purely hypothetical context. Hence, whether or not GOP provided competent evidence or expert testimony that "box optimization" necessarily—that is, in all contexts—means "automated box optimization" is also irrelevant.

A further implication of this interpretation is that the "substantial performance" issue is not whether KLG substantially performed the "box optimization" requirement of the contract; KLG did not provide "box optimization" within the meaning of the contract. Instead, the "substantial performance" issue is whether KLG substantially performed the parties' agreements despite failing to provide the required "box optimization." To show "substantial performance" of the agreements, KLG must demonstrate that failure to provide "box optimization" as construed by the Court was only a relatively minor deviation from the parties' agreements. *City of Sidney*, 917 N.W.2d at 845 ("To establish substantial performance under a contract, any deviations from the contract must be relatively minor and unimportant.").

This part of KLG's Motions in Limine is denied.

### 3.    *Exclusion of Items of Damages*

The next several categories of evidence that KLG challenges in its Motions in Limine—categories six through ten—relate to items of damages. KLG seeks exclusion of these categories of evidence pursuant to Federal Rules of Evidence 401 and 403, and in some cases, also based on lack of foundation and inadequate disclosure of damages theories and supporting evidence. Filing 168 at 2. GOP has two broad responses to exclusion of these categories of evidence, which the

Court will consider first. The Court will then consider the separate categories of evidence in turn, to the extent necessary.

      a.   Improper Motions in Limine

GOP contends that KLG's nominal "motions in limine" related to damages are in fact improper motions for summary judgment. Filing 186 at 17. GOP argues that by attempting to exclude all evidence of damages, which is an essential element of GOP's counterclaims, KLG actually seeks a dispositive determination that there was no breach of contract. Filing 186 at 17. GOP argues that such a dispositive motion is untimely and should be denied. Filing 186 at 17. KLG asserts that it is not seeking wholesale dismissal of GOP's counterclaims, so that its Motions related to damages are properly motions in limine to exclude evidence on certain items of damages. Filing 215 at 10–11.

The Court finds that the premise of this prong of GOP's response is flawed. Even though damages are an element of GOP's counterclaims and even if the Court were to grant all five of these motions in their entirety, the result would not bar GOP's counterclaims. Instead, the result would preclude only certain items of damages. Notably, none of these Motions in Limine seeks exclusion of evidence of GOP's damages for replacement software.

      b.   Exclusion Under Rule 403 or Rule 37

GOP also asserts broadly that exclusion of evidence of these items of damages pursuant to Federal Rule of Evidence 403 is not appropriate. Filing 186 at 15. GOP argues that there is nothing unfairly prejudicial about this evidence because it does not tend to suggest a decision on an improper basis. Filing 186 at 15. GOP asserts that exclusion also is not appropriate under Federal Rule of Civil Procedure 37 because GOP's theories of damages and supporting evidence were properly disclosed. Filing 186 at 16. Even if the theories were not properly disclosed, GOP argues that the lack of disclosure was harmless where GOP's theories of damages do not come as a

surprise to KLG and KLG has had adequate opportunity to explore those damages theories. Filing 186 at 16.

The Court notes that Mr. Airoldi's non-retained expert opinions are part—and in some cases may be all—of the evidence GOP offers on outside storage expenses (sixth category), cost of capital (seventh category), downtime damages (ninth category), and lack of box optimization (tenth category). In the companion ruling to this one on the parties' challenges to expert opinions, the Court has already determined that Mr. Airoldi's expert disclosure was improper. Consequently, the Court barred Mr. Airoldi from offering any expert opinions at all. Mr. Airoldi will be allowed to offer fact testimony based on his personal involvement in relevant events in GOP's case-in-chief, if he actually had any such involvement. He will also be allowed to offer lay opinions if he can do so without violating Federal Rule of Evidence 701. The Court reiterates these limitations in response to these parts of KLG's Motions in Limine.

Consequently, unless GOP can demonstrate through an adequately disclosed witness other than Mr. Airoldi with personal knowledge and adequately disclosed documentary evidence, the Court will not admit "[t]estimony regarding GOP's outside storage costs," Filing 168 at 2 (sixth category); "[e]vidence of GOP's alleged cost of capital damages," Filing 168 at 2 (seventh category); or "[e]vidence of GOP's alleged downtime damages," Filing 168 at 2 (ninth category). The Court is simply not aware at this time whether there is any such witness or documentary evidence. Also, the Court will not admit "Mr. Airoldi's testimony in connection with GOP's damages for the System's alleged lack of box optimization," Filing 168 at 2 (tenth category), for the same reasons that the Court previously excluded all of Mr. Airoldi's expert opinions. Neither will the Court submit any of these four items of damages to the jury in the absence of competent and properly disclosed evidence.

c. The Cost of the Building

The eighth category of evidence related to damages presents a somewhat different question because it does not appear to rely solely—and perhaps does not rely at all—on Mr. Airoldi's excluded opinions. That category is inclusion of the cost of the building that houses the ABS System in the cost of the "System" as an item of GOP's damages. Filing 168 at 2. KLG argues that GOP has included in its costs of the "System" an "extra" $19 million as the cost of the building in which KLG's system was housed. Filing 169 at 18. However, KLG argues that it was not involved in the construction of the building, so the cost of the building is irrelevant to the claims in this case. Filing 169 at 18. Thus, KLG accuses GOP of attempting to inflate the alleged cost of the ABS System to prejudice KLG and confuse the jury. Filing 169 at 18.

GOP responds that the cost of the building is an appropriate item of damages because GOP had to build the building to house the equipment that KLG provided under the contracts and the building was "useless" without a functioning ABS system, which KLG failed to install. Filing 186 at 14. GOP also asserts that the cost of the building is appropriate as damages where KLG promised that box optimization would result in $6.24 million in annual ROI and the building was a "necessary condition precedent" for KLG to perform its promises. Filing 186 at 14.

In reply, KLG reiterates that there is no dispute that KLG's system did not include the building that housed the system. Filing 215 at 13. KLG also argues that the Court has already held that KLG did not promise a ROI. Filing 215 at 13.

GOP has not pointed to any provision of the parties' agreements or the FSD that required GOP to build a building to house the ABS System as a condition of KLG's providing the ABS System. Moreover, the record evidence demonstrates beyond dispute that the building was not "useless" without a functioning ABS System, where GOP did use and continues to use the building with KLG's hardware system and replacement software from Cirrus Tech. Awarding the costs of

31

the building in such circumstances would be a gross windfall for GOP based on a veiled attempt

to recover ROI that was never promised. This is so, because GOP has not directed the Court to any

evidence that KLG's breach of a contract to install an ABS System has any causal relationship to

the construction of a "useless" building. *See, e.g., George Clift Enterprises, Inc. v. Oshkosh

Feedyard Corp.*, 947 N.W.2d 510, 536 (Neb. 2020) ("It is a basic concept that in any damage

action for breach of contract, the claimant must prove that the breach of contract complained of

was the proximate cause of the alleged damages. There must be a causal relationship between the

damages asserted and the breach relied upon. Proof which leaves this issue in the realm of

speculation and conjecture is insufficient to support a judgment." (citations omitted)).

KLG's Motions in Limine are granted as to categories six through ten of the challenged

evidence.

### 4.    Henry Davis's Testimony about the System

Next, as the eleventh category of challenged evidence, KLG seeks to exclude "Henry

Davis's testimony that the System did not have box optimization." Filing 168 at 2. KLG asserts

this testimony should be excluded pursuant to Federal Rules of Evidence 401, 403, and 602, as

well as for lack of foundation and as an undisclosed expert opinion. Filing 168 at 2.

In essence, KLG asserts that Mr. Davis lacks firsthand observation for an opinion that

KLG's ABS System did not provide box optimization, which he defined as automated box

optimization, because he opined that manual box optimization was impossible. Filing 169 at 22–

24. GOP responds that "box optimization" here (1) unambiguously means an automated process,

or (2) is ambiguous and extrinsic evidence such as Mr. Davis's understanding of the term is proper.

Filing 186 at 18. GOP also asserts that Mr. Davis has sufficient basis for a lay opinion. Filing 186

at 19. In reply, KLG asserts that GOP has not demonstrated adequate foundation for Mr. Davis's

deposition testimony. Filing 186 at 14.

32

The Court concludes that Mr. Davis's opinions about what is or is not "box optimization" are now irrelevant, where the Court has construed the unambiguous meaning of the term in the context of the parties' agreements and the FSD. Any testimony by Mr. Davis about his belief as to the meaning of the term is thus barred by the parol evidence rule as it could vary or contradict the unambiguous meaning of the term or at the very least could confuse jurors as to the controlling construction, which is the Court's.

This category of evidence will be excluded, albeit not on the grounds asserted by KLG.

### 5.  Henry Davis's and GOP's Works and Reputation

The twelfth category of evidence that KLG seeks to exclude is evidence of Mr. Davis's and GOP's "works in the community and reputation in the community." Filing 169 at 2. KLG asserts that this evidence should be excluded pursuant to Federal Rules of Evidence 401, 403, and 404. Filing 169 at 2.

KLG argues that evidence of Mr. Davis's and GOP's charitable works and reputation in the community is not relevant, if relevant its relevance is outweighed by Rule 403 factors, and it is improper character evidence under Rule 404. Filing 169 at 24–25. GOP asserts that this part of KLG's Motions lacks specificity and is essentially repetitive of well-established rules of evidence. Filing 186 at 28. KLG responds that it has identified the evidence in question with sufficient specificity. Filing 215 at 19–20.

The admissibility of this category of evidence is easily resolved. It is difficult to see what if any relevance it has to any issue in the case. Fed. R. Evid. 402 (only relevant evidence is admissible). Consequently, any relevance is heavily outweighed by the possibility of a decision based on sympathy or other improper basis, confusion of the issues, and waste of time. Fed. R. Evid. 403; *Ridings*, 75 F.4th at 906; *Walker*, 68 F.4th at 392. This twelfth part of KLG's Motions Limine is granted.

6.      *FlexSim Modeling Services*

The thirteenth category of evidence that KLG seeks to exclude is "[e]vidence concerning modeling services from Flexsim." Filing 168 at 3. KLG asserts that such evidence should be excluded pursuant to Federal Rules of Evidence 401, 403, and 602, and for lack of foundation. Filing 168 at 3. KLG identifies the exhibits in question as Exhibits 528–530, 532–537, and 610. Filing 169 at 25.

KLG asserts that GOP takes the position that KLG's retention of FlexSim to run simulations of systems is evidence that KLG "guaranteed" GOP a $6.24 million per year ROI from the system's box optimization functionality. Filing 169 at 25. KLG argues that such evidence is extrinsic evidence offered for the improper purpose of varying the unambiguous terms of the parties' agreement, which did not include a guaranteed ROI. Filing 169 at 25. GOP responds that this evidence is admissible to rebut KLG's position that there was no guaranteed ROI where FlexSim is a company that specializes in modeling large, complex automation systems. Filing 186 at 20. In reply, KLG argues that GOP ignores KLG's argument based on the parol evidence rule. Filing 215 at 14. KLG also points out that the Court mooted this issue when it held that there was no promise of ROI in the parties' agreements. Filing 215 at 14–15.

The Court agrees that this issue is moot in light of the Court's ruling at summary judgment that KLG unambiguously did not guarantee a ROI. Furthermore, GOP's attempt to use the FlexSim simulations to try to prove otherwise would be an improper attempt to alter or vary the terms of an unambiguous agreement in violation of the parol evidence rule. *Pierce Elevator*, 868 N.W.2d at 801–02.

This part of KLG's Motions in Limine is granted, and Exhibits 528–530, 532–537, and 610 will be excluded at trial.

### 7.     Testimony of Non-Retained Expert Kris Buckingham

Next, as category fourteen, KLG seeks an order excluding "[t]he testimony of GOP non-retained expert Kris Buckingham." Filing 168 at 3. KLG asserts that this motion is based on failure to schedule an expert deposition. Filing 168 at 3.

KLG argues that GOP disclosed Kris Buckingham from ConvergeOne, a non-party, as a non-retained expert as to opinions on network assessment reports that ConvergeOne conducted for GOP. Filing 169 at 26. KLG argues that GOP failed, despite repeated requests over a period of months, either to make Mr. Buckingham available for deposition or to inform KLG of its position on whether KLG could contact Mr. Buckingham directly. Filing 169 at 27. GOP's response is that Mr. Buckingham is not employed by GOP and that KLG never noticed his deposition or subpoenaed him for deposition. Filing 186 at 21–22. In reply, KLG accuses GOP of attempting to shift the blame to KLG for not subpoenaing Mr. Buckingham instead of seeking to arrange his deposition through counsel, which KLG asserts is the normal course to depose an opposing party's expert. Filing 215 at 15.

The Court observes that it is the normal practice in this district to attempt to arrange depositions of an opposing party's experts through the opposing party's counsel. Conspicuous by its absence from GOP's response is any denial that KLG made repeated requests of GOP to make Mr. Buckingham available for deposition or to inform KLG of GOP's position on KLG contacting Mr. Buckingham directly. Instead of responding to opposing counsel's inquiries as the Court expects counsel in this district to do, it appears that GOP decided to stonewall KLG by greeting KLG's inquiries with silence. Courtesy and professionalism would dictate that—at the very least—GOP would notify KLG in response to KLG's inquiries that it was GOP's position that GOP need not make available for deposition a non-retained expert who was employed by a third party.

At the same time, when KLG was faced with GOP's lack of cooperation, it behooved KLG to notice and subpoena Mr. Buckingham for deposition or otherwise seek to compel his deposition. KLG did not take these obvious remedial steps. Also, KLG has not asserted that the non-retained expert disclosure for Mr. Buckingham was deficient nor has KLG asserted that it is otherwise prejudiced by the failure to depose Mr. Buckingham prior to trial.

Under the circumstances, the Court finds that GOP's failure to respond to inquiries about deposing Mr. Buckingham—while not acceptable to the Court—is not a sufficient ground to exclude Mr. Buckingham's trial testimony. This part of KLG's Motions in Limine is denied.

### 8.    Network Assessments by Third Parties

The fifteenth category of evidence that KLG seeks to exclude is "[n]etwork assessments conducted by third parties." Filing 168 at 3. KLG argues that this evidence is excludable pursuant to Federal Rule of Evidence 403, for lack of foundation, and for failure to disclose an expert to opine on the reports. Filing 168 at 3. In its opening brief, KLG clarifies that the reports at issue are Exhibits 501, 502, and 505 prepared by ConvergeOne and Exhibit 503 prepared by Core IT. Filing 169 at 27.

KLG argues that because Kris Buckingham's testimony should be excluded, he cannot testify as to the contents of the ConvergeOne reports. Filing 169 at 27. KLG argues that GOP did not designate any expert from Core IT. Filing 169 at 27. KLG reiterates its assertion in a separate motion that Mr. Acord is not qualified to provide expert opinions based on reports of third parties. Filing 169 at 27. In response, GOP argues that Mr. Buckingham's testimony should not be excluded, which would moot part of KLG's argument as to this evidence. Filing 186 at 22. GOP also argues that even if Mr. Buckingham cannot testify, this part of KLG's Motions must be denied because Mr. Acord can testify on the topic, as briefed in a separate motion. Filing 186 at 22. GOP makes no argument concerning a report from Core IT. *See generally* Filing 186. In reply, KLG

argues that Mr. Acord is not qualified to testify as to these reports if Mr. Buckingham's testimony is excluded. Filing 215 at 15.

The Court notes first that it has not excluded Mr. Buckingham's testimony, so that the primary basis for this part of KLG's Motions in Limine is unavailing. Because Mr. Buckingham can testify as to the ConvergeOne reports, they will not be excluded. Whether or not GOP has a competent witness to testify as to the Core IT report remains to be seen. However, the Court reiterates its conclusion in its companion ruling on motions to exclude experts that, as a non-retained expert, Mr. Acord cannot testify based on third-party reports. *See* Filing 221 at 34–35.

Therefore, this fifteenth part of KLG's Motions in Limine is denied without prejudice to timely objection to the Core IT report in Exhibit 503.

### 9. *Drafting of the FSD*

As its sixteenth category, KLG seeks exclusion of "[a]ssertions by GOP's counsel that Kuecker drafted the FSD." Filing 168 at 3. KLG asserts that these arguments should be excluded pursuant to Federal Rules of Evidence 401 and 403. Filing 168 at 3.

KLG argues that in summary judgment briefing, GOP asserted without citation that KLG not GOP drafted the System's Functional Specification Document (FSD). Filing 169 at 28. KLG argues that this assertion is contrary to the recitation in the FSD itself (signed by both parties) that the FSD resulted from joint working sessions. Filing 169 at 28. Furthermore, KLG argues that where both parties are sophisticated business entities even if KLG drafted the FSD it would not be construed against KLG. Filing 169 at 28. KLG argues that what matters is what functionality is provided in the document and whether that functionality set out in the FSD was actually provided to GOP in the System, while who drafted the FSD has only minimal relevance outweighed by other Rule 403 factors. Filing 169 at 28. GOP responds that the FSD is not a contract, so the contract principles that KLG cites do not apply. Filing 186 at 22–23. GOP reiterates its argument that the

37

FSD is a document created by KLG more than a year after the contracts were signed, the contracts make no mention of the FSD, and the FSD is not an amendment of the contracts. Filing 186 at 23. GOP also asserts that the document modification notes on the FSD show that the FSD was drafted and modified by KLG employees or contractors. Filing 186 at 23. In reply, KLG continues to dispute GOP's contention that KLG drafted the FSD based on the recitation at the beginning of the document. Filing 215 at 15. KLG also reiterates its contention that where the document is an agreement between two commercially sophisticated parties, who "drafted" the document is irrelevant. Filing 215 at 16.

It appears to the Court that GOP wants things both ways: GOP contends that "contract principles" do not apply to the FSD, but then GOP apparently wants the FSD construed against KLG as the drafter, which is a "contract principle." *See, e.g.*, *DH-1, LLC v. City of Falls City*, 938 N.W.2d 319, 326 (Neb. 2020) ("Where a contract is found to be ambiguous, it is construed against the drafter."). As the summary of the arguments above suggests, a dispute about who drafted the FSD is likely to devolve into a time-wasting minitrial warranting exclusion pursuant to Federal Rule of Evidence 403. *See Orduno*, 932 F.3d at 719 (citing Fed. R. Evid. 403). The Court concludes that the language of the introduction to the FSD, Filing 127 at 160, and the "FSD SIGN OFF," Filing 127 at 298, speak for themselves concerning both parties' involvement in the creation of the document. *See also* Filing 184 at 8–9 (quoting the language of these provisions). Also, it is undisputed that GOP and KLG representatives did meet over a period of months with the purpose of drafting an FSD. *See* Filing 184 at 8 (citing Filing 124 at 50 (Additional Fact ¶ 31); Filing 137 at 6 (Response ¶ 31)). It is also undisputed that GOP signed off on the FSD prior to the installation of the software developed by KLG's subcontractor, QC Software, and that GOP personnel

internally reviewed the FSD prior to execution. Filing 184 at 9 (citing Filing 124 at 51 (¶ 35);
Filing 137 at 7 (¶ 35); Filing 124 at 50 (¶ 34); Filing 137 at 6 (Response ¶ 34)).

The sixteenth part of KLG's Motions in Limine is granted to the extent that the parties will
not be allowed to offer evidence or argument about the drafting of the FSD beyond quotation of
the Introduction and "SIGN OFF" cited above and the undisputed facts as set out in the Court's
summary judgment ruling, Filing 184 at 8–9.

### 10.    Testimony of Cirrus Tech Witnesses about the KeyChain Software

The seventeenth category of evidence that KLG seeks to exclude is "[t]estimony from
Cirrus Tech witnesses concerning the functionality of the KeyChain software installed with the
System Kuecker installed." Filing 168 at 3. KLG asserts that GOP has listed Chris Fonke and
Ioannis Pelentrides from Cirrus Tech and Adrian Sanabria-Diaz from Tiempo as witnesses who
will testify regarding deficiencies in the KLG software. Filing 169 at 29.

KLG argues that such testimony would likely constitute undisclosed expert testimony.
Filing 169 at 29. KLG argues that there is also nothing to indicate that these witnesses have
reviewed the FSD in which GOP acknowledged that KLG's system meets GOP's business
requirements. Filing 169 at 29. Consequently, KLG argues that these witnesses have no basis for
assessing whether the System was built and functioned the way that the parties intended. Filing
169 at 30. Finally, KLG argues that any probative value of this testimony is outweighed by Rule
403 factors where KLG is unfairly prejudiced by the lack of expert disclosures and the risk of
confusing the jury about whether these witnesses conducted a detailed analysis of both KLG's
software and the entire process of design development. Filing 169 at 30–31. GOP argues that this
motion is best left for determination at trial where KLG admits it does not know what the testimony
in question will be. Filing 186 at 24. GOP also argues that Fonke, Pelentrides, and Sanabria-Diaz
have the personal knowledge necessary to testify as lay witnesses, so that their testimony is not

inadmissible on all potential grounds. Filing 186 at 24. Thus, GOP asserts that this motion is speculative, overbroad, and repetitive of well-established evidentiary rules for lay testimony. Filing 186 at 24. In reply, KLG contends that GOP has not addressed the specific grounds in KLG's motion but simply asks the Court to take a wait-and-see approach. Filing 215 at 16.

The Court declines KLG's invitation to speculate about whether these witnesses can testify to deficiencies in KLG's software as lay witnesses. The Court also notes that the Court has already determined that KLG's software did not fulfill the contractual requirement for "box optimization," meaning "automated box optimization" as construed by the Court. Thus, this issue appears to the Court to be essential moot. This part of KLG's Motions in Limine is denied without prejudice to timely objections at trial, if improper or irrelevant testimony is offered by these witnesses.

### 11.   *The Hypothetical about ROI*

The eighteenth category of evidence that KLG seeks to exclude is "[t]he hypothetical scenario GOP invented in an attempt to illustrate that [GOP] could have obtained the $6.24 million return on investment it alleges Kuecker guaranteed to it if Kuecker had delivered box optimization." Filing 168 at 3. The Court concludes that this issue can be resolved without summarizing the parties' arguments. The Court has granted summary judgment in KLG's favor on GOP's claim for ROI damages, so this part of KLG's Motions is denied as moot. Neither party will be allowed to offer expert or other testimony either supporting or rebutting a promise of $6.24 million annually from box optimization or about any ROI damages.

### 12.   *The Hypothetical about Manual Box Optimization*

The nineteenth category of evidence that KLG seeks to exclude is "GOP's hypothetical argument that 'manual' box optimization is impossible." Filing 168 at 3. Again, the Court concludes that this issue can be resolved without summarizing the parties' arguments. Whether or not "manual" box optimization is possible or impossible is irrelevant to this case, where the Court

40

has concluded that the parties' contract required "automated box optimization" as construed by the Court. Presentation of any hypothetical about "manual" box optimization would simply waste time and confuse the issues. Fed. R. Evid. 403. This part of KLG's Motions is denied as moot. Neither party will be allowed to offer evidence or argument that "manual" box optimization is either impossible or possible.

13.   *Remaining Parts of the Motions Seek Enforcement of Well-Settled Rules*

The Court concludes that the remaining parts of KLG's Motions are the kind that the Court finds frustrating because they simply ask the Court to follow well-established evidentiary and procedural rules. These parts of KLG's motions can be resolved relatively briefly.

Pleadings (category twenty) are not admissible evidence, and even if pleadings might be admissible, admitting them in their entirety is inappropriate under Rule 403 because of the likelihood of confusion of the issues where less than all claims and contentions in a pleading ultimately are allowed to go to trial. Fed. R. Evid. 403; *Walker*, 68 F.4th at 392. On the other hand, statements in pleadings may be used as admissions or for impeachment. Thus, KLG's Motions are granted in part and denied in part as to category twenty.

The validity and/or enforceability of the contracts and the FSD (category twenty-one) have not been identified as disputed issues in the Order on Final Pretrial Conference, *see generally* Filing 157, nor have any subsequent rulings or motions implied such disputes exist. Thus, validity and enforceability of the contracts and the FSD are irrelevant. GOP's assertion that this part of KLG's Motions should be denied as too vague is no more than resistance for the sake of resistance. Thus, KLG's Motions are granted as to category twenty-one.

Golden Rule arguments (category twenty-two) are inappropriate. *Lovett ex rel. Lovett v. Union Pac. R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (explaining that a Golden Rule argument "is universally condemned because it encourages the jury to depart from neutrality and to decide

the case on the basis of personal interest and bias rather than on the evidence." (internal quotation marks and citation omitted)). So are "reptile theory" arguments (category twenty-three)—that is, arguments that "appeal to the juror's own sense of self-protection in order to persuade jurors to render a verdict for plaintiffs that will, in the collective, effectively reduce or eliminate allegedly 'dangerous' or 'unsafe' conduct and thereby improve the safety of themselves, their family members, and their community," *J.B. by & through Bullock v. Missouri Baptist Hosp. of Sullivan*, No. 4:16CV01394 ERW, 2018 WL 746302, at *3 (E.D. Mo. Feb. 7, 2018)—even if such an argument is somehow applicable to the circumstances of this case, because it invites a decision on an improper basis. Fed. R. Evid. 403; *Patterson*, 68 F.4th at 416. As to undisclosed experts (category twenty-four), undisclosed witnesses (category twenty-five), and undisclosed damages (category twenty-six), the prohibitions are established by Federal Rules of Civil Procedure 26 and 37(c). Also, evidence that a party seeking recovery has insurance (category twenty-seven) is barred by the collateral source rule under Nebraska law. *Countryside Co-op. v. Harry A. Koch Co*., 790 N.W.2d 873, 882 (Neb. 2010). GOP does not argue otherwise as to any of these categories of evidence and instead argues that these parts of the Motions lack specificity and are essentially repetitive of well-established rules of evidence. Filing 186 at 28. Although it hardly seems necessary to rule on these parts of KLG's Motions in light of applicable rules, these parts of KLG's Motions are granted.

Evidence of offers of compromise (category twenty-eight) requires only slightly more discussion. As the Court explained above in relation to GOP's Motion, *see* § II.B.6., although Federal Rule of Evidence 408(a) prohibits evidence of offers of compromise or settlement for certain purposes, Rule 408(b) states certain circumstances in which such evidence may be used. *See, e.g., Gov't of Ghana*, 677 F.3d at 344; *Weems*, 665 F.3d at 965–66. GOP, as the party now

asserting that Rule 408(b) exceptions may be applicable, *see* Filing 186 at 27, will be required to seek leave outside the jury's presence to offer evidence potentially falling within an exception. This part of KLG's Motions in Limine is granted.

The twenty-ninth and last category of evidence at issue in KLG's Motions in Limine is "[p]ublication of documents not in evidence to the jury." Filing 168 at 4. GOP argues that this part of the Motions lacks specificity and is essentially repetitive of well-established rules of evidence. Filing 186 at 28. The Court's Civil Jury Trial Deadlines and Practices, § II.E., available on the undersigned's page on the Court's website, *see* https://www.ned.uscourts.gov/attorney/judges-information/brian-c-buescher, expressly provides, "Exhibits may not be published to the jury without the consent of the Court." Again, while it hardly seems necessary to rule on this part of KLG's Motions in light of the Court's practices, this part of KLG's Motions is granted.

In its supporting brief, KLG identifies as categories 30 and 31 demonstrative exhibits and redaction of attorney client privileged and trade secret information, respectively. Filing 169 at 39. KLG states that it will object to demonstrative exhibits on the schedule in the Final Pretrial Order, which has since expired. Filing 169 at 39. As to the attorney-client privileged and trade secret information, KLG asserts that it will work with GOP to redact those documents. Filing 169 at 39. Although these parts of KLG's brief were not identified as categories of evidence at issue in KLG's Motions and they do not seek exclusion of any evidence, GOP insists on arguing that they "should be denied," because neither is ripe. Filing 186 at 28. KLG then replies, "Kuecker seeks to preserve its motion in limine with respect to demonstrative exhibits not yet provided by GOP and the redaction of privileged information from proposed Exhibit 542." Filing 215 at 22. To the extent KLG seeks any relief, categories 30 and 31 are denied as premature.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that:

1.      GOP's Motion in Limine, Filing 158, seeking exclusion of eight items or categories of evidence, is granted in part and denied in part as set out above; and

2.      KLG's Motions in Limine, Filing 168, seeking exclusion of twenty-nine categories of evidence, is granted in part and denied in part as set out above.

Dated this 12th day of January, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge